UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-81184-CIV-MARRA/ MATTHEWMAN

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, *et al.*,

        Plaintiff,

vs.

THE DOHERTY GROUP, INC., d/b/a
DOHERTY ENTERPRISES, INC.,

        Defendant.

_____/

**<u>DEFENDANT THE DOHERTY GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) ON THE
GROUNDS OF MOOTNESS AND LACK OF SUBJECT MATTER JURISDICTION, OR IN
THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT ON SUCH GROUNDS</u>**

**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

Defendant, The Doherty Group, Inc. ("Doherty"), by and through its undersigned counsel, and pursuant to FED. R. CIV. P. 12(b)(1) and Local Rule 7.1(a)(1), hereby moves to dismiss this lawsuit, with prejudice, on the grounds of mootness and lack of subject matter jurisdiction, or in the alternative, for summary judgment on such grounds pursuant to Rule 56 of the Federal Rules of Civil Procedure. Doherty submits the following incorporated Memorandum of Law in support.

In September 2014, the Equal Employment Opportunity Commission ("EEOC") filed suit against Doherty pursuant to Section 707(a) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII" or the "Act"). Section 707(a) authorizes the EEOC to file suit when there has been a "pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter." 42 U.S.C. § 2000e-6(a). The EEOC argues that Doherty, by using the May 2013 *version* of its arbitration agreement — which was amended in January 2015 and has not been used for over two years — engaged in a pattern or practice of "resisting" its employees' "rights" to file charges of discrimination with the EEOC and state Fair Employment Practices Agencies ("FEPAs"). *See* **DE 1, Compl. ¶¶ 6, 10-11**.

The entire basis for the Section 707(a) lawsuit became moot when Doherty amended its arbitration agreement in January 2015 to include an explicit carve-out acknowledging employees' rights to file charges with the EEOC, and to communicate with and cooperate in an investigation. Consequently, there is no "reasonable expectation" that the alleged harm will continue, *i.e.*, using the defunct version of the arbitration agreement, because: (1) Doherty has never taken the position that *any* version of its arbitration agreement prohibited employees from filing charges with the EEOC; (2) the January 2015 arbitration agreement includes an explicit carve-out protecting employees' rights to file charges with the EEOC; (3) Doherty has been proactive in educating its workforce regarding their rights to file charges with the EEOC; and (4) Doherty has consistently used or enforced the January 2015 arbitration agreement for over two years now. As U.S. Magistrate Judge William Matthewman observed, "I know [the EEOC] sought a lawsuit for injunctive relief, but if they [Doherty] are no longer using the arbitration provision that [the EEOC is] concerned about, why is this case still going?" **DE 170, Transcript of Discovery Hearing With U.S. Magistrate Judge Matthewman, September 1, 2016, pp. 4:3-6**. The longer this case continues, the truer this statement becomes.

1

No further judicial resources should be expended on this case as no "actual dispute continues to exist between the parties", *Bougeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004), despite the hundreds of docket entries already in the file. Accordingly, Doherty respectfully requests that the Court dismiss this lawsuit, with prejudice, pursuant to FED. R. CIV. P. 12(b)(1)[1], or in the alternative, pursuant to Rule 56, Federal Rules of Civil Procedure, as there is no basis for subject matter jurisdiction over this case.

## STANDARD OF REVIEW

Article III of the United States Constitution "limits the jurisdiction of federal courts to the consideration of 'Cases' or 'Controversies.'" *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288, 1290-91 (11th Cir. 2004) (citing U.S. CONST. ART. III, § 2, CL. 1). A case or controversy, once initiated becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). As the Eleventh Circuit has instructed, the "case or controversy" requirement "prevents federal courts from deciding a case on the merits if such a decision could no longer provide 'meaningful relief' to the parties." *Christian Coal. of Ala.*, 355 F.3d at 1291 (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000)).

A case "may be rendered moot as a result of a change in circumstances or a change in the law." *Freedom From Religion Found. v. Orange Cnty. Sch. Bd.*, 610 F. App'x 844, 847 (11th Cir. 2015) (per curiam) (citing *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1327 (11th Cir. 2004)). While "[v]oluntary cessation of allegedly illegal conduct does not always make the case moot[,]" *Freedom From Religion Found.*, 610 F. App'x at 847 (citing *Coral Springs*, 371 F.3d at 1328-29), "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *U.S. Dep't of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) (internal quotation

---

[1]While the Court's Scheduling Order provides that Defendant is entitled to "file an initial motion for summary judgment directed solely to the question of mootness without precluding a subsequent motion for summary judgment on the merits of the case," DE 48 at 2, Doherty has filed a 12(b)(1) motion to dismiss, rather than for summary judgment, based upon controlling precedent. The Eleventh Circuit has "repeatedly" warned that "when a district court disposes of a case on justiciability (mootness) grounds [it] will treat the district court's determination as if it was ruling on a motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), even if the district court mistakenly has labeled its ruling a grant of summary judgment." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). In addition, in *Troiano v. Supervisor of Elections in Palm Beach County*, the Eleventh Circuit held that a district court's finding of mootness, although embodied in an order granting summary judgment under Rule 56, must be treated "as if it were a ruling on a Rule 12(b)(1) motion." 382 F.3d 1276, 1278 n. 2 (11th Cir. 2004). Based upon this controlling precedent, Doherty has filed the instant motion pursuant to Rule 12(b)(1). However, as a precaution, Doherty has moved in the alternative for summary judgment.

marks omitted and alteration adopted). Such a case "would be moot, and a federal court determination of a moot case would constitute an impermissible advisory opinion." *Christian Coal. of Ala.*, 355 F.3d at 1291 (citing *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam)). Dismissal of a moot case "is required because mootness is jurisdictional[,]" *Sierra Club v. E.P.A.*, 315 F.3d 1295, 1299 (11th Cir. 2002), and the Supreme Court has recognized that "ordinary principles" of "mootness" may apply to EEOC claims. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 298 (2002).

Here, Doherty has moved to dismiss on grounds of mootness, which is a challenge to subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Attacks on subject matter jurisdiction "come in two forms: facial attacks and factual attacks." *Freedom From Religion Found., Inc. v. Orange Cnty. Sch. Bd.*, 30 F. Supp. 3d 1358, 1363 (M.D. Fla. 2014), *aff'd*, 610 F. App'x 844 (11th Cir. 2015) (per curiam) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam)). This case presents a "factual" attack on subject matter jurisdiction, whereby "matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529 (citation and quotations omitted). When a "party's attack on subject matter jurisdiction is factual, no presumption of truth attaches to the plaintiff's allegations and a court is free to weigh evidence to determine whether it has jurisdiction." *Freedom From Religion Found.*, 30 F. Supp. 3d at 1363 (citing *Lawrence*, 919 F.2d at 1529). Thus, "[w]hen resolving factual disputes underlying a Rule 12(b)(1) motion, a court 'may consider oral evidence along with written, but an evidentiary hearing is not required.'" *Odyssey Marine Exploration, Inc. v. The Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1170 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 2379 (2012) (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 173 (5th Cir. 1994)).[2]

## STATEMENT OF FACTS[3]

Doherty is a management company that provides support to 161 restaurants owned by affiliated entities. *See* **Defendant, The Doherty Group, Inc.'s Statement of Undisputed Facts on the Issue of Mootness [DE 253] (hereafter "Statement"), ¶ 1.** These 161 restaurants

---

[2] The Eleventh Circuit has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[3] Because Doherty has asserted a "factual" challenge to subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), the Court may consider evidence beyond the pleadings. *See Lawrence*, 919 F.2d at 1529 (citation and quotations omitted).

include Applebee's, Panera Bread, Chevys, Noodles & Company, Quaker Steak & Lube, The Shannon Rose, and Sputino. *See* **DE 253, Statement, ¶ 2.** Doherty directly employs all the employees working at its corporate headquarters in Allendale, New Jersey, who perform accounting, payroll, human resources, marketing, information technology, recruiting, benefits administration, finance, training, and other services. *Id.* **¶ 3.** Doherty does not own any restaurants; the restaurants are owned by other legal entities, which are related parties but are not named in this litigation. *Id.*

On September 18, 2014, the EEOC filed suit against Doherty pursuant to Section 707(a) of Title VII, alleging that Defendant, "through its regular and repeated use of [an] Arbitration Agreement . . . intended to deny the full exercise of the Title VII right to file a charge" with the Agency. **DE 1, Compl. ¶ 11.** The Complaint has been amended twice, *see* **DE Nos. 69 ("Amended Complaint") & 124 ("Second Amended Complaint"),** but the EEOC's theory has remained the same: Doherty engaged in an alleged "pattern or practice" of "resistance" to its employees' "rights" to file charges of discrimination by using the *previous* version of its arbitration agreement. *See* **DE 1, Compl. ¶¶ 6, 10-11; DE 69, Am. Compl. ¶¶ 6, 10-11; DE 125, Second Am. Compl. ¶¶ 7, 11.** The only arbitration agreement at issue in this lawsuit is the version that was amended in May 2013 and in effect until January 2015. As explained by Kathleen Coughlin, Vice President of Human Resources, Training and Recruiting (now titled Chief People Officer), the previous version of the arbitration agreement was revised in May 2013, *see* **DE 253, Statement, ¶ 8,** in part, to ensure compliance with "Ban the Box" legislation and decisions by the National Labor Relations Board, which were "hot topics in the industry at that time." *See* **DE 253, Statement, ¶ 9.**

Under the *previous* May 2013 version of the arbitration agreement, applicants/employees agreed to the following terms:

> I and Doherty Enterprises both agree that any claim, dispute, and/or controversy (including but not limited to any claims of employment discrimination, harassment, and/or retaliation under Title VII and all other applicable federal, state, or local statute, regulation or common law doctrine) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and Doherty Enterprises (and/or its parents, subsidiaries, affiliates, owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with

> my seeking employment with, employment by, or other association
> with Doherty Enterprises, whether based on tort, contract, statutory,
> or equitable law, or otherwise, (with the sole exception of claims
> arising under the National Labor Relations Act which are brought
> before the National Labor Relations Board, claims for medical and
> disability benefits under applicable state and/or local law) shall be
> submitted to and determined exclusively by binding arbitration[.]

*See* **DE 253, Statement, ¶ 10.**

Although Doherty has always maintained that it was not the intent of the arbitration

agreement to restrict employees from filing charges with the EEOC, the Company nonetheless

amended the arbitration agreement to "show good faith" once it learned that the EEOC "was

upset that there was not" an explicit "carve-out" for filing charges of discrimination with the

Agency. *See* **DE 253, Statement, ¶ 11.** The *current* version of the arbitration agreement, which

was amended in January 2015, now includes an explicit carve-out acknowledging employees'

rights to file charges with the EEOC. *See* **DE 253, Statement, ¶ 12** (true and correct copy of the

January 2015 version of arbitration agreement).[4] *See* **DE 253, Statement, ¶ 12.** A "shorter

version" of the amended arbitration agreement was made available to existing employees on

January 7, 2015, which emphasized (in bold font) that those employees had the right to file

employment-related claims with the EEOC. *See* **DE 253, Statement, ¶ 14.** Starting in January

2015, the amended arbitration agreement was also included on all employment applications. *See*

**DE 253, Statement, ¶ 15.**

Pursuant to the January 2015 version — with the new language highlighted in bold font

— applicants/employees agreed to the following terms:

> I and Doherty Enterprises both agree that any claim, dispute,
> and/or controversy (including but not limited to any claims of
> employment discrimination, harassment, and/or retaliation under
> Title VII of the Civil Rights Act of 1964, the Age Discrimination
> in Employment Act, the Americans With Disabilities Act, the
> Family and Medical Leave Act, the Uniformed Services
> Employment and Reemployment Rights Act, and any other
> applicable federal, state, or local statute, regulation or common law
> doctrine) which would otherwise require or allow resort to any
> court between myself and Doherty Enterprises (and/or its parents,
> subsidiaries, affiliates, owners, directors, officers, managers,
> employees, agents, and parties affiliated with its employee benefit

---

[4] The amended arbitration agreement was date-stamped December 28, 2014, although it was not posted to Doherty's Human Resources Information System until January 7, 2015. *See* **DE 253, Statement, Attachment A, 71:13 72:1.**

and health plans) arising from, related to, or having any
relationship or connection whatsoever with my seeking
employment with, employment by, ending of my employment
with, or other association with Doherty Enterprises, whether based
in tort, contract, statutory, or equitable law, or otherwise, shall be
submitted to and determined exclusively by binding arbitration.

**I understand that nothing in this binding Arbitration
Agreement prevents me from first filing a charge or complaint,
communicating with, or cooperating in an investigation or
proceeding conducted by, the Equal Employment Opportunity
Commission ("EEOC"), the National Labor Relations Board
("NLRB"), or any other federal, state or local agency charged
with the enforcement of any laws.  However, I also understand
that I shall not be entitled to file a complaint in Court related
to such charge or complaint, communication or investigation.**

*See* **DE 253, Statement, ¶ 16.**

The explicit carve-out for filing complaints with the EEOC, National Labor Relations
Board, or "any other federal, state or local agency charged with the enforcement of any laws"
was highlighted in bold font, *See* **DE 253, Statement, ¶ 17,** in an effort to cooperate and be
"proactive" with the EEOC, "even though [the Company] disagreed" with the EEOC's position
regarding the lawfulness of the May 2013 version. *See* **DE 253, Statement, ¶ 17.** As Doherty's
Chief Financial Officer testified, the Company has "never had any intent to prohibit people from
going to the EEOC[,]" but to "satisfy the EEOC's request, [Doherty] specifically tried to make it
crystal clear that [its] employees were not prohibited, even though [the Company] felt the
existing agreement was clear." *See* **DE 253, Statement, ¶ 18.**   ("[O]n January 5, 2015, Doherty
modified the Arbitration Agreement it includes with all of its applications to clarify Doherty's
intent and practice of not prohibiting any employee or applicant from filing charges of
discrimination or retaliation with the [EEOC] or state fair employment practices agencies[.]").
*See* **DE 253, Statement, Attachment D, ¶ 6;** *see* **DE 253, Statement, ¶ 19.**

On January 7, 2015, Doherty used its newly implemented Human Resources Information
System ("HRIS") to provide notice to all employees that the arbitration agreement was amended
to include an explicit carve-out for filing charges with the EEOC. *See* **DE 253, Statement, ¶ 20.**
The notice also clarified that the arbitration agreement was never intended to, nor did it prohibit,
employees from filing charges of discrimination or retaliation with the EEOC. *See* **DE 253,
Statement, ¶ 21.**  Employees who signed the previous version of the arbitration agreement were
required to sign an electronic form acknowledging receipt of the amended arbitration agreement

containing the explicit carve-out. *See* **DE 253, Statement, ¶ 22.**  Doherty provided notice to employees "who signed the old arbitration[] [agreements] to alert them to the fact that if in any way they felt that by signing the older agreement that they could not go to the EEOC, we wanted to clarify that . . . was never our intent" and that those employees "have [their] rights to continue to go to the EEOC." *See* **DE 253, Statement, ¶ 23.**  Doherty reminded its employees, through the use of computer "pop-ups," to review the amended arbitration agreement and electronically sign the acknowledgment form "the moment they logged into the [computer] system." *See* **DE 253, Statement, ¶ 24.**[5]  It is estimated that 98% of Doherty employees have signed the acknowledgement form.[6]

Since February 2015, Doherty has also posted the Company's revised employment application on HRIS, which now includes the entire amended arbitration agreement, for "full disclosure" and to "continue to educate" its employees regarding their rights to file charges with the EEOC. *See* **DE 253, Statement, ¶ 28.**  Consequently, employees now "have access to [the revised employment agreement] whenever they want and remember what they signed." *See* **DE 253, Statement, ¶ 29.**

Doherty has never intended to prevent its employees from filing charges with the EEOC or FEPAs. *See* **DE 253, Statement, ¶ 30** ("Doherty has never had a practice or policy prohibiting applicants or employees from filing charges of discrimination with the EEOC or state FEPAs.").  Doherty has also "never used its arbitration agreement to defend any EEOC or a state FEPA charge[]; to the contrary, Doherty has substantively defended any and all such charges that have been filed against it." *See* **DE 253, Statement, ¶ 31.**  Since 2013, Doherty employees have filed a total of 17 charges of discrimination with the EEOC. *See* **DE 253, Statement, ¶ 32.**  This includes six charges in 2013, four in 2014, four in 2015, and three in 2016. *See* **DE 253, Statement, ¶ 34.**

---

[5]  When employees log into their work computer, they are alerted to a "pop-up box that shows in front of the employee every time they log into the HRIS system.  And it reminds them if they have not acknowledged one of these documents to please go into the documents and look at what has not been acknowledged and acknowledge it." *See* **DE 253, Statement, ¶ 25.**  Doherty has created a spreadsheet listing the number of Doherty employees who have acknowledged, through their electronic signature, that they received notice that the current version of the arbitration agreement includes an explicit carve-out for filing charges with the EEOC. *See* **DE 253, Statement, ¶ 26** (true and correct copy of the spreadsheet titled "Document Acknowledgment Audit Report," which was introduced as Exhibit 7 to Ms. Coughlin's 30(b)(6) deposition).

[6] Ms. Coughlin estimates that 98% of Doherty's entire workforce has signed the acknowledgment form. *See* **DE 253, Statement, ¶ 27.**  This is remarkable given the transient nature of the restaurant industry, which can be challenging to reach employees. *See id.*, *See* **DE 253, Statement, ¶ 27.**

Doherty first raised the issue of "mootness" in its Reply Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint, which was filed pursuant to FED. R. CIV. P. 12(b)(6). *See* **DE 19, at 11-12**. On September 1, 2015, the Court denied Doherty's Rule 12(b)(6) Motion to Dismiss, but expressly declined to rule upon the substantive merits of the mootness argument. **DE 32, at 4 n.1**. With respect to mootness, the Court held that "to the extent Defendant argues for dismissal on the basis of mootness, the Court denies this applicant without prejudice to Defendant re-asserting it at the proper stage of the proceeding[.]" *Id.*

The issue of mootness is now ripe for review, as there is no longer a live "case" or "controversy" with respect to the EEOC's requests for *purely* injunctive relief. Even the EEOC acknowledges that "Doherty Enterprises has represented that it *ceased using* the Arbitration Agreement in January 2015[,]" which formed the entire basis for this lawsuit. **DE 124, Second Am. Compl. ¶ 13 (emphasis added)**.

<center>**ARGUMENT**</center>

<center>**THE LAWSUIT MUST BE DISMISSED AS MOOT, AS THERE IS NO "REASONABLE EXPECTATION" THAT DOHERTY WILL INTERFERE WITH ITS EMPLOYEES' RIGHTS TO FILE CHARGES OF DISCRIMINATION WITH THE EEOC**</center>

**A.    The Lawsuit Must Be Dismissed as There is No "Reasonable Expectation" that the Alleged Harm Will Continue**

The "test for mootness in a case asking for injunctive relief is whether the injury is continuing or is likely to be repeated." *Sw. Bell Tele. Co. v. Commc'n of Am., AFL-CIO*, 454 F.2d 1333, 1334 (5th Cir. 1971). In this case, the alleged injury was Doherty's use of an arbitration agreement that was in effect from May 2013 through January 2015, which the EEOC argues "resisted" employees' "rights" to file charges of discrimination with the Agency. *See* **DE 124, Second Am. Compl. ¶¶ 7, 11-13**. The EEOC's request for prospective injunctive relief is entirely moot, as the alleged Section 707(a) violation — the use of Doherty's *previous* version of its arbitration agreement — ceased more than two years ago. *See* **DE 253, Statement, ¶ 12**.

Critically, the Supreme Court has recognized that a "case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior **could not reasonably be expected to recur**." *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189 (2000) (citation and quotation omitted) (emphasis added). This rule applies especially in cases where, as here, "a party seeks purely injunctive relief." *Addison v. Forest Serv. of U.S. Dep't of Agric.*, 108 F. Supp. 2d 1365, 1368 (M.D. Fla. 2000) (citing *Reich v. O.S.H.R.C.*, 102 F.3d 1200,

<center>8</center>

1201 (11th Cir. 1997)).  The "distinction between claims for equitable relief and those for damages is due to the fact that injunctive relief is intended to remedy present or ongoing violations."  *Addison*, 108 F. Supp. 2d at 1368 (citing *Reich*, 102 F.3d at 1202).

In this District, injunctive relief may become moot "when a defendant voluntarily ceases its offending conduct and there is no reasonable expectation that it will repeat the wrong."  *Metzler v. Lykes Pasco, Inc.*, 972 F. Supp. 1438, 1443 (S.D. Fla. 1997) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).  *See also Al Najjar*, 273 F.3d at 1336 ("If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed.").  This standard "requires more than a 'mere possibility' that the conduct at issue will recur, but far less than absolute certainty."  *Bourgeois*, 387 F.3d at 1309 (citing *Al Najjar*, 273 F.3d at 1340).  Thus, "[t]he threat of future injury may not be 'conjectural' or 'hypothetical'" to meet the "no reasonable expectation" standard.  *Bourgeois*, 387 F.3d at 1309 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

One more point before turning to the evidence.  While the EEOC previously argued that Doherty did not "address the relevant factors" for mootness under the Eleventh Circuit's decision in *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007),[7] a public accommodation lawsuit filed under Title III of the Americans With Disabilities Act ("ADA"), that case is distinguishable for several important reasons.  ***See* DE 23, EEOC's Reply to Doherty's Motion to Dismiss, at 6-7.**  First and foremost, courts have limited the *Sheely* factors as only applying to public accommodation lawsuits under the ADA, and thus, is not applicable.[8]

---

[7] In *Sheely v. MRI Radiology Network, P.A.*, the Eleventh Circuit addressed whether a defendant's voluntary cessation of a practice which violated Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, mooted a plaintiff's claim for injunctive relief.  505 F.3d at 1181.  Specifically, the plaintiff and her seeing eye dog were denied access to an MRI room where her minor son was undergoing a procedure.  *See id.* at 1178.  Nine months after the lawsuit was filed, the defendant health center adopted a policy which permitted service animals to enter all public areas, with certain limited restrictions.  *See id.* at 1181.  The Eleventh Circuit "found that this policy change did not moot plaintiff's claim because it was unclear whether the defendant had changed its policy merely to deprive the court of jurisdiction."  *Access 4 All, Inc. v. Bamco VI, Inc.*, No. 11-61007-CIV, 2012 WL 33163, at *5 (S.D. Fla. Jan. 6, 2012) (discussing *Sheely*, 505 F.3d at 1188).

In the context of the ADA public accommodation claim, the Eleventh Circuit recognized that the following three factors were relevant in determining whether the alleged injury was "reasonably expected to recur," including:  "(1) whether the challenged conduct was isolated or unintentional, as opposed to continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability."  *Sheely*, 505 F.3d at 1184.

[8] *See Harty v. N. Lauderdale Supermarkets, Inc.*, No. 14-CIV-62945-BLOOM/Valle, 2015 WL 4638590, at *3 (S.D. Fla. Aug. 4, 2015) (*Sheely* factors govern "[m]ootness in [t]he ADA [c]ontext"); *Thornton v. R&L Foods, LLC & Big Bear Holdings, LLC*, No. 2:15cv828-WHA, 2016 WL 4216786, at *4 (M.D. Ala. Aug. 9, 2016) (*Sheely*

In fact, this Court recently characterized *Sheely* as "address[ing] mootness in the ADA context." *See Rogers v. 5101 Corp.*, Case No. 16-81294-CV-MARRA, 2016 WL 4987620, at *1 (S.D. Fla. Sept. 19, 2016) (Marra, J.) (citing *Sheely*, 505 F.3d at 1173). Second, even assuming, *arguendo*, that *Sheely* applies outside of ADA public accommodation lawsuits, courts have departed from *Sheely* when the evidence demonstrated that the request for injunctive relief was moot but the facts did not fit squarely within the *Sheely* framework.[9] In other words, the *Sheely* factors are simply guideposts to answer the ultimate question: is there a "reasonable expectation that the wrong will be repeated[?]" *W.T. Grant*, 345 U.S. at 633. *See also Thomas*, 32 F. Supp. 3d at 1270 ("Even beyond the three *Sheely* factors, the ultimate standard for mootness based on voluntary cessation is . . . [whether] the alleged violation cannot reasonably be expected to recur.") (citing *Laidlaw*, 528 U.S. at 189). Although the burden of establishing mootness is "formidable," and requires a showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Sheely*, 505 F.3d at 1184, the evidence, as discussed below, clearly demonstrates that the alleged harm cannot reasonably be expected to recur.

## B.   Doherty Has Never Taken the Position that its Arbitration Agreement Prohibits Employees From Filing Charges With the EEOC

---

addressed "[t]he concept of mootness in the context of repairs under the ADA[,]" and applying those factors to Title III ADA claim); *Dunn v. Eagle Holdings, LLC*, No. 2:14-cv-539-PWG, 2015 WL 760247, at *3 (M.D. Ala. Feb. 23, 2015) (*Sheely* was "an ADA case on the issue of mootness" and applying those factors to Title III ADA lawsuit); *Longhini v. W. 97 Corp.*, No. 1:15-cv-22874-UU, 2016 WL 3751640, at *3 (S.D. Fla. July 13, 2016) (applying *Sheely* factors to Title III ADA compliance case); *Houston v. Hess Corp.*, No. 2:13-cv-152-FtM-38DNF, 2014 WL 931055, at *2 (M.D. Fla. Mar. 10, 2014) (applying *Sheely* factors to Title III ADA claim); *Nat'l Alliance for Accessibility, Inc. v. Walgreen Co.*, No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809, at *2-4 (M.D. Fla. Nov. 28, 2011) (ADA failure to provide access to public accommodation claim); *Houston v. 7-Eleven, Inc.*, No. 13-60004, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014) (reviewing *Sheely* factors and noting that "ADA-architectural barrier cases are a unique subset of voluntary cessation-doctrine cases"); *Thomas v. Branch Banking & Trust Co.*, 32 F. Supp. 3d 1266, 1268-70 (N.D. Ga. 2014) (applying *Sheely* factors to claim brought by legally blind individual who alleged that bank's automated teller machines were not accessible in violation of the ADA).

[9] *See 7-Eleven*, 2014 WL 351970, at *2 ("ADA-architectural-barrier cases" are "not always a perfect fit within the framework of the three factors discussed in *Sheely*," and finding that "structural modifications [to the building] . . . still satisfies the ultimate question that the voluntary-cessation doctrine asks (*i.e.*, is it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur)"); *Thornton*, 2016 WL 4216786, at *5 (noting that "[a]lthough not neatly fitting within the factors of analysis outlined in *Sheely*, some courts have distinguished [ADA] compliance cases in mootness analysis where the compliance involved costly, structural modifications, and not just a change of procedure," and concluding that structural modifications should be "afforded weight in the analysis of mootness") (citation omitted); *Access 4 All, Inc.*, 2012 WL 33163, at *5 (questioning, without deciding, whether *Sheely* factors apply where the defendant has made structural modifications to comply with the ADA).

While Doherty has never taken the position that its arbitration agreement prohibits employees from filing charges of discrimination with the EEOC, to clarify the issue, on January 5, 2015, Doherty amended the arbitration agreement to expressly acknowledge that "nothing in this binding Arbitration Agreement prevents [the employee] from first filing a charge or complaint, communicating with, or cooperating in an investigation or proceeding conducted by, the Equal Employment Opportunity Commission[.]" *See* **DE 253, Statement, ¶ 16.** As Doherty's CFO Jerry Marcopoulos testified, the Company has "never had any intent to prohibit people from going to the EEOC[,]" but to "satisfy the EEOC's request, [Doherty] specifically tried to make it crystal clear that [its] employees were not prohibited, even though [the Company] felt the existing agreement was clear." *See* **DE 253, Statement, ¶ 18.**

Critically, Doherty has never argued that employees somehow "waived" their rights to file charges with the EEOC or FEPAs by signing the May 2013 version of the arbitration agreement. *See* **DE 253, Statement, ¶40; DE 253, Statement, Attachment A, 159:4-160:5; DE 253, Statement, Attachment D, ¶ 6.** In fact, for each of the 17 charges of discrimination filed with the EEOC since 2013, *see* **DE 253, Statement, ¶ 32,** Doherty has "substantively defended any and all such charges that have been filed against it." *See* **DE 253, Statement, ¶ 31.** Doherty's response to these charges provides concrete evidence that the Company has never taken the position that its arbitration agreement prevents its employees from filing charges with the EEOC or participating in EEOC proceedings.

In *E.E.O.C. v. CollegeAmerica Denver, Inc.*— a case involving similar issues of mootness — the district court dismissed the EEOC's request for injunctive relief regarding a separation agreement when the employer "never asserted and will never assert" that an employee "waived" her rights under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 626, *et seq.*, and when the employer did not raise that defense when the employee filed a charge of discrimination with the EEOC. 75 F. Supp. 3d 1294, 1298 (D. Colo. 2014). In that case, a former campus director entered into a separation agreement with her employer under which she agreed to "refrain from personally (or through the use of any third party) contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance that shall bring harm to CollegeAmerica[.]" *Id.* at 1296. Despite signing the separation agreement, the employee filed a charge of discrimination with the EEOC, and the EEOC issued a Letter of Determination finding reasonable cause that CollegeAmerica had engaged in unlawful employment practices. *Id.* at 1297. The EEOC argued that CollegeAmerica, "through the

11

Agreement, denied [the employee] the full exercise of her rights under the ADEA and interfered with the statutorily assigned responsibility of the EEOC and state Fair Employment Practices Agencies . . . to investigate charges of discrimination in violation of Section 7(f)(4) of the ADEA," 29 U.S.C. § 626(f)(4).[10] *Id.* at 1297. The EEOC requested declaratory and injunctive relief to void the agreement and enjoin CollegeAmerica from enforcing its terms. *Id.* at 1298.

CollegeAmerica moved to dismiss for mootness pursuant to FED. R. CIV. P. 12(b)(1), arguing that "there is no justiciable controversy because it has never asserted and will never assert that [the employee] waived her ADEA rights via the Agreement." *Id.* In support, CollegeAmerica provided evidence that "it did not assert such a waiver in connection with [the employee's] EEOC charges," all of which "pre-date the filing of this case by the EEOC." *Id.* CollegeAmerica also submitted an affidavit from its General Counsel (which was provided after the ADEA lawsuit was filed) stating that "CollegeAmerica does not and will never assert that the Agreement constitutes a waiver of [the employee's] ADEA rights to file a charge or cooperate in any proceeding involving the charge of another." *Id.* at 1299. The federal court ruled that CollegeAmerica "met its burden of demonstrating that there is no reasonable expectation that it will sue the Agreement to interfere with the ADEA rights of [the employee] or the EEOC[,]" *id.* at 1299-1300, based upon the "affidavits of its general counsel" and a representation that it has never taken the position that the agreement waived its employee's right to file charges with the EEOC. *Id.* Consequently, the court dismissed the EEOC's claim for declaratory and injunctive relief on grounds of mootness. *See id.* Like the defendant in *CollegeAmerica*, Doherty has never taken the position that the previous version of its arbitration agreement restricted its employees from filing charges of discrimination with the EEOC or participating in EEOC proceedings.

**C.     The Amended Arbitration Agreement Includes an Explicit Carve-Out Protecting Employees' Rights to File Charges of Discrimination With the EEOC**

It is undisputed that under the January 2015 version of the arbitration agreement, there is an explicit carve-out acknowledging the employee's right to file charges with the EEOC. ***See* DE 253, Statement, ¶ 16.** Under similar circumstances, courts have ruled that the EEOC's claim for injunctive relief regarding an allegedly unlawful policy is rendered moot when the

---

[10] Section 7(f)(4) of the ADEA provides that "[n]o waiver agreement may affect the [EEOC's] rights and responsibilities to enforce this chapter . . . [or] . . . be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the [EEOC]." 29 U.S.C. § 626(f)(4).

policy is amended to remove the allegedly unlawful provision. *See E.E.O.C. v. Elgin Teachers Ass'n*, 658 F. Supp. 624, 626 (N.D. Ill. 1987). For example, in *Elgin Teachers*, the EEOC filed suit under Title VII alleging that a teacher's union and board of education entered into a collective bargaining agreement (in 1981) under which pregnant women were treated less favorably than those "disabled" for other reasons. *Id.* at 624. The employee who filed the charge alleged that under the terms of the collective bargaining agreement, teachers on pregnancy leave, as opposed to those on sick leave for other reasons, could not collect disability pay unless they returned to work on a full-time basis. *Id.* at 625. The EEOC investigated the charges, and in March 1993 found reasonable cause to believe that women had been discriminated against as to benefit and leave policies. *Id.*

Meanwhile, in August 1983, the teacher's association and board renegotiated the 1981 agreement to remove the allegedly discriminatory language. *Id.* The EEOC subsequently filed suit, although it was "unaware, when it filed the Complaint, that the 1981 Agreement was no longer in effect and that the 1983 Agreement did not contain the allegedly discriminatory disability provision." *Id.* at 626. The court ruled that because the EEOC "concede[d] [that the] Association is no longer discriminating against pregnant teachers through the challenged provision of the 1981 Agreement[,]" the EEOC had "no reasonable expectation the discrimination will be repeated, rendering EEOC's claim for injunctive relief moot." *Id.* (citing *DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (per curiam)). The court also noted the hypocrisy in the EEOC's position, which simultaneously acknowledged that the alleged discriminatory provision had been removed, but still sought injunctive relief prohibiting further discrimination as a result of the now-defunct provision. *See id.* n.7.

The EEOC cannot have it both ways. It is fundamentally inconsistent for the EEOC to acknowledge that Doherty has amended its arbitration agreement, *see* **DE 124, Second Am. Compl. ¶ 13**, but still seek prospective injunctive relief regarding the now-defunct version.[11]

---

[11] While acknowledging that Doherty "ceased using" the previous (May 2013) version of the arbitration agreement in January 2015, *see* DE 124, Second Am. Compl. ¶ 13, the EEOC nonetheless *still* seeks to "enjoin[] Defendants from using the version of its Arbitration agreement described in this Complaint [*i.e.*, the May 2013 version][.]" *Id.* ("Prayer for Relief," part a). In addition, while the EEOC requests that the Court order "Defendant to reform the version of the Arbitration Agreement described in this Complaint consistent with the provisions of Section 707 of Title VII[,]" *id.* ("Prayer for Relief," part b), the arbitration agreement has *already* been reformed to be consistent with Title VII. That happened in January 2015 when the agreement was amended to include an explicit carve-out acknowledging employees' rights to file charges with the EEOC. *See* DE 253, Statement, ¶ 16.

Moreover, to the extent that the EEOC requests that Doherty "institute and carry out policies, practices, and programs that provide for the full exercise of the right to file a charge and participate and cooperate with the EEOC

13

*See also E.E.O.C. v. N. Gibson Sch. Corp.,* No. EV98-0168-C-Y/H, 2000 WL 33309722, at *3
(S.D. Ind. Jun. 21, 2000), *aff'd*, 266 F.3d 607 (7th Cir. 2001), *overruled in part on unrelated
grounds by E.E.O.C. v. Waffle House*, 534 U.S. 279 (2002) (EEOC's claim for injunctive relief
regarding an allegedly discriminatory retirement plan was rendered moot when the retirement
plan was no longer in effect as of the litigation and the EEOC "had no reasonable expectation
that the plan would be reinstated"); *E.E.O.C. v. Simmons Bedding Co.*, No. 1:07-cv-1713-JEC,
2012 WL 1565265, at *2 (N.D. Ga. May 2, 2012) (EEOC's request for employer to "amend its
leave policy so that disabled employees who are not able to return to work after 180 days of
leave are not automatically terminated," was dismissed as moot when employer "amended its
leave policy to address the EEOC's concerns" by removing the mandatory termination
provision).

### D.  Doherty Has Taken Proactive Measures to Educate its Workforce Regarding their Rights to File Charges

Not only has Doherty amended its arbitration agreement, the Company has taken
proactive measures to educate its workforce regarding their rights to file charges with the EEOC.
*See* **DE 253, Statement, ¶¶ 19-25; ¶¶ 28-29.**  On January 7, 2015, Doherty used its newly
implemented HRIS to provide notice to its employees that the arbitration agreement was
amended to include an explicit carve-out for filing charges with the EEOC.  *See* **DE 253,
Statement, ¶ 20.**  The notice also clarified that that the arbitration agreement was never intended
to, nor did it, prohibit employees from filing charges of discrimination or retaliation with the
EEOC or state FEPAs.  *See* **DE 253, Statement,  ¶ 21.**

Employees who signed the previous version of the arbitration agreement were required to
sign an electronic form acknowledging the carve-out explicitly protecting their right to file
charges with the EEOC.  *See* **DE 253, Statement, ¶ 22.**  Since February 2015, Doherty has also
posted the revised employment application on HRIS, which now includes the entire amended
arbitration agreement, for "full disclosure" and to "continue to educate" its employees regarding
their rights to file charges with the EEOC.  *See* **DE 253, Statement, ¶ 28.**  Such proactive
measures differ widely from cases where employers simply *promised* not to engage in future

---

and FEPAs, including, but not limited to, a corrective communication with Defendants' workforce informing all
employees that they retain the right to file a charge of discrimination[,]" *id.* ("Prayer for Relief," part c), that is
precisely what Doherty *has already done* when it provided notice to employees, starting in January 2015, regarding
the changes in the arbitration agreement, including notifying employees of their right to file charges with the EEOC.
*See* **DE 253, Statement, ¶¶ 19-25; ¶¶ 28-29.**

unlawful acts, but did not take necessary steps. *See Burger King*, 955 F.2d at 684-85 (Eleventh Circuit ruled that Department of Labor's request for injunctive relief was not rendered moot when defendant "produced nothing more than a bare assertion," which "comes on the eve of trial," that it would stop its allegedly illegal activity); *Thomas*, 32 F. Supp. 3d at 1268 ("A bare statement by [the defendant] that it has no intention to restart the voluntarily ceased conduct does not suffice to show mootness.") (citing *Sheely*, 505 F.3d at 1184).

<p style="text-align:center;">E.      <strong>Doherty Has Consistently Used or Enforced the January 2015<br>Arbitration Agreement for More than Two Years</strong></p>

Courts have routinely held that the adoption of policies, along with the enforcement of those policies for an established duration, renders claims for prospective injunctive relief as moot. In the leading case of *Jews for Jesus, Inc. v. Hillsborough County Aviation Authority*, the Eleventh Circuit affirmed the dismissal of a complaint for permanent injunctive relief when the defendant airport authority revoked its challenged policy during the pendency of the lawsuit, but had consistently applied the new policy for three years. 162 F.3d 627 (11th Cir. 1998). That case arose out of a First Amendment challenge by plaintiff Jews for Jesus, a nonprofit Christian missionary organization, to the literature distribution policies at the Tampa International Airport. *Id.* at 628. When the organization contacted the airport about distributing literature on its premises in 1994, the airport stated that its distribution policy was presently under review, and that pending completion, distribution at the airport was prohibited. *Id.* at 628-29. In 1995, Jews for Jesus filed a lawsuit seeking injunctive and declaratory relief that would permit the organization to distribute literature at the airport. *Id.* at 629.

Approximately *one month* after commencement of the lawsuit, in September 1995, the airport lifted the prohibition on the distribution of literature. *Id.* The airport thereafter moved to dismiss the lawsuit, arguing that the plaintiff's request for permanent injunctive relief had been rendered moot by the change in policy. *See id.* Jews for Jesus opposed the motion to dismiss, arguing that the "possibility of a return to the prior prohibition" or "restrictive policy" means that there was still a justiciable "case or controversy" and that the "mere voluntary cessation of a challenged practice does not render a case moot." *Id.* (citation omitted). The Eleventh Circuit affirmed the district court's dismissal of the lawsuit as moot, finding that the "airport's change of policy has already given Jews for Jesus the relief they seek — the ability to distribute literature at the airport — and there is therefore no meaningful relief left for the court to give." *Id.* In addition, the Eleventh Circuit held that "there was no reasonable expectation" that the airport

"would return to its prior policy[,]" when the new policy was the "result of substantial deliberation" and the "evidence suggests that it has been consistently applied for the past three years." *Id.*

As in *Jews for Jesus*, Doherty amended its arbitration agreement only a few months after the original Complaint was filed on September 18, 2014. *See* **DE 253, Statement, ¶ 12.** More importantly, as with the airport authority in *Jews for Jesus*, Doherty has consistently used or enforced its amended arbitration agreement for an established duration: three years in *Jews for Jesus,* more than two years for Doherty. This precedent warrants dismissal of the EEOC's claims.

Similarly, in *Addison v. The Forest Service of the U.S. Department of Agriculture*, the U.S. District Court for the Middle District of Florida held that a claim for permanent injunctive relief became moot when the Forest Service adopted a vehicle checkpoint policy. 108 F. Supp. 2d 1365. In that case, the plaintiff, who regularly participated in "Rainbow Gatherings" in the Ocala National Forest, filed suit on February 13, 1998 seeking to enjoin the use of roadblocks and vehicle searches that impeded access to the National Forest. *Id.* at 1366. The court granted the plaintiff's motion for preliminary injunction on February 25, 1998, finding that the Forest Service had "selectively targeted its enforcement efforts against Plaintiffs[.]" *Id.* In February 2000, the Forest Service filed a motion for summary judgment, arguing that due to its adoption of a vehicle checkpoint policy, the plaintiff could not "demonstrate entitlement to permanent injunctive relief because there is no continuing likelihood that the Plaintiff will be subjected to unconstitutional searches by the Defendant in the future." *Id.* at 1367. The court held that the adoption of this policy (which was in effect for nearly 18 months after the lawsuit was filed) rendered the plaintiff's claims for "purely injunctive relief" as moot. *Id.* at 1368. Moreover, the court acknowledged that the remote possibility of the Forest Service not following its own policy was not a basis for granting permanent injunctive relief in *that* lawsuit, but rather, could provide the basis for a *future* lawsuit if the policy was not followed. *See id.* at 1368.

Doherty has consistently applied the amended arbitration agreement for more than two years now. This is more than sufficient to establish, with reasonable certainty, that the Company will not revert back to using the previous version of the agreement. *See Addison*, 108 F. Supp. 2d at 1367-68 (request for permanent injunctive relief dismissed as moot when defendant applied new policy for nearly 18 months after lawsuit seeking injunctive relief was filed); *Jews for Jesus*, 162 F.3d at 629 (change in policy applied for three years). Moreover, the remote possibility of

16

Doherty reverting back to its prior version is simply not a basis for granting injunctive relief in *this* lawsuit. *See Jews for Jesus*, 162 F.3d at 630.

**F.     In the Alternative, Summary Judgment Should Be Granted.**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods. Inc.,* 121 F.3d 642, 646 (11th Cir.1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co. .,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.,* 121 F.3d, at 646. Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249. Conclusory allegations will not suffice to create a genuine issue. There must be more than a scintilla of evidence; there must be "substantial conflict in evidence to support a jury question." *Tidewell v. Carter Prods.,* 135 F.3d 1422, 1425 (11th Cir.1998), *quoting Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods,* 121 F.3d, at 647.

However, Rule 56(c) mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

For the reasons set forth in this motion and memorandum of law, Doherty's motion for summary judgment should be granted and this case dismissed with prejudice.

## CONCLUSION

WHEREFORE, Doherty respectfully requests that the Court grant its Motion to Dismiss, dismiss the EEOC's Second Amended Complaint in its entirety, with prejudice, or in the alternative, grant its motion for summary judgment and dismiss this case with prejudice, and award Defendant its costs, attorneys' fees, and any other relief the Court deems appropriate.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1(b)(2), Doherty respectfully requests a hearing on its Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant To FED. R. CIV. P. 12(b)(1) on the Grounds of Mootness and Lack of Subject Matter Jurisdiction, or in the Alternative, Motion For Summary Judgment On Such Grounds. The request for such a hearing is sought because of the complexity of this case. The estimated time required for such argument is one hour.

Dated: February 16, 2017

Respectfully submitted,

/s/  Robert G. Haile, Jr.
Robert G. Haile, Jr., Esq.
Florida Bar No. 292796
Antoinette Theodossakos, Esq.
Florida Bar No. 178608
**HAILE, SHAW & PFAFFENBERGER, P.A.**
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100; Fax: (561) 622-7603
atheodossakos@haileshaw.com
*Counsel for Defendant*

/s/  Dena B. Calo
Dena B. Calo, Esq.
**SAUL EWING LLP**
650 College Road East
Suite 4000
Princeton, NJ 08540
Phone: (609) 452-3135; Fax: (215) 972-7104
dcalo@saul.com
*Counsel for Defendant*

18

<center>**CERTIFICATE OF SERVICE**</center>

I HEREBY CERTIFY that on this 16th day of February, 2017, that the foregoing document is being filed this day with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/Robert G. Haile, Jr., Esq.
Robert G. Haile, Jr., Esq.
Florida Bar No. 292796
rhaile@haileshaw.com
Antoinette Theodossakos, Esq.
Florida Bar No. 178608
atheodossakos@haileshaw.com
Haile, Shaw & Pfaffenberger, P.A.
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100
Fax: (561) 622-7603
*Counsel for Defendant, The Doherty Group, Inc.*

</div>

<center>19</center>

## SERVICE LIST

**_Counsel for Plaintiff, Equal Employment Opportunity Commission:_**
Kimberly A. McCoy-Cruz, Esq.
Supervisory Trial Attorney
Kimberly.cruz@eeoc.gov
Kristen Foslid, Esq.
Trial Attorney
kristen.foslid@eeoc.gov
U.S. Equal Employment Opportunity Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: (305) 808-1803; Fax: (305) 808-1835

Robert E. Weisberg, Esq.
Regional Attorney
Robert.weisberg@eeoc.gov

P. David Lopez, Esq., General Counsel
James L. Lee, Esq., Deputy General Counsel
Gwendolyn Young Reams, Associate General Counsel
U.S. Equal Employment Opportunity Commission
131 M Street, N.E.
Washington DC 20507
(Via U.S. Mail)

**_Counsel for Defendant, The Doherty Group, Inc.:_**
Antoinette Theodossakos, Esq.
Haile, Shaw & Pfaffenberger, P.A.
atheodossakos@haileshaw.com
Robert G. Haile, Jr., Esq.
Florida Bar No. 292796
rhaile@haileshaw.com
660 U.S. Highway One, 3rd Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100; Fax: (561) 622-7603

Dena B. Calo, Esq.
Saul Ewing LLP
dcalo@saul.com
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Phone: (215) 972-7104
Fax: (215) 972-1858
*Admitted Pro Hac Vice*