UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-81184-CIV-MARRA/MATTHEWMAN

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, *et al.*,

       Plaintiff,

vs.

THE DOHERTY GROUP, INC., d/b/a
DOHERTY ENTERPRISES, INC.,

       Defendant.

_____

**DEFENDANT THE DOHERTY GROUP, INC.'S MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

**ORAL ARGUMENT REQUESTED**

# INTRODUCTION[1]

Defendant The Doherty Group, Inc. ("Doherty") hereby moves this Court for summary judgement because Plaintiff the Equal Employment Opportunity Commission ("EEOC") cannot demonstrate that Doherty intended to violate Title VII of the Civil Rights Act of 1964 ("Title VII") through the use of its May 2013 Arbitration Agreement ("May 2013 Agreement"). The May 2013 Agreement that the EEOC seeks to enjoin has not been used since January 2015. On its face, the May 2013 Agreement's language does not violate Title VII, nor does it prevent any employee or applicant from filing a charge or communicating with the EEOC. Moreover, Doherty can demonstrate through undisputed evidence that its intent in using the May 2013 Agreement was only to require employees and applicants to go to arbitration when seeking a determination from a remedial forum, a result permitted by the language of Title VII itself. For example, Doherty posts EEOC notices at all of its affiliated restaurants, responds substantively to all filed charges, and has expressly communicated to all employees about their right to file charges and communicate with the EEOC. The EEOC cannot present evidence to the contrary, and therefore, its pattern and practice case fails as a matter of law.

In actuality, the EEOC is attempting to use this case to expand its power while violating Doherty's constitutional and statutory rights. By bringing this unconstitutionally vague and undetermined "resistance" claim against Doherty, a claim that arose in the context of a currently-pending charge of discrimination, the EEOC violated Doherty's due process rights and the EEOC's own procedural regulations. The EEOC has now, after extensive discovery on the topic, finally admitted that it learned of Doherty's May 2013 Agreement through confidential documents submitted to the EEOC by a Doherty affiliated restaurant during a separate Section 706 discrimination charge that the EEOC was investigating. Rather than follow Title VII's Section 706 procedural requirements, i.e., investigation, conciliation, and notice, the EEOC instead sued Doherty in a separate action in express disregard of Title VII. Thus, the EEOC had no right to bring this action in the first place. As a result, Doherty is entitled to judgment as a matter of law.

---

[1] Doherty relies on its Statement of Undisputed Material Facts ("SOMF") filed together with this motion [DE 256].

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT[2]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating the basis for its motion and identifying those items that the party believes demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party can meet its burden by presenting evidence that there is no genuine issue of material fact or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274 (11th Cir. 1999).

Once the moving party has established the basis for granting summary judgment, the non-moving party has the burden of coming forward with evidence of each essential element of its claims or defenses such that a reasonable jury could find in its favor. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "may not rest upon the mere allegations or denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a general issue for trial." Fed. R. Civ. P. 56 (e).

Further, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party must raise more than a "metaphysical doubt" as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Celotex*, 477 U.S. at 322.

---

[2] Doherty also submits that it is entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) as moot. *See, e.g.*, *E.E.O.C. v. CollegeAmerica Denver, Inc.* 75 F. Supp. 3d 1294, 1298 (D. Colo. 2014) (where the court dismissed the EEOC's claim for declaratory and injunctive relief on the grounds of mootness where the defendant met its burden of demonstrating that there was no reasonable expectation that it would interfere with employees' rights).

## ARGUMENT

**I.     IT IS WELL-SETTLED THAT MANDATORY ARBITRATION OF TITLE VII CLAIMS IS LAWFUL**

Title VII protects employees against discrimination on the basis of "race, color, religion, sex or national origin." 42 U.S.C. §§ 2000e-2, 2000e-3. Title VII also prohibits retaliation against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Congress granted the EEOC the power to enforce Title VII by suing employers when informal methods of dispute resolution failed. 42 U.S.C. § 2000e-5(f)(1) ("If within thirty days after a charge is filed . . . the [EEOC] has been unable to secure from the [employer] a conciliation agreement acceptable to the [EEOC], the [EEOC] may bring a civil action[.]"). The EEOC also has the power to bring a civil action if there is reasonable cause to believe that "any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter." 42 U.S.C. § 2000e-6.[3]

It is also firmly established that agreements requiring mandatory arbitration of employment related claims are enforceable. *See Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001) (mandatory arbitration of employment discrimination claims should be encouraged); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (the Supreme Court rejected argument that arbitration of claims under federal Age Discrimination in Employment Act would undermine the role of the EEOC in enforcing federal law, recognizing that the "mere involvement of an administrative agency in the enforcement of a statute" does not limit private parties' obligation to comply with their arbitration agreements); *Bender v. A.G. Edwards & Sons,*

---

[3] Doherty preserves its right to challenge the concept of a separate cause of action alleging "resistance" of anything other than discrimination or retaliation claims. Doherty maintains that the only rights secured by Title VII are the rights for employees to be free from discriminatory employment practices and retaliation. *E.E.O.C. v. CVS Pharmacy, Inc.*, 809 F.3d 335, 341 (7th Cir. 2015); *see also Council 31, Am. Fed'n of State, Cty., & Mun. Emps. v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992) (finding that pattern or practice refers to "a method of proving discrimination" "prohibited by Section 703," requiring a showing that an "employer regularly and purposefully discriminates"); *Parisi v. Goldman Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013) ("[I]n Title VII jurisprudence 'pattern-or-practice' simply refers to a method of proof and does not constitute a 'freestanding cause of action.'" (citation omitted)); *Serrano v. Cintas Corp.*, 699 F.3d 884, 894 (6th Cir. 2012) (claims "under § 707 . . . are limited to allegations of a pattern or practice of discrimination").

*Inc.*, 971 F.2d 698 (11th Cir. 1992) (Title VII claims subject to mandatory arbitration). This is because a party to an arbitration agreement does not waive any rights under Title VII. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). "Almost every other circuit is in agreement . . . that Title VII does not prohibit mandatory arbitration for claims arising under the statute." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313 (11th Cir. 2002); *see also Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204-06 (2d Cir. 1999), cert. denied, 531 U.S. 1069 (2001); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 7 (1st Cir. 1999); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 365 (7th Cir. 1999), cert. denied, 528 U.S. 811 (1999); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998), cert. denied, 525 U.S. 1139 (1999), abrogated on other grounds, *Blair v. Scott Specialty Gase*s, 283 F.3d 595 (3d Cir. 2002); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837 (8th Cir. 1997); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482-83 (D.C.Cir. 1997); *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 882 (4th Cir. 1996), cert. denied, 519 U.S. 980 (1996); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir. 1994); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 307 (6th Cir. 1991); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991).

Congress has also expressed its approval of arbitration to resolve employment discrimination claims *directly* in the language of the Civil Rights Act of 1991. *Weeks*, 291 F.3d at 1314 (citing Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081, reprinted in 42 U.S.C. § 1981 app. at 509 (1994) ("[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.")).

At its core, this lawsuit is nothing more than the EEOC's latest attempt to challenge the enforceability of mandatory arbitration agreements in the employment context, and to do so through an expansion of power never before given to the EEOC by any Court. As discussed herein, the EEOC's dislike of arbitration agreements does not render those agreements violative of Title VII.

## II.     THE EEOC CANNOT MEET ITS EVIDENTIARY BURDEN IN THIS PATTERN OR PRACTICE CLAIM

In order to establish a violation of Section 707(a), the EEOC must produce evidence that Doherty "systematically and purposefully" acted with *intent* to "resist" employees and/or applicants rights under Title VII. The EEOC alleges that Doherty violated Title VII through its use of the May 2013 Agreement. *See* DE124, Second Amended Complaint, ¶ 7. The EEOC's argument fails as a matter of law.

In *Int'l Bhd. of Teamsters v. United States*, the Supreme Court established a two-stage framework for analyzing the government's evidentiary burden in establishing "pattern or practice" claims under Section 707(a). 431 U.S. 324, 336 (1977). In this matter, the EEOC is suing on its own behalf, and not on behalf of any individual, therefore, only the first stage of *Teamsters* is relevant. *Id.* at 361-62. To establish a "pattern or practice" claim under Section 707(a), the EEOC must produce evidence establishing the existence of "systematic and purposeful employment discrimination." *Id.*

> As the plaintiff, the Government bore the initial burden of making out a *prima facie* case of discrimination. And, because it alleged a systemwide pattern or practice of resistance to the full enjoyment of Title VII rights, the Government ultimately had to prove more than the mere occurrence of isolated or "accidental" or sporadic discriminatory acts. It had to establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure the regular rather than the usual practice.

*Id.* at 336. Thus, the EEOC must produce evidence that Doherty had the *intent* to "systematically and purposefully" violate Title VII. Consistent with *Teamsters*, the Eleventh Circuit recognizes that "pattern or practice" claims "are a variant of the disparate treatment theory," and thus, "proof of discriminatory motive is critical." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (citing *Lujan v. Franklin Cty. Bd. of Educ.*, 766 F.2d 917, 929 (6th Cir. 1985)).

### a.     The EEOC Cannot Demonstrate that Doherty Intended to "Systematically and Purposefully" Violate Title VII

Under the *Teamsters* framework, the EEOC has the burden of proving that Doherty has adopted, as its "standard operating procedure," a pattern or practice of "resistance" to those rights protected under Title VII. *See Teamsters*, 431 U.S. at 336. The *Teamsters* framework

refers to the government's initial burden as a burden to establish "a *prima facie* case," meaning "sufficient evidence to create a rebuttable presumption of the existence of the ultimate fact at issue," which is the "employer's pervasive practice of intentional discrimination against the class." *United States v. City of N.Y.*, 717 F.3d 72, 83 (2d Cir. 2013). Unlike in a typical individual disparate treatment suit, "a plaintiff's burden under the pattern-or-practice method requires the plaintiff to prove only the existence of a discriminatory policy rather than all elements of a *prima facie* case of discrimination[.]" *Semsroth v. Wichita*, 305 F. App'x 707, 716 (10th Cir. 2008) (citation omitted). *Teamsters*, nonetheless, "sets a high bar for the *prima facie* case the Government . . . must present in a pattern-or-practice case[,]" and the employer "facing that serious accusation must have a broad opportunity to present in rebuttal any relevant evidence that shows that it lacked such an intent." *City of N.Y.*, 717 F.3d at 87 (citing *Teamsters*, 431 U.S. at 358).

The Supreme Court's discussion of "purposeful" conduct clearly indicates that the employer must have the "intent" to engage in a systematic practice of "resistance." Even assuming *arguendo* that the EEOC may bring Section 707(a) claims based upon a "pattern or practice" of conduct by the employer that does not amount to "discrimination" or "retaliation," the EEOC must still, nonetheless, produce evidence that the employer's conduct was intentional, i.e., "systematic and purposeful." In fact, courts have recognized that the *Teamsters* framework "charges the plaintiff with the *higher* initial burden of establishing 'that unlawful discrimination has been a regular procedure or policy followed by an employer or a group of employers.'" *Serrano v. Cintas Corp.*, 699 F.3d 884, 893 (6th Cir. 2012) (emphasis added); *see also E.E.O.C. v. Bass Pro Outdoor World, LLC*, 35 F. Supp. 3d 836, 846 (S.D. Tex. 2014), *aff'd*, __ F.3d __, 2016 WL 3397696 (5th Cir. June 17, 2016) ("[T]he initial burden in *Teamsters*—proving that discrimination was the company's standard operation procedure—is more demanding than what *McDonnell Douglas* requires.") (internal quotations and citation omitted).

Consequently, the EEOC's proposed theory that it must only produce evidence that an employee had a "reasonable belief" that his/her "rights" protected under Title VII (and specifically, the right to file a charge of discrimination) were being "resisted," *see, e.g.*, DE246, p. 1 n. 1, is inconsistent with the *Teamsters* framework, which emphasizes proof of intentional conduct by the employer. In fact, the EEOC's interpretation of Section 707(a) would ignore the express language of Section 707(a), which provides that the employer's "pattern of practice" of

unlawful conduct must be "*intended* to deny the full exercise of the rights herein described[.]" 42 U.S.C. § 2000e-6(a) (emphasis added). In short, the EEOC's position seeks to remove the "intent" requirement altogether from Section 707(a).

The EEOC asserts that Doherty engaged in a "pattern or practice of resistance to the full enjoyment of rights secured by Title VII" by "conditioning employment on its applicants' and/or employees' agreement to sign an arbitration agreement that prohibits the filing of charges of discrimination with the EEOC and [Fair Employment Practices Agencies]." *See* DE124, Second Amended Complaint, ¶ 7. While the EEOC alleges that the arbitration agreement "on its face prohibit[] charge-filing[,]" the arbitration agreement does not even *reference* the filing of charges of discrimination, let alone restrict that right. Unsurprisingly, the EEOC takes its argument one step further, arguing that even if the arbitration agreement did not explicitly restrict employees from filing charges of discrimination with the EEOC or Fair Employment Practices Agencies ("FEPAs"), Doherty nonetheless "intended" to "deny the full exercise of the Title VII right to file a charge." *See, e.g.*, DE246, p. 1 n. 1. However, the EEOC has not offered one "scintilla" of evidence supporting this conclusion. This argument is a stretch, even by the EEOC's standards, and ignores both the clear language in the arbitration agreement, as well as the well-established case law addressing similar arbitration clauses.

### b.    The arbitration agreement does not violate Title VII

On its face, the May 2013 Agreement does not prohibit the filing of discrimination charges or communication with the EEOC or FEPAs. Rather, the EEOC has *inferred* such a prohibition from language in the May 2013 Agreement, recently testifying in a deposition that one of the EEOC's issues with the May 2013 Agreement is the phrase, "any claim, dispute and/or controversy . . . which would allow resort to any court or other governmental dispute resolution forum . . . shall be submitted to and determined exclusively by binding arbitration." *See* SOMF, Exh. 7, Weisberg depo., 29:1-9. While it may be true that the EEOC can informally resolve disputes through voluntary conciliation, it has no power to resolve anything between two parties. The EEOC does not have judges or courts, and it has no authority to determine any claim between two parties. The EEOC is not a forum with the power to provide a remedy that the May 2013 Agreement was meant to address.

Courts presented with similarly worded arbitration agreements, and in particular agreements that used the word "administrative agency" rather than "governmental dispute

resolution forum," a much more accurate definition of the EEOC, have found that those provisions do not interfere with employees' rights to file charges of discrimination and the agreements were upheld. For example, in *Parilla v. IAP Worldwide Servs. VI, Inc.*, the Third Circuit upheld an arbitration agreement that provided "[a]ny controversy or claim arising out of or relating in any way to this [a]greement, to the breach of this [a]greement, and/or to [the] [e]mployee's employment with [the] [e]mployer . . . shall be resolved by arbitration and not in a court *or before an administrative agency*." 368 F.3d 269, 282 (3d Cir. 2004) (emphasis in original). The plaintiff challenged the validity of the provision by arguing "that it was unconscionable because it forbade her from filing a charge with the EEOC[.]" *Id.* Rejecting the plaintiff's argument, the Third Circuit held that an "employee does not have a right to have his or her dispute *resolved* before the EEOC in the first place[.]" *Id.* As the Third Circuit explained, "once the employee files a discrimination claim against the employer before the EEOC, the EEOC begins an investigation, attempts to resolve any unlawful employment practice, and, if unsuccessful, files a civil action against the employer in its own name; not in the name of the employee." *Id.* (citing 42 U.S.C. §§ 2000e-5(b), (f)). That is, "the EEOC has *no power to enter any judgment resolving a dispute* between employee or employer" and thus nothing in the agreement prevented the employee from filing a charge. *Id.* (emphasis added).

Likewise, in *Beery v. Quest Diagnostics, Inc.*, the plaintiffs argued that the arbitration clause in their employment agreements should not be enforced because the clause prevented the EEOC or any other agency from "considering" the plaintiffs' "claims of civil rights violations" relating to their employment. *See Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 543-44 (D.N.J. 2013). Those agreements provided:

> Employee and the Company understand that by agreeing to this [Arbitration Clause], they are giving up substantial legal rights, i.e., the right to sue in federal and state courts, the right to have disputes or claims heard by a jury *and the right to have claims of civil rights violations considered by local, state and/or federal investigatory agencies.*

*Id.* (emphasis added). In *Beery*, the plaintiffs argued that "this language impermissibly prohibits them from filing a charge with the EEOC." *Id.* at 544. In contrast, the defendant-employer argued that the "agreement limits only the employee's right to obtain an award of damages in proceedings before an administrative agency." *Id.* Relying upon *Parilla*, the *Beery* court

-8-

concluded that when "[r]ead in the context of the paragraph, the evident intent of the 'agency' language is simply to emphasize that the sole forum for [p]laintiff's claims is arbitration." *Id.* The court also noted that the "parties' course of conduct suggests that they understood the clause that way," since it was "undisputed that EEOC charges were filed[,]" and the defendant employer having never "argue[d] that [the] [p]laintiffs were prohibited from filing such charges or from assisting the EEOC in its investigation." *Id.* Consequently, the court held that the arbitration clause was "not void on grounds of public policy, and would not bar referral of this matter to arbitration." *Id.*

Generally, courts have upheld arbitration agreements that have used courts and "governmental dispute resolution forums" as descriptors for the purpose of specifying that the plaintiff's sole forum for claims is the arbitral forum. In *Curbelo v. Autonation Benefits Co.*, No. 14-CIV-62736, 2015 WL 667655, at *1 (S.D. Fla. Feb. 17, 2015), the court reviewed an arbitration agreement that stated that an employee agreed to arbitrate all claims "which would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from" the employee's employment with the employer. There, the court determined that the arbitration agreement—containing almost identical language to the present arbitration agreement—including the various exclusions from arbitration was valid and enforceable. *Id.* at 4; *see also Marshall v. Pontiac*, 287 F. Supp. 2d 1229, 1234 (S.D. Cal. 2003) (arbitration agreement with "governmental dispute resolution forum" language held valid and enforceable); *Wiley v. Treadwell Honda*, No. CA 08-0440-KDC, 2009 WL 577729, at *2 (S.D. Ala. Mar. 5, 2009) (same); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1127 (2013) (arbitration agreement held valid even where agreement precluded employee from statutory labor rights).

Furthermore, the fact that the Agreement did not contain an express carve-out for EEOC charges is also irrelevant for purposes of the intent inquiry. In *Reljic v. Tullett Prebon Americas Corp.*, No. 11-01323 (SRC), 2011 WL 2491342 (D.N.J. Jun. 21, 2011), the plaintiff argued the arbitration provision was unenforceable because "it restricts [the] [p]laintiff's right to pursue a claim with the [EEOC []] and because it fails to explicitly apprise [the] [p]laintiff of her right to file a charge with the EEOC[.]" *Id.* The court, relying heavily upon the Supreme Court's decision in *Gilmer*, emphasized that the plaintiff was fully able to vindicate her statutory rights under Title VII in the arbitral forum. *See id.* The district court rejected the plaintiff's argument, reasoning that the employer was not under an affirmative obligation to provide notice to the

employee, in the arbitration clause, that she could file a charge of discrimination with the EEOC or FEPAs. *See id.*

Similar to the analysis above, Doherty's arbitration language was not intended to, nor did it prevent an applicant or employee from filing EEOC or FEPA charges or communicating with those agencies. Doherty's representatives testified that they understood the "governmental dispute resolution forum" language to refer to court or other forum that could provide a remedy. *See* SOMF, Exh. 1, Coughlin depo., 68:20-69:16; *see also* SOMF, Exh. 2, Marcopoulos depo., 81:25-82:13. It is undisputed that the EEOC has no authority to "determine" any claims, disputes, or controversies or provide an applicant/employee with any remedy whatsoever. Rather, after the EEOC investigates a charge, if the case is not settled *voluntarily*, the EEOC must issue a right to sue to permit the aggrieved person to sue on his/her own behalf, or the EEOC may bring a case in its own name. 29 C.F.R. § 1601.18; 29 C.F.R. § 1601.19; 29 C.F.R. § 1601.20; 29 C.F.R. § 1601.21. But the determination of liability can only be decided in court, or as here, through arbitration. Even if the EEOC finds "cause" after an investigation, that finding has no value to the complaining party. It cannot be used by any court to prove the case. All cases brought in court are reviewed *de novo*. *See Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir. 1986); *see also E.E.O.C. v. Jacksonville Shipyards, Inc.*, 696 F. Supp. 1438, 1441 (M.D. Fla. 1988). It is also undisputed that: (1) during the time period in which the May 2013 Agreement was used, Doherty employees and applicants actually filed charges of discrimination with the EEOC and FEPAs; and (2) Doherty has *never* taken the position that employees who signed the Agreement were prohibited from filing charges of discrimination with the EEOC. *See* SOMF, ¶¶ 40-41. Thus the May 2013 Agreement's express language does not prevent the filing of a charge and is insufficient to prove Doherty's intent or any violation of Title VII.

## III.  ASSUMING ARGUENDO THE EEOC CAN MAKE A PRIMA FACIE CASE OF "RESISTANCE," DOHERTY CAN REBUT ANY INFERENCE OF DISCRIMINATORY INTENT

Assuming *arguendo* that the EEOC can demonstrate a *prima facie* case of resistance under *Teamsters,* which it cannot, the burden of proof shifts to Doherty to rebut the EEOC's case. *See Joe's Stone Crab, Inc.*, 220 F.3d at 1287. In *Teamsters*, the Supreme Court recognized that an employer may rebut a *prima facie* case by providing a "nondiscriminatory explanation for the apparently discriminatory result." 431 U.S. at 360 n. 46. The Supreme Court has also

recognized that the employer may rebut the *prima facie* case by "demonstrating that the Government's proof is either inaccurate or insignificant." *Id.* at 360.

To rebut the prima facie case, in the context of "pattern-or-practice" lawsuits, the "employer must produce any evidence that is relevant to rebutting the inference of discrimination." *United States v. City of N.Y.*, 717 F.3d 72, 85 (2d Cir. 2013). Consequently, the employer has the option to present a wide range of evidence to rebut or attack the government's *prima facie* case. For example, the employer may present a "direct attack on the statistics relied upon to constitute a prima facie case[,]" including demonstrating that the statistics are "infected with arithmetic errors, or lacking in statistical significance . . . based on too small a sample." *City of N.Y.*, 717 F.3d at 85.

As stated above, Doherty never interpreted the language of the May 2013 Agreement as meaning anything other than court or a forum that can provide a remedy. SOMF, ¶ 13. Doherty trained its managers that this was what the Agreement meant. SOMF, ¶ 12, 37. Moreover, Doherty posted the required federal poster which contained the address and telephone number of the EEOC and informed employees of their right to communicate with and file charges with the EEOC at each affiliate restaurant location. SOMF, ¶ 11. In fact, contrary to the EEOC's belief, it is clear that employees and applicants did not read the Agreement as restrictive because only 17 charges across all 161 restaurants have been filed with federal and state administrative agencies since 2013. SOMF, ¶ 40-41. Doherty has never defended any of those charges with the Agreement. SOMF, ¶ 43. To the contrary, Doherty substantively defends each charge. SOMF, ¶ 42. Finally, in 2015, Doherty amended the May 2013 Agreement to specifically add carve-out language and communicated to all employees that nothing in any prior agreements they may have signed was intended to, nor did it prevent them from filing a charge or communicating with the EEOC. SOMF, ¶ 15-32. Ninety-eight-percent of the Doherty population has acknowledged receipt of the new 2 May 2013 Agreement and communication. SOMF, ¶ 33. Thus, Doherty has sufficient evidence to rebut any minimal inference that could have arisen from the language of the May 2013 Agreement.

Moreover, the EEOC admitted that, at the time this lawsuit was filed on September 18, 2014, it did not have a factual basis to support its claim that Doherty prevented its applicants or employees from filing charges with the EEOC or FEPAs. *See* SOMF, ¶44, Exh. 6, EEOC Response to Defendant's Request for Admission No. 5, dated November 30, 2016 (as of

September 18, 2014, the EEOC was "not aware of the identity of any current or former Doherty applicant whom had actually been prevented from filing a Charge of Discrimination with the EEOC as a result of signing Doherty's May 2013 arbitration agreement."); EEOC Response to Defendant's Request for Admission No. 7, dated November 30, 2016 (as of September 18, 2014, the EEOC was not aware of any "current or former Doherty applicant who had actually been prevented from filing a Charge of Discrimination (or its state equivalent) with a state Fair Employment Practices Agency as a direct result of Doherty's May 2013 arbitration agreement."). After several years of protracted discovery, the EEOC *still* does not have any evidence that Doherty, by using the Agreement, engaged in a "pattern or practice" of intentionally preventing its applicants or employees from filing charges.

Unable to accept this reality, the EEOC now asks this Court to adopt an interpretation of Section 707 which ignores both the express language of that provision as well as Supreme Court precedent on this issue. Under the EEOC's proposed theory—which has not been accepted by any court—it only has to produce evidence that the *applicant or employees* could "reasonably believe" that they were restricted from filing charges with the EEOC as a result of the Agreement. This theory is wholly inconsistent with the Supreme Court's decision in *Teamsters*, which emphasized that the EEOC must produce evidence establishing the existence of "systematic and purposeful employment discrimination," which requires evidence of Doherty's intent to violate Title VII. 431 U.S. at 342; *see also Joe's Stone Crab*, 220 F.3d at 1286. The EEOC knows it has no such evidence and filed this case without proof of intent.

## V.   THE ARBITRATION AGREEMENT DOES NOT RESTRICT THE EEOC FROM PURSUING ENFORCEMENT ACTIONS

The Supreme Court has held that arbitration affects only the choice of forum, not a restriction of substantive rights. *See E.E.O.C. v. Waffle House*, 534 U.S. 279, 296 n. 10 (2002); *Gilmer*, 500 U.S. at 26. In *Waffle House*, the Supreme Court considered whether an employee's agreement to arbitrate disputes with his employer prevented the EEOC from suing the employer on the employee's behalf to obtain victim-specific relief like back pay or reinstatement. 534 U.S. at 293-94. The Court concluded that the EEOC was not prevented from filing suit or seeking any remedy that would otherwise be available. The Court also recognized that individuals who agreed to submit their claims to arbitration may nevertheless also file a complaint with the EEOC, and held "that an arbitration agreement signed by an employee who becomes a

discrimination complainant does not bar the EEOC from filing an enforcement suit in its own name." *Preston v. Ferrer,* 552 U.S. 346, 358 (2008) (discussing *Waffle House,* 534 U.S. at 293-94). An employer cannot stop the EEOC, a third party, from bringing a public enforcement action against the employer by invoking an arbitration agreement between the employer and the relevant employee. *See Waffle House*, 534 U.S. at 294.

In addition, the existence of an arbitration agreement between the employee and employer does not restrict the EEOC's ability to bring enforcement actions pursuant to Section 707(a) of Title VII based upon a "pattern or practice of resistance" theory. *See id.* at 295-96; *Serrano v. Cintas Corp.*, 699 F.3d 884, 896 (6th Cir. 2012) ("[S]ection 707 permits the EEOC to initiate suit without first receiving a charge filed by an aggrieved individual, as it must when initiating suit under § 706."). Regardless of any agreement between Doherty and its applicants/employees, the EEOC may still vindicate the public interest against discrimination and retaliation in employment. *See Gen. Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 236 (1980) (while the individual is guided by a desire to remedy his or her own discriminatory treatment, the EEOC is "guided by the overriding public interest in equal employment opportunity asserted through direct Federal enforcement.") (internal quotation marks omitted). Here, while individual employees may be limited to arbitration to resolve their disputes with Doherty relating to their employment, the EEOC is not restricted from pursuing enforcement actions against Doherty or other employers pursuant to its authority under Title VII.

## V.   EEOC'S INTERPRETATION OF SECTION 707(a) IS UNCONSTITUTIONALLY VAGUE AND VIOLATES THE FIFTH AND FOURTEENTH AMENDMENTS

At issue in this case is the meaning of Section 707(a), which grants authority to EEOC to bring suit against any person who "is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights *secured by this subchapter*, and that pattern or practice is of such a nature and is intended to deny the full exercise of the *rights herein described.*" 42 U.S.C. § 2000e-6(a) (emphasis added).

The EEOC argues that Section 707(a) authorizes it to file suit when the "pattern or practice of resistance" is not in opposition to discrimination or retaliation—the only employment practices expressly prohibited by Title VII—but *something else*. However, neither statute nor regulation define the term "resistance." The EEOC's novel interpretation of Section 707(a), as applied to the facts of this case, is thus unconstitutionally vague in violation of the Fifth and

Fourteenth Amendments of the United States Constitution. *See, e.g., Horton v. St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001) (distinguishing between as-applied and facial challenges).

As the Eleventh Circuit has noted, a "statute or regulation is considered unconstitutionally vague under the Due Process Clause of the Fifth Amendment if it 'forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Georgia Pac. Corp. v. OSHRC*, 25 F.3d 999, 1005 (11th Cir. 1994) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). To find a civil statute void for vagueness, the statute must be "so vague and indefinite as really to be no rule or standard at all." *Boutillier v. I.N.S.*, 387 U.S. 118, 123 (1967); *see also Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 669 n. 9 (11th Cir. 1984) (civil statute is not unconstitutionally vague "if persons of reasonable intelligence can derive a core meaning from the statute").

The EEOC's interpretation of Title VII must "give an employer fair warning of the conduct it prohibits or requires." *Id.* (citing *Diamond Roofing Co. v. OSHRC*, 528 F.2d 645, 649 (5th Cir. 1976)).[4] The vagueness of a standard is judged in "light of its application to the facts of the case." *See Georgia Pac. Corp.*, 25 F.3d at 1005-06 (when the Secretary of OSHA was "unable to settle upon a single definition of a critical term or phrase of its own regulation," that regulation was "unconstitutionally vague as applied for failing to give sufficient guidance to those who enforce OHSA penalties, to those who are subject to civil penalties, or to those courts who may be charged to interpret and apply the standards.). "[V]ague laws present two kinds of problems. The first is that a person of ordinary intelligence may be unable to determine how to conform his conduct to the law; the second is that the lack of explicit standards may result in persons charged with enforcement of the law acting arbitrarily and discriminatorily." *VFW John O'Connor Post #4833 v. Santa Rosa Cty.*, 506 F. Supp. 2d 1079, 1092 (N.D.Fla. 2007) (citing *Grayned v. Rockford*, 408 U.S. 104, 108 (1972)). In this case, Doherty could not conform its Agreement to Title VII because, until this litigation, the EEOC had never promulgated any "resistance" standard at all. Instead, Doherty followed actual judicial precedent and conformed its May 2013 Agreement to that precedent. *See supra,* pp. 7-9. The EEOC is unhappy with

---

[4] In *Bonner v. Prichard*, the Eleventh Circuit adopted as binding precedent those decisions rendered by the Fifth Court of Appeals prior to October 1, 1981. 661 F.2d 1206 (11th Cir. 1981).

arbitration agreements generally and is now trying to find a new way to attack them. This quandary is the exact definition of an unconstitutionally vague prohibition and Doherty should not be held to comprehend or follow such a nebulous standard.

The "rights secured by this subchapter," of course, are to be free from discrimination and retaliation, the only employment practices expressly prohibited by Title VII. The EEOC asks the Court to ignore this important reference and the language that Congress expressly adopted. Title VII's legislative history confirms the Congressional intent. Section 707 was added in 1964 to allow relief where "there is a pattern of discrimination." 110 Cong. Rec. 14,189 (1964) (Sen. Pastore). "The words 'resistance to enjoyment of the rights' under the Act means no more than refusal to comply with [T]itles II or VII of the Act: that is, engaging in any prohibited discrimination." Id. at 15,895 (Rep. Celler). And when Congress in 1972 transferred pattern-or-practice authority to EEOC, it reiterated this understanding. H.R. Rep. No. 92-238, at 13-14 (1971) (describing Section 707 as allowing "discrimination suits" that attack "deeply imbedded . . . discrimination"); S. Rep. No. 92-415, at 28 (1971) ("broad-scale actions against any 'pattern or practice' of discrimination").

Ignoring the clear statutory, legal and legislative intent, the EEOC is applying the "resistance" language of Section 707 in a way that makes Doherty, and every other employer to whom this section would be applied in the future, unclear about what they can and cannot do to protect against violations of Title VII. If the EEOC is no longer protecting against only discrimination or retaliation, what is it now protecting against? Title VII is an anti-discrimination statute to be sure. However, the EEOC's use of a dictionary to define the term "resistance" and its vague application of the statute to protect its own interests give companies zero guidance about what is prohibited by Title VII. *See* DE16, p. 12. Certainly, the EEOC has neither given this Court, nor any court, guidance about how to interpret and apply "resistance" under Title VII. This is the very definition of unconstitutional vagueness and is constitutionally impermissible. *Georgia Pac. Corp.*, 25 F.3d at 1005-06 ("A statute or regulation is considered unconstitutionally vague under the due process clause of the Fifth Amendment if it 'forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'"); *Faultless Div., Bliss & Laughlin Indus., Inc. v. Sec. of Labor*, 674 F.2d 1177, 1185 (7th Cir. 1982) (to pass constitutional muster, the law or regulation must provide a fair and reasonable warning of what it prohibits); *PBR, Inc. v. Sec.*

*of Labor*, 643 F.2d 890, 897 (1st Cir. 1981) (same); *McLean Trucking Co. v. OSHRC*, 503 F.2d 8, 10-11 (4th Cir. 1974).

In *E.E.O.C. v. CVS Pharmacy*, the Seventh Circuit ruled that "resistance" is not a claim under Section 707(a), and therefore does not provide a basis for the EEOC to file suit, without allegations of underlying discrimination or retaliation. 809 F.3d 335, 340-41 (7th Cir. 2015) (the EEOC not permitted to file Section 707(a) "pattern or practice" claim when employer conditioned severance pay on employees' signing of separation agreement). The Seventh Circuit rejected EEOC's "expansive interpretation of its powers" that Section 707(a) "extends beyond the pursuit of unlawful employment practices involving discrimination and retaliation[.]" *Id.* at 341. In *CVS*, the EEOC ignored the fact that Section 707(a) expressly incorporated by reference the "rights" protected in the anti-discrimination and anti-retaliation provisions of Title VII. *See id.* at 341 ("Section 7(a) allows the EEOC to challenge 'resistance to the full enjoyment of *any of the rights secured by [Title VII]*.' The Agency does the same in the present case. Suits under Section 707(a) must challenge practices that threaten the employee's right to be free from workplace discrimination and retaliation for opposing discriminatory employment practices—the only rights secured by Title VII.") (citing 42 U.S.C. § 2000e-6(a)) (emphasis in the original). As the Seventh Circuit cautioned, "Section 707(a) does not create a broad enforcement power for the EEOC to pursue non-discriminatory employment practices that it dislikes—it simply allows the EEOC to pursue multiple violations of Title VII (i.e., unlawful employment practices involving discrimination or retaliation defined in Sections 703 and 704) in one consolidated proceeding. *Id.* at 341 (citations omitted). *See also Serrano v. Cintas Corp.*, 699 F.3d 884, 894 (6th Cir. 2012) (claims "under § 707 . . . are limited to allegations of a pattern or practice of discrimination").

The EEOC's interpretation of Title VII simply does not give the employer "fair warning of the conduct it prohibits or requires." *Georgia Pac. Corp.*, 25 F.3d at 1005 (citation omitted). Nor is the interpretation consistent with the explicit language of Section 707(a), which incorporates by reference Title VII's provisions prohibiting discrimination and retaliation. *See* 42 U.S.C. § 2000e-6(a) ("rights secured by this chapter" and "rights herein described"). Consequently, the EEOC's proposed standard is really "no rule or standard at all," *Boutillier*, 387 U.S. at 123, and must be rejected as unconstitutionally vague in violation of the Fifth and Fourteenth Amendments.

## VI.   EEOC'S ABUSE OF POWER SHOULD NOT BE SANCTIONED BY THIS COURT

This case originated with a charge of discrimination, and therefore, the EEOC violated both Title VII and its own regulations when it failed to follow mandatory pre-suit procedures before filing this lawsuit. More than two years after this lawsuit was filed, Doherty finally learned what it suspected all along; the EEOC discovered the May 2013 Agreement when Doherty's affiliated restaurant submitted documents in response to an information request in the B.J.[5] charge of discrimination. The EEOC knew that it could not legally use the exact document that it received in the B.J. charge of discrimination to form the basis of this lawsuit. Instead, it took the confidential information from that document and conducted an internet Google search, for the sole purpose of locating an application containing the same arbitration agreement language with the additional listing of all of Doherty's concepts. Knowing that the true origin of its knowledge of the Arbitration Agreement was illegal, the EEOC used the internet document to bring a Complaint against Doherty. There is no doubt that this information about Doherty arose from a then- and still-pending, charge of discrimination and the EEOC never received permission from either Doherty or B.J. to make that information public in this litigation.

### a.   The Law of the Case Requires Judgement for Doherty because EEOC Failed to Follow its Own Regulations

This Court, in denying Doherty's Motion to Dismiss, held that the "EEOC must comply with the administrative requirements of [S]ection 706 (which includes engaging in conciliation) only when the EEOC is investigating or acting on a charge of discrimination." *See* DE32, p. 7. At that early stage of the proceeding, the EEOC represented that it had obtained the arbitration agreement from the internet, without providing any information as to where the initial information that lead to that internet search came from. *See* DE55, p. 4 n. 1. In discovery, Doherty requested documents relating to the "charge of discrimination wherein [the] EEOC obtained the [May 2013 Agreement]." *See* SOMF, ¶45-48, Exh. 9, EEOC's Responses to Doherty's First Request for Production of Documents, No. 4. On August 13, 2015, the EEOC responded, "[t]o the best of [the] EEOC's knowledge, there are no documents responsive to this

---

[5] Initials are used to preserve confidentiality.

request. [The] EEOC is not aware of any charge against Doherty that references Doherty's [May 2013 Agreement]." *Id.*

For more than two years, the EEOC refused to disclose to Doherty how it found out about Doherty's arbitration agreement or whether the EEOC found out about it in relation to a Section 706 charge of discrimination. In fact, Doherty was forced to file a Motion to Compel to obtain that critical piece of information. *See* DE139. In ordering the EEOC to disclose that information, the Court agreed with Doherty's

> [P]ublic policy argument that, if [the EEOC] were permitted to discover a document during the investigation of a charge of employment discrimination and then search for the document on the internet so that it could bring a separate lawsuit against the employer under [S]ection 707(a), this would potentially chill employers' voluntary participation in [S]ection 706 charge investigations. Moreover, even if the Arbitration Agreement could be publicly found on the internet at the time that this lawsuit was filed, [Doherty] could still arguably make a good faith argument that [the EEOC] violated 42 U.S.C. § 2000e-5(b), 42 U.S.C. § 2000e-8(e), 29 CFR §1601.22, or 29 CFR § 1601.26(a).

*See* DE169, p. 5. After Doherty was stonewalled in discovery for many months, it finally learned the answer; the information came directly from the open and currently-pending B.J. charge of discrimination. *See* SOMF, ¶45-48.

When the EEOC went searching for Doherty documents on the internet, it was simply investigating the scope and breadth of an arbitration agreement about which it learned in a pending charge. *See* SOMF, ¶45-48. Robert E. Weisberg, Esq., Regional Attorney for the EEOC's Miami District, testified that he and the Legal Unit became aware of Doherty's arbitration agreement because the investigator of the B.J. charge of discrimination came to the Legal Unit seeking legal advice. *See* SOMF, ¶45-48, Exh. 7, Weisberg depo., 60:25-62:15. The Legal Department, then ran with that information itself, rather than following the EEOC's regulations and Title VII's express statutory language. *See* SOMF, ¶45-48, Exh. 7, Weisberg depo., 60:13-20; *see also* DE1. The EEOC violated Doherty's procedural rights causing it prejudice when it failed to investigate, failed to notify Doherty of the claims against it, failed to give Doherty its right to respond, failed to privately conciliate, and failed to issue a right to sue all before this lawsuit was filed.

Now that it is clear that this lawsuit arose out of a pending charge of discrimination, the law of the case dictates that the EEOC failed to follow its own procedures. "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Klay v. All Defendants*, 389 F.3d 1191, 1197 (11th Cir. 2004) (citation and internal quotation marks omitted). The purpose of this doctrine is to promote consistency of rulings. *Id.* Here, the law of the case is that if the "EEOC is investigating or acting on a charge of discrimination" then it must follow Section 707(e) and thus, all of the procedures set out in Section 706. *See* DE32, p. 7. The EEOC, by its own admission did not do so.

> b.   **The EEOC Admitted its Unclean Hands and is Not Entitled to Equitable Relief**

A cardinal rule of equity is "he who comes into equity must come with clean hands. It is a self-imposed ordinance that closes the door . . . to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument v. Automotive Maint. Mach.,* 324 U.S. 806, 814 (1945). In this case, the EEOC has admitted that it violated Title VII's confidentiality rules, which directly affected Doherty and caused it harm. As a result, EEOC should not be permitted to seek any equitable relief from this Court.

"Title VII limits the EEOC's ability to 'make public' information it obtains during investigations of charges of discrimination." *E.E.O.C. v. Prod. Fabricators, Inc.*, 873 F. Supp. 2d 1093, 1099 (D. Minn. 2012). Furthermore, 29 C.F.R. §1601.22 provides in part as follows:

> Neither a charge, nor information obtained during the investigation of a charge of employment discrimination under Title VII, . . . nor information obtained from records required to be kept or reports required to be filed pursuant to title VII, . . . shall be made matters of public information by the [EEOC] prior to the institution of any proceeding under Title VII, . . . involving such charge or information.

*Id.* In addition, 42 U.S.C. § 2000e-8(e) makes it

> [U]nlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in

> violation of this subsection shall be guilty of a misdemeanor and
> upon conviction thereof, shall be fined not more than $1,000, or
> imprisoned not more than one year.

The Second Amended Complaint expressly quotes Doherty's arbitration agreement, which is attached thereto as "Exhibit A." *See* DE124, Second Amended Complaint, ¶ 8 (quoting Doherty's arbitration agreement). The EEOC has now admitted that it received the information regarding Doherty's arbitration agreement from an open and pending charge of discrimination, which led to it seeking out additional information on the internet. *See* SOMF, ¶¶45-48, Exh. 7, Weisberg depo., 60:13-20; *see also* DE1. The EEOC never received permission from Doherty or its affiliated restaurant to publish its information in this litigation, especially without the EEOC being honest regarding where the information came from in the first place. The EEOC also did not give B.J. a right to sue, which is a statutory requirement prior to filing this litigation. 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.19; 29 C.F.R. § 1601.21; 29 C.F.R. § 1601.28. The EEOC admittedly engaged in this illegal conduct and then hid that conduct from Doherty and this Court. The EEOC's unclean hands should subject the Second Amended Complaint to dismissal.

## CONCLUSION

Doherty respectfully submits that the Court grant its motion for summary judgment and dismiss the Second Amended Complaint.

Dated: February 16, 2017

Respectfully submitted,

/s/ Robert G. Haile, Jr.
Robert G. Haile, Jr., Esq.
Florida Bar No. 292796
Antoinette Theodossakos, Esq.
Florida Bar No. 178608
**HAILE, SHAW & PFAFFENBERGER, P.A.**
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100
Fax: (561) 622-7603
atheodossakos@haileshaw.com
*Counsel for Defendant*

/s/ Dena B. Calo
**SAUL EWING LLP**
650 College Road East, Suite 4000
Princeton, NJ 08540
Phone: (609) 452-3135
Fax: (215) 972-7104
dcalo@saul.com
*Counsel for Defendant*

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1(b)(2), Doherty respectfully requests a hearing on its Motion for Summary Judgment. The request for such a hearing is sought because of the complexity of this case. The estimated time required for such argument is one hour.

Respectfully submitted,

/s/  Robert G. Haile, Jr.
Robert G. Haile, Jr., Esq.
Florida Bar No. 292796
Antoinette Theodossakos, Esq.
Florida Bar No. 178608
**HAILE, SHAW & PFAFFENBERGER, P.A.**
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100
Fax: (561) 622-7603
atheodossakos@haileshaw.com
*Counsel for Defendant*

/s/  Dena B. Calo
Dena B. Calo, Esq.
**SAUL EWING LLP**
650 College Road East
Suite 4000
Princeton, NJ 08540
Phone: (609) 452-3135
Fax: (215) 972-7104
dcalo@saul.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of February, 2017, that the foregoing document is being filed this day with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Respectfully submitted,

/s/Robert G. Haile, Jr., Esq.
Robert G. Haile, Jr., Esq.
Florida Bar No. 292796
rhaile@haileshaw.com
Antoinette Theodossakos, Esq.
Florida Bar No. 178608
atheodossakos@haileshaw.com
Haile, Shaw & Pfaffenberger, P.A.
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100
Fax: (561) 622-7603
*Counsel for Defendant, The Doherty Group, Inc.*

## SERVICE LIST

***Counsel for Plaintiff, Equal Employment Opportunity Commission:***
Kimberly A. McCoy-Cruz, Esq.
Supervisory Trial Attorney
Kimberly.cruz@eeoc.gov
Kristen Foslid, Esq.
Trial Attorney
kristen.foslid@eeoc.gov
U.S. Equal Employment Opportunity Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: (305) 808-1803; Fax: (305) 808-1835

Robert E. Weisberg, Esq.
Regional Attorney
Robert.weisberg@eeoc.gov

P. David Lopez, Esq., General Counsel
James L. Lee, Esq., Deputy General Counsel
Gwendolyn Young Reams, Associate General Counsel
U.S. Equal Employment Opportunity Commission
131 M Street, N.E.
Washington DC 20507
(Via U.S. Mail)

***Counsel for Defendant, The Doherty Group, Inc.:***
Antoinette Theodossakos, Esq.
Haile, Shaw & Pfaffenberger, P.A.
atheodossakos@haileshaw.com
Robert G. Haile, Jr., Esq.
Florida Bar No. 292796
rhaile@haileshaw.com
660 U.S. Highway One, 3rd Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100; Fax: (561) 622-7603

Dena B. Calo, Esq.
Saul Ewing LLP
dcalo@saul.com
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Phone: (215) 972-7104
Fax: (215) 972-1858
*Admitted Pro Hac Vice*