IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Palm Beach Division

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | : | |
| OPPORTUNITY COMMISSION, et al. | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 9:14-cv-81184-KAM |
| | : | |
| THE DOHERTY GROUP, INC., d/b/a | : | |
| DOHERTY ENTERPRISES, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**EEOC'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff the United States Equal Employment Opportunity Commission ("EEOC") hereby moves for summary judgment with respect to its resistance claim under § 707(a) of Title VII of the Civil Rights Act of 1964 ("Title VII).

## I.      Introduction

In enacting Title VII, Congress created the EEOC and charged it with the mandate to eradicate employment discrimination through a detailed statutory scheme that provides individuals the right to file charges of discrimination. 42 U.S.C. §§ 2000e *et seq.*  As the Supreme Court has recognized, "[i]t is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired."  *EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984).

In carrying out its mission, the EEOC largely relies upon individuals to file charges of discrimination to alert the agency to both individual and systemic unlawful employment practices. Thereafter, the EEOC may mediate, investigate, make a reasonable cause finding, conciliate, and litigate such claims. *See EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1294 (11th Cir. 1980) (noting the EEOC's "comprehensive mandate and authority to petition for broad injunctive and pecuniary relief").  This system depends, however, on the free flow of information to the EEOC.

In this case, EEOC challenges Doherty's routine practice of utilizing a Mandatory Arbitration Agreement, as part of its employment application and as a condition of employment, that requires a waiver of the right to file charges of discrimination with the EEOC.[1] Doherty's policy of prohibiting or deterring applicants and employees from utilizing the statutory framework established by Congress not only poses a risk to the rights of individuals, but inflicts a systemic harm on EEOC and indeed the comprehensive Title VII enforcement mechanism crafted by Congress. If an employer is able to prohibit the filing of charges of discrimination through a company-wide program or policy, the company could, to a large extent, immunize itself from EEOC investigation of or challenge to any of its employment practices, which would have serious consequences for the EEOC's public enforcement role under the federal anti-

---

[1] All references to the "Mandatory Arbitration Agreement" are to Exhibit 6, which was also attached to EEOC's Complaint.  *See* DE # 1-1.

1

discrimination statutes. *See EEOC v. Astra USA*, 94 F.3d 738, 744 (1st Cir. 1996) ("Clearly if victims of or witnesses to [discrimination] are unable to approach the EEOC . . . the investigatory powers that Congress conferred would be sharply curtailed"). As demonstrated below, the undisputed facts strongly support a finding as a matter of law that the language of Doherty's Mandatory Arbitration Agreement constitutes a pattern or practice of resistance to the right to file charges of discrimination.

## II.     Undisputed Facts[2]

### A.     Doherty Enterprises

The Doherty Group, Inc., d/b/a Doherty Enterprises ("Doherty") is a management company that operates restaurants in New Jersey, New York, Florida and Georgia.  SOF ¶ 1. Doherty provides its management services to seven restaurant concepts: Applebee's, Chevys, Noodles & Company, Panera Bread, Quaker Steak & Lube, The Shannon Rose, and Spuntino Wine Bar & Italian Tapas.  SOF ¶ 3.  Between 2012 and 2015, the number of restaurants under the Doherty umbrella grew from 100 to 163 restaurants, and the number of employees on Doherty's payroll grew from 11,201 to 17,023.  SOF ¶¶ 4-8.

### B.     The 2002-2013 Arbitration Agreement

From approximately 2002 until 2013, Doherty used a mandatory arbitration agreement (the "2002-2013 Agreement") that required arbitration of all employment related "claims" and that waived the right "to pursue such claims in the judicial or administrative court system."  *See* SOF ¶¶ 29-30. The 2002-2013 Agreement further required signature confirmation from the employee that: "I fully understand that by signing this document **I am waiving the right to proceed in any judicial or administrative proceeding, other than arbitration**, for any and all claims against Doherty Enterprises or any of its related companies."  SOF ¶ 30.  The 2002-2013 Agreement was not part of an employment application.  SOF ¶¶ 29-30.

Doherty also, prior to 2013, specifically advised employees in its employee handbook of the right to file charges of discrimination with the Equal Employment Opportunity Commission, notwithstanding the requirements of the mandatory arbitration agreement:

> At the time you applied for employment with Doherty, you signed an Arbitration Agreement which requires that all disputes between you and Doherty must be submitted to and determined exclusively by binding arbitration.  **Nothing in this**

---

[2] In accordance with Federal Rule of Civil Procedure 56 and S.D. Fla. L.R. 56.1, EEOC has separately submitted a Statement of Undisputed Material Facts ("SOF").

**binding Arbitration Agreement between you and Doherty prevents you from first filing a charge or complaint, communicating with, or cooperating in an investigation or proceeding conducted by, the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), or any other federal, state, or local agency charged with the enforcement of any laws.** However, you shall not be entitled to file a complaint in Court related to such charge or complaint, communication or investigation. If you have any questions about your right to file a charge of complaint, or would like a copy of the agreement you singed, please call the Human Resources Department at 1-866-DOHERTY (1-866-364-3789) and an HR Representative will assist you.

SOF ¶ 54 (emphasis added). Although Doherty is not certain of the date that it ceased explicitly advising employees of the right to file charges of discrimination with the EEOC, it is undisputed that "since 2013, [this] information has not been provided to any employee or applicant." SOF ¶¶ 55-56.

### C.     The Revised Mandatory Arbitration Agreement

Beginning in 2012 or 2013, Doherty began having discussions with counsel regarding possible changes to its arbitration agreement. SOF ¶ 31. According to Kathy Coughlin, Doherty's Vice-President of Human Resources, Training, and Recruiting,[3] at this time, Doherty was seeking to expand its restaurant holdings by purchasing Applebee's restaurants in two new states—Florida and Georgia—and Ms. Coughlin "had knowledge that the franchisee maybe had some legal issues in the past." SOF ¶ 32. As such, Ms. Coughlin had a "heightened sense to start off on the right foot to make sure that the patterns and practices that they had from the date of our ownership were strong in the HR areas." SOF ¶ 33.

Ms. Coughlin discussed revising the 2002-2013Arbitration Agreement with Doherty's outside counsel, Dena Calo, Esq., Doherty's General Counsel, Jack Hall, Doherty's Executive Vice President and Chief Financial Officer, Jerry Marcopoulos, and, at a very high level, with Doherty's President and Co-Chief Executive Officer Ed Choe. SOF ¶ 34. Ms. Calo drafted the Mandatory Arbitration Agreement, and in turn, Ms. Coughlin reviewed it, approved its language, and recommended that it be adopted by Doherty. SOF ¶ 36. Doherty adopted the new Mandatory Arbitration Agreement in May of 2013. SOF ¶ 36.

---

[3] Ms. Coughlin served as Doherty's corporate representative at deposition. Accordingly, her testimony on this point is an admission of the Defendant.

Doherty's revised Mandatory Arbitration Agreement provides, in relevant part:

I acknowledge that Doherty Enterprises utilizes a system of alternative dispute resolution which involves binding arbitration to resolve any dispute, controversy, or claim arising out of, relating to or in connection with my employment with Doherty Enterprises.  As a condition of my employment at Doherty Enterprises or any of its related companies, I agree to the terms of this Agreement because of mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both Doherty Enterprises and myself.

I and Doherty Enterprises both agree that any claim, dispute, and/or controversy (including but not limited to any claims of employment discrimination, harassment, and/or retaliation under Title VII and all other applicable federal, state, or local statute, regulation, or common law doctrine) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and Doherty Enterprises (and/or its parents, subsidiaries, affiliates, owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with Doherty Enterprises, whether based on tort, contract, statutory, or equitable law or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under applicable state and/or local law) shall be submitted to and determined exclusively by binding arbitration. . . .  Any dispute shall be submitted for resolution to an impartial arbitrator selected under the Rules of the American Arbitration Association, whose decision shall be final and binding and subject to confirmation in a court of competent jurisdiction. . . . .

I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH DOHERTY ENTERPRISES AND I WAIVE OUR RIGHTS TO TRIAL BY JURY.  I FURTHER UNDERSTAND THAT THIS BINDING ARBITRATION AGREEMENT IS A CONTRACT.  HOWEVER, IT DOES NOT CONSTITUTE A CONTRACT OF EMPLOYMENT, AS IT DOES NOT COVER ANY OTHER TERMS AND CONDITIONS OF MY EMPLOYMENT.

SOF ¶ 42.

**D.    Differences Between the 2002-2013 Agreement and the 2013 Mandatory Arbitration Agreement**

Doherty's Mandatory Arbitration Agreement is broader in scope than the version used between 2002-2013 in several material respects:

| 2002-2013 Agreement<br>[2002-2013] | Mandatory Arbitration Agreement<br>[May 2013-present] |
|---|---|
| • Agreement applies to "claims" | • Agreement applies to "any claim, dispute, and/or controversy" |
| • No reference to any particular law | • Specifically references and includes "claims of employment discrimination, harassment, and/or retaliation under Title VII" |
| • Required waiver of right to pursue claims in the "judicial and administrative court system" | • Requires waiver of right "to resort to any court or other governmental dispute resolution forum" |
| • No carve out | • Advises applicants and employees that they are permitted to file claims "arising under the National Labor Relations Act which are brought before the National Labor Relations Board" |
| • Does not specifically say the agreement is a "contract" | • Informs applicants and employees that the Mandatory Arbitration Agreement is a "contract." |

Notwithstanding the clear broadening of the language used in the newly revised Mandatory Arbitration Agreement, Doherty asserts that the words "claim, dispute, and/or controversy" mean "a dispute that was going to go to court;" that the phrase "claim of employment discrimination" means a "claim that was to go before a court of law;" and that the term "governmental dispute resolution forum" means "court." SOF ¶ 49.

**E.      EEOC's Proceeding**

EEOC learned of Doherty's use of a mandatory arbitration agreement in June 2014 when Doherty Florida East Delray, LLC, a Doherty-operated restaurant in Florida, submitted Brenna Jefferson's arbitration agreement to the agency (the "Personnel File Copy Arbitration Agreement"). SOF ¶¶ 9-10. The Personnel File Copy Arbitration Agreement was brought to EEOC Counsel's attention by an investigator in connection with a request for legal advice. SOF ¶ 11.

Thereafter, considering the actual language of the mandatory arbitration agreement, EEOC Counsel began a Rule 11 investigation,[4] and found a new, different version of Doherty's

---

[4] Rule 11 investigation refers to Federal Rule of Civil Procedure 11(b) which provides: "By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of

Mandatory Arbitration Agreement on the Internet through a simple Google search.  SOF ¶¶ 15-16.  As part of EEOC Counsel's Rule 11 investigation and subsequent Complaint, EEOC did not: (1) expand any existing charges of discrimination; (2) file a Commissioner's Charge of discrimination; (3) base this lawsuit on a charge of discrimination; or (4) issue a Letter of Determination under Section 706.   SOF ¶¶ 12-14, 17.

On August 6, 2014, EEOC wrote to Doherty, indicated that EEOC considered the language of the Mandatory Arbitration Agreement to be a violation of Section 707(a) of Title VII, and offered Doherty a voluntary, pre-suit settlement opportunity, which Doherty declined. SOF ¶ 19.  EEOC commenced this action after the Commission approved the litigation.  SOF ¶ 21.  At no time prior to filing the lawsuit did EEOC disclose the Personnel File Copy Arbitration Agreement that was submitted to EEOC by Doherty Florida East Delray, LLC to the public.[5] SOF ¶ 24.  EEOC did not disclose the Mandatory Arbitration Agreement it found through a simple Google search on the Internet to the public until EEOC filed the Complaint and attached it as an exhibit.  SOF ¶¶ 22, 26.

## III.   By Requiring All Applicants and Employees to Sign the Mandatory Arbitration Agreement, Doherty Has Engaged in a Pattern or Practice of Resistance to The Right to File Charges of Discrimination Under § 707(a).

Pursuant to Title VII of the Civil Rights Act of 1964:

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States . . . .

---

the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…" Fed. R.Civ. P. 11 (2016).

[5] Doherty publically disclosed the Personnel File Copy Arbitration Agreement by filing it on cm/ecf.  *See* DE # 215 at 26-27; DE # 216 at 26-27; and DE # 217 at 11-12.

42 U.S.C. § 2000e-6(a).  Here, by conditioning employment upon a mandatory waiver of the right to file charges of employment discrimination with EEOC and other governmental dispute resolution for a, Doherty has engaged in a pattern or practice of resistance to the full exercise of employees' and applicants' Title VII right to file a charge of discrimination.

     **A.**     **Doherty's Mandatory Arbitration Agreement Reflects Doherty's Standard Operating Procedure.**

Since approximately May 2013, Doherty has utilized a Mandatory Arbitration Agreement that requires all applicants and employees to submit all employment disputes to binding arbitration. Doherty's use of the Mandatory Arbitration Agreement was not isolated or sporadic: it is undisputed that the Mandatory Arbitration Agreement was part of Doherty's employment application, SOF ¶ 37; that signing the Mandatory Arbitration Agreement was a condition of employment, SOF ¶¶ 38, 42; and that it has been signed by thousands of employees across four states and seven restaurant concepts.  SOF ¶¶ 4-7, 50-52.  It has also been signed by a countless number of applicants not ultimately hired.  SOF ¶¶ 50-51, 53.  Indeed, Doherty's Answer admits that the Mandatory Arbitration Agreement was used for all applicants and employees for hourly and managerial positions in Florida, Georgia, New Jersey, and New York.  SOF ¶¶ 50-51.

Doherty's widespread and persistent use of the Mandatory Arbitration Agreement between approximately May 2013 and January 2015 constitutes a pattern or practice of behavior. *See, e.g., EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1287 (11th Cir. 2002) ("[the government] need only establish a prima facie case that such a policy existed."); *United States v. Housing Authority of City of Chickasaw*, 504 F. Supp. 716, 727 (S.D. Ala. 1980) ("When, as here, a policy of regular application is itself alleged to be discriminatory, the pattern or practice requirement is satisfied."); *United States v. Garden Homes Mgmt. Corp.*, 156 F.Supp. 2d 413, 423 (D.N.J. 2001) ("Proof that a party adopted a discriminatory policy satisfies the Fair Housing Act's pattern and practice requirement."); *United States v. Hughes Memorial Home*,  396 F.Supp. 544, 551 (W.D. Va. 1975) ("The demonstrated existence of a policy of discrimination is sufficient to constitute the pattern and practice. . ."). Accordingly, Doherty's across-the-board implementation and requirement that all applicants and employees accept its Mandatory Arbitration Agreement as a condition of employment between approximately May 2013 and January 2015 reflects Doherty's standard operating procedure.

**B.**    **The Waiver Language Contained in Doherty's Mandatory Arbitration Agreement, on its Face, Violates the Right to File Charges of Discrimination.**

    i.    *Title VII Protects the Right to File Charges of Discrimination.*

As this Court previously recognized in denying Doherty's Motion to Dismiss, Title VII protects the right to file charges of discrimination.  *See generally* DE # 32 (Order Denying Motion to Dismiss). More specifically, Section 706 provides aggrieved individuals the rights to file a charge of discrimination and to invoke the administrative enforcement mechanism created by Congress for resolving complaints of discrimination—including an investigation, reasonable cause determination, and conciliation. *See* 42 U.S.C. § 2000e-5(b). In turn, these rights are secured by, among other protections, the anti-retaliation provisions of Title VII. *See* 42 U.S.C. § 2000e-3; *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (purpose of anti-retaliation provisions of Title VII is to "maintain unfettered access to statutory remedial mechanisms").

The right of individuals to file charges and to utilize the remedial, statutory mechanism established by Congress is essential to Title VII, which "depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). Courts have long recognized that filing a charge is a right that cannot be validly waived, since such waiver is contrary to public policy. *See, e.g., EEOC v. Cosmair*, 821 F.2d 1085, 1090 (5th Cir. 1987) (waiver of the "right to file a charge" is void as against public policy).  Indeed, the Supreme Court has specifically recognized that aggrieved individuals should retain the right to file charges of discrimination, notwithstanding the existence of a mandatory arbitration agreement. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28 (1991) (noting that "[a]n individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action[,]" and that "it should be remembered that arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief."). As such, the "rights" secured by Title VII include the right to file charges of discrimination, and to have those charges investigated, and possibly mediated, conciliated, and otherwise resolved through the EEOC's statutorily mandated governmental dispute resolution processes, including litigation.  *See E.E.O.C. v. Ralphs Grocery*

*Co.*, 300 F. Supp. 2d 637, 640 (N.D. Ill. 2004) ("the FAA does not trump the EEOC's statutory authority to investigate and, if it chooses, prosecute charges of discrimination").

> ii.    *Applicants and Employees Undoubtedly Waive the Right to File Charges of Discrimination Pursuant to the Clear and Unequivocal Waiver Language Contained in Doherty's Mandatory Arbitration Agreement*.

Doherty's Mandatory Arbitration Agreement, on its face, requires applicants and employees, as a condition of employment, to waive the right to file charges of discrimination with governmental dispute resolution forum such as the EEOC. The Mandatory Arbitration Agreement therefore violates Title VII.

Doherty will likely point out that the Mandatory Arbitration Agreement does not explicitly say, "you may not file a charge of discrimination with EEOC or other state and local FEPAs."  However, Doherty has accomplished the same result by explicitly prohibiting employees and applicants from seeking to resolve "any claim, dispute, and/or controversy" relating to their employment with Doherty through any governmental dispute resolution forum other than the NLRB.

> a)    The Waiver Specifically Targets Governmental
>        Dispute Resolution Fora.

The Mandatory Arbitration Agreement explicitly prohibits resort to any *governmental dispute resolution forum*.  Indeed, any claim—explicitly including claims under Title VII—which "*would otherwise require or allow resort to any* court or other *governmental dispute resolution forum*" shall be submitted to binding arbitration. SOF ¶ 42.  It is undisputed that EEOC is a governmental dispute resolution forum.[6] SOF ¶ 44-48.

As a Congress-created governmental dispute resolution forum, EEOC's role is to attempt to resolve employment disputes relating to discrimination or retaliation before they enter the court-system and require judicial resources. In fact, upon the filing of a charge of discrimination, EEOC notifies charging parties and respondents of its mediation program: "EEOC has a mediation program that gives parties the opportunity to resolve the issues in a charge without extensive investigation or expenditure of resources."  SOF ¶ 47.  Likewise, Title VII specifically

---

[6] Ms. Coughlin, Doherty's 30(b)(6) Representative, also referred to EEOC as a governmental dispute agency at her deposition: "I've cooperated with the EEOC anytime your governmental dispute agency – I did not invoke the arbitration agreement. I instead provided you files and cooperated fully."  SOF ¶ 48.

confers upon EEOC a duty to attempt to conciliate charges of discrimination: "If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b).  Thus, for instance, in 2015, EEOC resolved 92,641 charges of discrimination and secured $356.6 million in monetary relief for victims of employment discrimination in private sector and state and local government workplaces through mediation, conciliation and other administrative resolution mechanisms.  *See* SOF ¶ 45-46.[7]

Of course, Title VII both allows—and requires—applicants and employees to resort to the EEOC or a Fair Employment Practices Agency by filing charges of discrimination.  *See* 42 U.S.C. § 2000e-5.  By including language in the Mandatory Arbitration Agreement—a contract between Doherty and its applicants/employees—which explicitly disallows resort to a governmental dispute resolution forum for Title VII claims, Doherty impedes applicants and employees from seeking redress through the EEOC.

> b) <u>Broad Waiver is Required Beyond What Might be Brought to a "Court."</u>

The Mandatory Arbitration Agreement covers "any claim, dispute, and/or controversy." While Doherty will suggest that the Mandatory Arbitration Agreement was only intended to apply to "court" proceedings, it could have limited the mandatory waiver language in that way, but did not do so.  For instance, Doherty could have stated that any "lawsuit," "causes of action," or "complaint" that would otherwise allow resort to any court . . . shall be submitted to binding arbitration.  Instead, in revising its 2002-2013 Agreement, Doherty selected and utilized significantly broader language to encompass employment "claim[s], dispute[s], and/or controvers[ies]" that would fall short of the "claim" required for invocation of the legal process.

> c) <u>The Waiver Focuses Upon and Underscores its Application to Employment Discrimination Disputes, Striking at the Heart of EEOC's Mandate.</u>

---

[7] EEOC's Performance and Accountability Reports are available online.  *See e.g.* EEOC's Fiscal Year 2013 Performance and Accountability Report (available at https://www.eeoc.gov/eeoc/plan/upload/2013par.pdf); EEOC's Fiscal Year 2014 Performance and Accountability Report (available at https://www.eeoc.gov/eeoc/plan/upload/2014par.pdf.).

While Doherty will undoubtedly argue that Doherty's Mandatory Arbitration Agreement does not mention EEOC, it cannot dispute that the 2013 revision focuses specifically on employment claims that are typically submitted to EEOC:

> [A]ny claim, dispute, and/or controversy (**including but not limited to any claims of employment discrimination, harassment, and/or retaliation under Title VII and all other applicable federal, state, or local statute, regulation, or common law doctrine**) which would otherwise require or allow resort to any court or other governmental dispute resolution forum…

SOF ¶ 42 (emphasis added).  Indeed, the *only* disputes that are specifically highlighted as being subject to arbitration are "employment discrimination, harassment, and/or retaliation," and the single law that is called out is Title VII.  (For instance, Doherty does not emphasize that personal injury or overtime compensation claims are subject to arbitration.) Doherty cannot refute that the Mandatory Arbitration Agreement applies precisely to those claims that Congress determined should be brought, in the first instance, to EEOC through the filing of charges of discrimination.

    d)  <u>Consistent with the Intent to Waive the Right to Access EEOC, the Waiver Carves Out an Exception for One Type of Governmental Dispute Resolution Forum, the NLRB.</u>

Finally, Doherty's Arbitration Agreement explicitly excludes at least one governmental dispute resolution forum from its provisions – the NLRB: "(with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under applicable state and/or local law)."  Regrettably, the contract does not state that an applicant or employee can also file a charge of discrimination with the EEOC; rather, the only carve outs are for claims under the NLRB and state and local claims concerning medical and/or disability benefits.

Accordingly, based on the provisions above as well as the overall language of the contract, a reasonable employee would conclude that the Mandatory Arbitration Agreement did not allow for the filing charges of discrimination with the EEOC. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (applying an objective standard for determining liability in the context of § 704 to determine whether challenged conduct would dissuade "a reasonable

worker from making or supporting a charge of discrimination" and noting that the objective standard is "judicially administrable").[8]

C.     **Doherty's Mandatory Arbitration Agreement Reflects a Pattern or Practice of Resistance.**

Congress did not define the term "resistance" in Title VII, and as such, the Court must give the term its ordinary meaning. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*, 555 U.S. 271, 276 (2012) (holding that courts will give an undefined term its ordinary meaning and defining the term "oppose" in Title VII to include "to resist"). The ordinary meaning of the word "resistance" is an "effort made to stop or to fight against someone or something" or "the ability to prevent something from having an effect." *See* Merriam-Webster's Collegiate Dictionary 996 (10th ed. 1999, http://www.meriam-webster.com/ dictionary/ resistance; *see also United States v. Original Knights of the Ku Klux Klan*, 250 F. Supp. 330, 356 (E.D. La. 1965) (Wisdom) (finding "resistance" where the defendants "beat and threatened Negro pickets" which would "not only deter Negroes but intimidate employers who might otherwise wish to comply with the law"); *United States v. Gulf-State Theaters*, 256 F. Supp. 549, 557-58 (N.D. Miss. 1966) (enjoining a private individual under the Title II resistance provision from "urging, advocating, recommending, establishing, or continuing a policy of noncompliance with the Act" in movie theaters, many of which he did not own or control). Thus, resistance to

---

[8] Courts routinely interpret various civil rights and employment statutes by applying an objective, reasonable person standard. *See, e.g., Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (qualified immunity); *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207-08 (11th Cir. 2003) (in ERISA context, observing that what "may seem obvious" to "attorneys and judges familiar with the law in general and with ERISA law in particular" may not to "the average plan participant"); *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991) (constructive discharge); *Miami Fair Housing Center v. Connor Group*, 725 F.3d 571 (6th Cir. 2013) (using an ordinary reader standard to determine whether an advertisement indicates a preference based upon a protected category under the Fair Housing Act); *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 437 (7th Cir. 1997) (in pre-OWBPA ADEA case, relying on Title VII precedent in assessing "knowing and voluntary" nature of waiver, and observing: "Except in the most extreme circumstances, contract law is not terribly concerned with unequal bargaining power …. The contract approach [] does not give sufficient weight to the federal interest in ensuring that the goals of the ADEA are not undermined by private agreements born of circumstances in which employees confront extreme economic pressures or lack information regarding their legal alternatives."). This is precisely why the objective "reasonable person" test from Title VII is what should govern in this Section 707 action.

the full enjoyment of a right should simply be understood to refer to an effort to stop, prevent, or deter an applicant or employee from exercising a right protected by Title VII.

Here, the waiver language Doherty used in the Mandatory Arbitration Agreement, consistently and repeatedly over a period of time, prohibits resort to charge filing with EEOC and other state and local government dispute resolution fora, and as such, Doherty has violated Title VII.  Because the term "resistance" focuses on the <u>Defendant's</u> conduct, *i.e.,* attempts and/or efforts to deter or discourage charge filing, EEOC does not have to demonstrate that Doherty was ultimately successful in chilling Title VII rights by pointing to specific victims.

Doherty will likely argue that, because a small number of employees actually did file charges of discrimination between 2013 and 2015, that it cannot be found liable for a violation of Title VII.  However, the fact that a miniscule number of Doherty's more than 14-17,000 employees did actually file charges of discrimination with some governmental dispute resolution forum between 2013 and 2015 does not negate a finding of a pattern or practice. Although this Court has not had occasion to consider this issue in the Title VII context, courts have examined the scope of "interference" in the context of enforcement actions brought under the National Labor Relations Act ("NLRA"), which provides that it shall be an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the right guaranteed in section 157 of this title."  *See NLRB v. Exchange Parts Co*., 304 F.2d 368 (5th Cir. 1962), *overruled on other grounds* 375 U.S. 405 (1964).  Under the NLRA, the Fifth Circuit and other Circuit Courts of Appeal have noted, "[I]t is not necessary that the interference shall be successful in preventing organization."  *Id.* at 374.  *See also Meat Cutters Union Local v. NLRB*, 458 F.2d 794 n.20 (D.C. Cir. 1972) ("The fact that the Union's coercive conduct did not achieve the apparent result sought--as evidence[d] by the fact that Supervisor Hall continued to adhere to the Company policy despite the Union's disciplinary efforts--does not detract from its illegality under section 8(b)(1)."); *NLRB v. Rich's Precision Foundry, Inc.*, 667 F.2d 613, 622 (7th Cir. 1981) ("The existence of an overly broad rule may violate § 8(a)(1) even without a showing that it had been enforced because its mere existence may chill the exercise of § 7 rights."); *In re American Tissue Corp*., Case 29-CA-20226, 336 NLRB No. 36 (N.L.R.B. 2001) ("It is well settled that the test of interference, restraint, and coercion under Section 8(a)(1) of the Act does not turn on the employer's motive or on whether the coercion succeeded or failed.  The test is

whether the employer engaged in conduct, which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act.")

Courts have also found violations of the Fair Housing Act based on a defendant's unlawful conduct, without regard to the Defendant's ultimate success in fully accomplishing a discriminatory policy. For instance, in *Spencer v. Conway*, No. CV 00–350GLTEJ, 2001 WL 34366573 (C.D. Cal. July 5, 2001), the court held that it was a violation of the Fair Housing Act, 42 U.S.C. § 3604(a), for an apartment owner to instruct residential managers not to rent to minority applicants. *Id.* *1. Specifically, the court found liability on the part of an apartment owner, even though the individual managers neither declined to rent to minority applicants nor took any other discriminatory action as a result of the instruction. *Id.* Likewise, in *United States v. Hunter*, 459 F.2d 205 (4th Cir. 1971), the United States brought a pattern or practice of resistance claim alleging violations of § 3604(c) of the Fair Housing Act. The Fourth Circuit held that an advertisement with the words, "white home," indicated to readers of the advertisement a preference for race in violation of § 3604(c), notwithstanding that there was no evidence before the Court as to whether any non-white individual actually sought to rent the apartment. *Id.* at 205-06.

Here, EEOC's lawsuit challenges Doherty's efforts, through the use of its fully implemented written policy—the Mandatory Arbitration Agreement—to deter charge filing. Because EEOC is alleging resistance, the fact that Doherty may not have been 100% successful in its efforts to deter, discourage and/or prevent applicants or employees from filing charges of discrimination does not suggest the absence of a pattern or practice.[9] As discussed in more detail

---

[9] The fact that an applicant or employee may have filed a charge of discrimination despite the Mandatory Arbitration Agreement, does not negate Doherty's effort, intent, or uniform use of the agreement; it simply suggests that, for some unknown reason, Doherty was not completely successful in its efforts (for instance, maybe the individual consulted an attorney). In any event, even if the Court could attribute the small number of charges filed to positive conduct on the part of Doherty, courts routinely find a pattern or practice of behavior even where the defendant's conduct is not uniform. *See, e.g., United States v. Lansdowne Swim Club*, 894 F.2d 83, 89 (3d Cir. 1990) ("we need not find that LSC always discriminated to find that it engaged in such a pattern or practice."); *Garden Homes Mgmt. Corp.*, 156 F.Supp.2d at 423 ("Finally, the mere presence of black tenants at the Subject Properties does not preclude the Government from establishing a pattern or practice of racial discrimination. . . . [A] defendant might on occasion make exceptions to its discriminatory norm, but that such exceptions do not bar liability."). Indeed, pattern or practice claims are most typically proven through statistical evidence; thus, for instance, in a hiring case, the claim is not that the defendant *never* hires individuals in the

below, the Mandatory Arbitration Agreement itself evidences Doherty's intent to deter charge filing.

### D.      Doherty's Use of The Mandatory Arbitration Agreement was Intentional.

#### i.      Intent Can be Inferred from the Mandatory Arbitration Agreement.

EEOC can also demonstrate that Doherty's use of the Mandatory Arbitration Agreement was intentional by examining the words of the contract.  As articulated by the Supreme Court, when examining a written fetal protection policy under Title VII:

> Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on **why** the employer discriminates but rather on the **explicit terms of the discrimination**. In *Martin Marietta, supra,* the motives underlying the employers' express exclusion of women did not alter the intentionally discriminatory character of the policy. Nor did the arguably benign motives lead to consideration of a business necessity defense.

*Int'l Union v. Johnson Controls*, 499 U.S. 187, 189 (1991) (emphasis added).  As further explained by the Eleventh Circuit Court in *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263 (11th Cir. 2000), an employer can be found liable for intentional discrimination regardless of whether it also was motivated by ill-will or malice. *Joe's Stone Crab,* at 1283-1284; *Ferrill v. The Parker Group, Inc.*, 168 F.3d.468, 473 n. 7 (11th Cir. 1999) ("ill will, enmity, or hostility are not prerequisites of intentional discrimination" under § 1981).  Indeed, "animus and intent to discriminate are not synonymous." *Ferrill*, 168 F.3d at 472-473.[10]  Rather, as set forth in *United States v. Jackson Terminal Co.*, 451 F.2d 418, (5th Cir. 1971), "the Government need not prove a

---

protected class, but that the failure to hire members of the protected class is statistically significant. Thus, Doherty cannot defeat EEOC's motion for summary judgment by pointing to a small number of charges of discrimination.

[10] Likewise, it is well established that ignorance of the law is not a defense.  *See Demers v. Adams Homes of Northwest Fla., Inc.*, 321 Fed. Appx. 847, 853 (11th Cir. 2009) (finding that where a plaintiff established a prima facie claim of retaliation under Title VII, Defendant's good faith belief that plaintiff was an independent contractor and not an employee is not a legitimate, non-discriminatory business reason for terminating her); *see also Pederson v. Louisiana State University*, 213 F.3d 858, 880 (5th Cir. 2000) (finding that the institution's alleged ignorance of the law did not preclude the court from finding that it acted intentionally and that the institution need not have intended to violate Title IX); *United States v. Balistrieri*, 981 F.2d 916, 936 (7th Cir. 1992) (holding that a defendant need not actually know that he is violating the Fair Housing Act in order to be found to have discriminated).

specific present intent to discriminate. . . . [T]he statute [42 U.S.C.A. § 2000e-5(g)] requires only that the defendant meant to do what he did, that is, his employment practice was not accidental." *Id.* at 443.

Here, the language used in the Mandatory Arbitration Agreement, adopted and approved by Doherty, demonstrates Doherty's intent to preclude applicants and employees from filing charges of discrimination.  As set forth above, Doherty's Mandatory Arbitration Agreement explicitly covers "any dispute, controversy, or claim,"—including claims of discrimination, harassment, and/or retaliation under Title VII—that would otherwise require or allow "***resort to any court or other governmental dispute resolution forum***."  The Mandatory Arbitration Agreement could not more clearly encompass charges of discrimination. Because the contract is clear and unambiguous, the Court need look no further to find intent. *Board of Trustees of Policemen and Firemen Retirement System of City of Detroit*, 50 F.3d 908, 919 (11th Cir. 1995) (emphasis added) ("When a contract term is clear and unambiguous, the **best evidence of this intent is the term itself,** and a court may not give such term meaning beyond that clearly expressed in the four corners of the document.").

### E. The Circumstances Surrounding the Implementation of the Mandatory Arbitration Agreement Strongly Reflect an Intent to Deter Applicants and Employees from Filing Charges.

Even if this Court finds that the document is not clear and unambiguous, the language itself is strong circumstantial evidence of Doherty's intent, which is further supported by the circumstances surrounding Doherty's implementation of the Mandatory Arbitration Agreement, which demonstrate Doherty's clear intent to deter charge filing. Indeed, Doherty admits that it expanded the scope of its Arbitration Agreement due, in part, to the fact that Doherty was seeking to purchase restaurants in two new states, and Ms. Coughlin knew that the locations had "some legal issues in the past," and had a "heightened sense to start off on the right foot to make sure that the patterns and practices that they had from the date of our ownership were strong in the HR areas."  Thereafter, Ms. Coughlin, Doherty's Vice-President of Human Resources, Recruitment and Training and the person who has primary responsibility to address complaints of employment discrimination at Doherty, discussed revising the 2002-2013 Agreement with Doherty outside counsel Dena Calo, Doherty General Counsel Jack Hall, Doherty Executive

Vice President and Chief Financial Officer of Jerry Marcopoulos, and, at a very high level, Doherty President and Co-Chief Executive Officer Ed Choe.

Ms. Calo, Doherty's counsel, drafted the Mandatory Arbitration Agreement, which was subsequently reviewed and approved by Doherty.  Ms. Calo, as approved by Doherty, expanded the scope of the Mandatory Arbitration Agreement from "claims" to "any dispute, controversy, or claim." Doherty further added specific language defining this broad language to "include" all manner of Title VII claims.  Moreover, Doherty added, reviewed and approved language that prohibits resort to any governmental dispute resolution forum – language much broader than "court."

Finally, Doherty made a specific decision to stop advising employees of their right, notwithstanding the Mandatory Arbitration Agreement, to file charges of discrimination with the EEOC.  Doherty admits that it removed this provision from its handbook and that it has not provided this information to applicants or employees since at least 2013. In the face of this evidence, it is simply not credible for Doherty to self-servingly argue that there is no intent by pointing to the testimony of Doherty's 30(b)(6) representative, who testified that she did not intend to prevent charge filing and that the word, "claim" meant "court, " that the phrase "claim of employment discrimination" meant a "claim that was to go before a court of law," and that the term, "governmental dispute resolution forum" meant "court."  *See Hendry v. Masonite Corp*., 455 F.2d 955, 956 (5th Cir.1972) (holding, in the context of determining domicile, that "statements of intent are entitled to little weight when in conflict with facts.").

Under Doherty's distorted and imaginative interpretation of the contract language, the document would state:

> (1) I and Doherty Enterprises both agree that any  claim, dispute, and/or controversy **that was going to go to Court** (including but not limited to any claims of employment discrimination, harassment, and/or retaliation **that was to go before a court of law** under Title VII and all other applicable federal, state, or local statute, regulation, or common law doctrine) which would otherwise require or allow resort to any court or other **court** ~~governmental dispute resolution forum~~ between myself and Doherty Enterprises . . . shall be submitted to and determined exclusively by binding arbitration.  . . .

*See e.g.* SOF ¶ 49.  Doherty's reading is not logical and attempts to create ambiguities where none actually exist.  *See Miller v. Principal Mut. Life Ins. Co.,* 791 F.Supp. 858, 861 (M.D. Fla. 1992) (*quoting Smith v. Horace Mann Ins. Co.*, 713 F.2d 674, 676 (11th Cir.1983)) ("When there

is but one logical interpretation of a phrase, 'ambiguities will not be inserted, by using twisted and strained reasoning, into contracts where no such ambiguities exist.'").  Indeed, after the filing of this lawsuit, Doherty revised its Mandatory Arbitration Agreement and removed the language that prohibits resort to a governmental dispute resolution forum.

Doherty's bare, self-serving testimony regarding intent and contract interpretation, which fully contradicts the terms of the Mandatory Arbitration Agreement Doherty adopted, is insufficient to withstand a motion for summary judgment.  *See, e.g., Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004) (citations omitted) ("If a reasonable jury could not find in favor of the nonmoving party, no genuine issue of material fact does exist; and summary judgment is proper. A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment.").

### F.    Doherty's Undisputed Use of the Mandatory Arbitration Agreement Entitles EEOC to Injunctive Relief.

As set forth above, Doherty's repeated and intentional use of a written Mandatory Arbitration Agreement that prohibits charge filing constitutes a pattern or practice of resistance and the Court should order injunctive relief to remedy this unlawful policy.  *See United States v. Board of Ed. for the School District of Philadelphia*, 911 F.2d 882 (3d Cir. 1990).  In *Board of Education*, the Third Circuit examined whether the Commonwealth of Pennsylvania had engaged in a policy or practice of resistance to Title VII by passing the Pennsylvania Garb statute, which prohibited public school teachers from wearing religious clothing. *Id.* at 892. The district court found no pattern or practice in light of evidence that the Garb statute was sporadically enforced. *Id.*  As set forth by the Third Circuit, however:

> Where the allegedly discriminatory policy is openly declared—in this case it was, among other things, published in the Pennsylvania Code—then proof that the policy was actually being followed consistently is not necessary in order to obtain an injunction against subsequent implementation. . . . In short, if the Garb Statute in itself represents a policy in conflict with Title VII, then the district court erred in failing to enjoin the Commonwealth from enforcing that statute.

*Id.* at 892-93; *see also Spencer v. Conway*, No. CV 00–350GLTEJ, 2001 WL 34366573, * 1 (C.D. Cal. July 5, 2001) ("[T]he Court holds it is a violation of the federal Fair Housing Act, 42 § 3604(a), for an apartment owner to instruct residential managers not to rent to minority applicants, even if no further discriminatory action is taken as a result of the instruction.");

*Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1444 n.5 (11th Cir. 1997) ("Consider a case in which a company-wide policy that violates Title VII contributed to a plaintiff's termination—yet, the jury still believed that termination would have occurred notwithstanding the discriminatory policy.  No damages would be awarded, but injunctive relief might be appropriate. In that case, the public purpose for the suit is greater, and affirmative relief would have been obtained—even though the plaintiff could not be benefitted. . . ."); *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 551 (W.D. Va. 1975) ("Here, it is established that defendant's refusal to admit black children was the product of a policy dictated by the provisions of the will of John E. Hughes, and, the defendant's policy was maintained in the bona fide belief that it was legally required by the will. The demonstrated existence of a policy of discrimination is sufficient to constitute the pattern and practice, and it is unnecessary for the United States to prove numerous specific occasions on which the discriminatory policy was carried out.").

### G. Conclusion

Doherty's Mandatory Arbitration Agreement indisputably contains an invalid contract provision that prohibits the filing of charges of discrimination.  While Doherty may argue that EEOC need not, and cannot, protect these rights, at least one commentator has observed that the inclusion of unenforceable provisions in modern contracts is an "especially acute" problem in the employment context.  Charles A. Sullivan, *The Puzzling Persistence of Unenforceable Contract Terms*, 70 Ohio St. L.J. 1127, 1127 (2009) (attached as Exhibit 18).  As Sullivan explained:

> [T]he obvious reason why one party would seek a clause it knew to be unenforceable is that it believed the other party to be unaware of the fact and likely to remain unaware of it. This might be because the second party lacks sophistication and legal counsel. Further, at least in some contexts the insisting party might reinforce the clause's implicit message that it is enforceable as written.… Empirical evidence that employees are unaware of even their most basic rights—whether their employer needs a good reason to discharge them—suggests that it would not be hard to convince employees that an overbroad noncompetition clause is valid (or that a slanted arbitration regime is all they are entitled to). There is also some limited empirical evidence that employers in fact often draft clauses that are not enforceable as written.

*Id.* at 1136-37 (footnotes omitted).

Here, Doherty's Mandatory Arbitration Agreement deters reasonable employees from seeking redress through the EEOC, an important and significant right provided by Title VII. Based on the foregoing, the undisputed facts strongly support a finding as a matter of law that the

language of Doherty's Mandatory Arbitration Agreement constitutes a pattern or practice of resistance to the right to file charges of discrimination.  As a result, EEOC's Motion for Summary Judgment should be granted in its entirety on its resistance claim.

Respectfully submitted February 16, 2017

s/ Kristen Foslid
KRISTEN FOSLID
Trial Attorney
Florida Bar No. 0688681
KIMBERY CRUZ
Supervisory Trial Attorney
ROBERT E. WEISBERG
Regional Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Miami District Office,
Miami Tower, 100 S.E. 2nd Street, 15th Floor
Miami, Florida 33131
Tel: (305)808-1790
Fax: (305)808-1835
Email: kristen.foslid@eeoc.gov

### CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Kristen Foslid
Kristen M. Foslid
Trial Attorney
Florida Bar No. 0688681

## SERVICE LIST

ROBERT WEISBERG
Regional Attorney
KIMBERLY McCOY-CRUZ
Supervisory Trial Attorney
KRISTEN FOSLID
Trial Attorney

Equal Employment Opportunity
Commission
Miami Tower
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 305-808-1803
Fax: 305-808-1835
Kristen.Foslid@eeoc.gov

*Attorneys for Plaintiff*
***-Service via CM/ECF***

ROBERT HAILE
ANTOINETTE THEODOSSAKOS
Haile, Shaw & Pfaffenberger, P.A.
600 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Tel: 561-627-8100
Fax: 561-622-7603
rhaile@haileshaw.com
atheodossakos@haileshaw.com

DENA B. CALO
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel: 215.972.7104
dcalo@saul.com

*Attorneys for Defendant*
***-Service via CM/ECF***