IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Palm Beach Division

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.

Plaintiff,

vs. Case No. 9:14-cv-81184-KAM

THE DOHERTY GROUP, INC., d/b/a DOHERTY ENTERPRISES, INC.,

Defendant.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S EEOC'S RESPONSE IN OPPOSITION TO DOHERTY'S MOTION FOR SUMMARY JUDGMENT

## I. Introduction

In addition to directly prohibiting unlawful discrimination and retaliation in employment, Congress also authorized EEOC to bring actions for injunctive relief under § 707 of the Civil Rights Act of 1964 whenever any person is engaged in a pattern or practice of resistance to the full enjoyment of Title VII rights. Where, as here, an employer has a uniform policy and practice of utilizing a written contract that deters and discourages applicants and employees from filing charges of discrimination, that employer is engaged in intentional conduct designed to deny the full exercise of Title VII rights. Such resistance systematically undermines the enforcement mechanism established by Congress, and § 707 provides a remedy. Indeed, the undisputed facts in this case demonstrate that EEOC, not Doherty, is entitled to summary judgment as a matter of law.

## II. Memorandum of Law

### A. EEOC's Lawsuit Seeks to Preserve the Significant Right to File Charges of Discrimination.

As a preliminary matter, EEOC must refute three representations made by Doherty in its Motion for Summary Judgment: (1) that EEOC is attempting to challenge mandatory arbitration of Title VII disputes; (2) that regardless of Doherty's Mandatory Arbitration Agreement ("MAA"), EEOC can still vindicate the public interest by filing an enforcement suit; and (3) that EEOC is seeking to expand upon its statutory powers. *See* DE # 257 at 4, 13.

From the outset, as confirmed by EEOC's Complaints and subsequent briefing, EEOC is not challenging an employer's right to use an arbitration agreement for Title VII disputes. *See, e.g.*, DE # 1 (Complaint); DE # 16 (EEOC's Response to Motion to Dismiss) at 10 ("**The EEOC Does Not Dispute That Employment Claims May Be Subject To Mandatory Arbitration**."). Given EEOC's pleadings and unequivocal, written statements to the contrary, Doherty's suggestion that "this lawsuit is nothing more than the EEOC's latest attempt to challenge the enforceability of mandatory arbitration agreements in the employment context"—is simply false and can only be viewed as an attempt to distract from the merits of EEOC's lawsuit.

Next, Doherty argues that, regardless of any arbitration agreement between Doherty and its applicants/employees, EEOC may still file an enforcement action in federal district court.

While Doherty's argument is technically correct, it fails to appreciate the crux of EEOC's Complaint: that applicants and employees will not file charges with the EEOC and/or FEPA, and thus bring employment discrimination issues to EEOC's attention, because of the terms of Doherty's MAA. In turn, EEOC will be unable to investigate charges and take other appropriate action, including litigation to seek relief on behalf of those harmed by the unlawful employment actions alleged.

Regrettably, Doherty also continues its fallacious rhetoric by stating that EEOC is seeking "an expansion of power never before given to the EEOC by any Court." EEOC's lawsuit, however, is not about *expanding* EEOC's power through the Court; rather, it is about *preserving* the rights of individuals to file charges of discrimination based upon its statutory mandate. Specifically, EEOC *is* challenging the language of Doherty's MAA which requires all applicants and employees to waive the right to file charges of discrimination with the EEOC and FEPAs. Doherty's mandatory waiver requirement strikes at the heart of Title VII, which sets forth a detailed statutory scheme that begins with the basic right to file charges of discrimination and provides EEOC the "'independent statutory authority' to vindicate the public interest." *See EEOC v. Waffle House*, 534 U.S. 279, 290, 296 n.11 (2002) ("We have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims."). Thus, EEOC's lawsuit seeks to affirm the basic promise of Title VII of the Civil Rights Act of 1964—that applicants and employees have a place to go when they face discrimination in the workplace.

### B. Doherty's Use of the Mandatory Arbitration Agreement was Intentional.

Doherty's first and primary argument in support of its Motion for Summary Judgment is that Doherty never intended to deter anyone from filing charges of discrimination. In making this argument, Doherty does <u>not</u> dispute that Doherty used the MAA for all employees, at each of its restaurant concepts, from approximately July 2013 through January 2015. Doherty also does not argue that its use of the MAA was accidental or a mistake. Indeed, it is undisputed that Doherty's counsel drafted the MAA, and that it was reviewed, approved, and utilized by Doherty's upper-level managers. SOF ¶ 3. This conduct alone satisfies the intent element of § 707. *See*, *e.g.*, *United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 443 (5th Cir.1971)

("[P]roof of subjective intent to discriminate is unnecessary; the Government must show only that the defendant intended to perform the discriminatory act."); *Ass'n Against Discrim. Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 280 n. 222 (2d Cir.1981) (holding that "intent" does not refer to discriminatory purpose; rather, the acts must have been deliberative rather than accidental); *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1006 (9th Cir. 1972) (finding that defendant acted intentionally—i.e. deliberately and not accidentally—in allowing men to work longer hours than women, even though it was relying upon a state statute); *Kober v. Westinghouse Elec. Corp.*, 480 F.2d 240, 245 (3d Cir. 1973) ("the Fourth, Fifth, Seventh, Ninth, and Tenth Circuits have held that the intentional unfair employment practices included in Section 706(g) are those practices which are engaged in deliberately rather than accidentally"); *United States v. City of Yonkers*, 609 F. Supp. 1281, 1285 (S.D.N.Y. 1984) ("The courts have uniformly refused to read such a requirement into the statute, however, but have instead respected the evident congressional purpose that the statute reach conduct which is intentional in the relatively innocuous sense of advertence.").

Notwithstanding Doherty's purposeful use of the MAA, Doherty suggests that the only relevant analysis is Doherty's proffered *subjective intent* in drafting the MAA. As demonstrated above, Doherty is wrong.

C. **The Court Should Interpret the Mandatory Arbitration Agreement Applying a Reasonable Person Standard.**

As set forth in EEOC's Motion for Summary Judgment (DE # 260), this Court should apply an objective "reasonable person" standard in interpreting the MAA. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (applying an objective standard for determining liability in the context of § 704 to determine whether challenged conduct would dissuade "a reasonable worker from making or supporting a charge of discrimination" and noting that the objective standard is "judicially administrable"). In support of EEOC's position, EEOC cited to numerous civil rights cases applying a reasonable person standard for determining liability. *See* DE # 260 at11-12, n.8. EEOC's articulation of the reasonable person standard is consistent with case law interpreting contracts in the Eleventh Circuit. *Defs. of Wildlife v. Salazar*, 877 F.Supp.2d 1271,1292 (M.D. Fla. 2012) (citing *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75–76 (3rd Cir. 2011) ("The paramount goal of contract interpretation is to determine the intent of the parties. Courts are to consider not the inner, subjective intent of the parties, but

rather the intent a reasonable person would apprehend in considering the parties' behavior. The strongest objective manifestation of intent is the language of the contract."); *Freedom Sci. BLV Group, LLC v. Orient Semiconductor Elecs., Ltd.*, No. 8:13–cv–569–T–30TBM, 2014 WL 1576883, *5 (M.D. Fla. Apr. 17, 2014) (citation omitted) ("In its examination of a disputed contract provision, a court must examine the disputed terms "in the context of the entire agreement, giving the words their plain and ordinary meaning as understood by a reasonable person."); *Williams v. Bd. of Trs. of Int'l Longshoremen's Ass'n*, 388 F.Supp. 2d 1353, 1364 (S.D. Fla. 2005) ("Absent a conflict with federal common law or ERISA's goals, the pertinent language is read "in the ordinary and popular sense as would a person of ordinary intelligence and experience, such that the language is given its generally accepted meaning."). Indeed, EEOC is not aware of any cases holding that a contract can be interpreted based upon the drafter's subjective intent.

**1. <u>EEOC is a Governmental Dispute Resolution Forum</u>.**

Turning to the language of the MAA, the Court should hold, as a matter of law, that EEOC is a governmental dispute resolution forum and that a "reasonable person" would view it that way. The United States Supreme Court and Federal Appellate Courts have repeatedly and routinely recognized EEOC's critical role as a dispute resolution forum. As set forth in *Occidental Life Ins. Co. of Cali. v. EEOC*, 432 U.S. 355, 368 (1977):

> Thus, under the procedural structure created by the 1972 amendments, the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion.

*Id.* Indeed, "Title VII establishes a comprehensive administrative procedure whereby the parties involved, including the EEOC, have the fullest opportunity to resolve charges of discrimination without resorting to the courts." *EEOC v. Am. Nat. Bank*, 652 F.2d 1176, 1184 (4th Cir. 1981). A primary purpose of the charge filing requirement is to resolve employment disputes prior to litigation: "a claimant must file a timely charge with the Equal Employment Opportunity Commission (EEOC) to give that administrative agency an opportunity first to resolve the charge of discrimination." *Dezaio v. Port Auth. NY & NJ*, 205 F.3d 62, 63 (2nd Cir. 2000).

Unquestionably, EEOC is a governmental dispute resolution forum. *See E.E.O.C. v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1260 (11th Cir. 2003) (Nothing less than a

"reasonable" effort to resolve with the employer the issues raised by the complainant will do."); *EEOC v. Univ. of Pa.*, 850 F.2d 969, 978 (3d Cir. 1988) ("[T]he EEOC is charged with a duty to resolve discrimination disputes by conciliation."); *Doe v. Oberweis Dairy*, 456 F.3d 704, 708-09 (7th Cir. 2006) (noting that "[m]any disputes are resolved at this [administrative] stage, reducing the burden on the courts of enforcing Title VII; last year the Commission received 55,976 Title VII charges, of which 10,286, or almost 20 percent, were resolved without any litigation"); *Nealon v. Stone*, 958 F.2d 584, 593 (4th Cir. 1992) (referencing "EEOC's administrative mandate to resolve claims of discrimination"); *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1151 (10th Cir. 2008) ("Title VII's administrative filing requirement encourages employees and employers to end harassment and resolve their claims without litigation.")

### 2. Neither *Parilla* nor *Beery* hold that EEOC is <u>not</u> a Governmental Dispute Resolution Forum.

Doherty cites to *Parilla v. IAP WordWide Services VI, Inc.*, 368 F.3d 269 (3d Cir. 2004) and *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531 (D.N.J. 2013) in support of its position that the EEOC is not a governmental dispute resolution forum. These two cases arise in the context of an employer moving to compel arbitration in federal court under the terms of an arbitration agreement, *after the plaintiffs filed charges of discrimination.* In each case, the court, in addressing the employer's motions to compel arbitration, analyzed the specific language of the contract and held that the right to file a charge was not waived. Notably, neither case casts doubt on the right to file charges of discrimination, nor otherwise holds that EEOC is not a governmental dispute resolution forum. *See Parilla*, 368 F.3d at 282; *Beery*, 953 F. Supp. 2d at 543-44; *see also* Exhibit 1 at 25 (confirming *Parilla* filed charge of discrimination).

In *Parilla*, the agreement provided that "[a]ny controversy or claim arising out of or relating in any way to this Agreement . . . shall be *resolved* by arbitration and not in a court or before an administrative agency." *Parilla*, 368 F.3d at 282 (emphasis added). Analyzing the specific language at issue, the *Parilla* Court held that the agreement did not waive the right to *file* charges of discrimination; rather, the contract waived only the right to have the charge *resolved* before the EEOC. *Id.* The Third Circuit continued by finding that, similar to waiving a judicial forum, an employee can validly waive having his or her claim *resolved* in an administrative forum. *Id.*

In *Beery*, the arbitration agreement provided as follows:

> 7(c) Arbitration pursuant to this Paragraph 7 is **intended to be a substitute for employment related lawsuits** that Employee or the Company may consider bringing against one another . . . . **This Paragraph 7 is not intended to limit or impede rights, damages or other remedies under applicable federal, state or local statutes**, but is included in this Agreement in order to provide what Employee and the Company believe and agree is a more equitable, expeditious and fair method of protecting such rights, damages and remedies than that provided by such statutes.
>
> 7(d) Employee and the Company have carefully read this Paragraph 7 and understand that by signing this Agreement, **they are agreeing to submit the above-described Claim or Claims to Arbitration in lieu of bringing any legal action**. Furthermore, Employee and the Company understand that by agreeing to this Paragraph 7, they are giving up substantial legal rights, i.e., the right to sue in federal and state courts, the right to have disputes or claims heard by a jury and **the right to have claims of civil rights violations considered by local, state and/or federal investigatory agencies**.

*See* Beery Contract, Exhibit 2 at 9-10 (emphasis added). Unlike Doherty's Arbitration Agreement, the *Beery* contract stated that arbitration was a "substitute for employment related lawsuits" and focuses on the forum for an eventual "legal action." As such, and in view of the fact that the individual plaintiff challenging the language did, in fact, file a charge of discrimination, the *Beery* court, relying on *Parilla*, declined to hold that the arbitration agreement was unenforceable as it did not clearly prevent the plaintiff from *filing* a charge, but instead more clearly addressed the forum for a subsequent legal proceeding. Significantly, however, the Court in *Beery* advised *Quest Diagnostics* as follows: "**The Company should consider strongly whether to redraft this language. A claim by a plaintiff that an invalid or unclear contractual provision intimidated her from alerting the EEOC to unlawful employment practices might present a far different situation**." *Beery*, 952 F. Supp. 2d at 544 n. 13 (emphasis added).

Both *Parilla* and *Beery* focus on the particular contract language at issue, and hold that an employee can validly waive the ability to have a charge of discrimination resolved by the EEOC. Neither case, however, holds that an employee can waive the right to file a charge, as required by Doherty's MAA. Indeed, Doherty's MAA uses significantly more expansive language than *Parilla* and *Beery*:

> I and Doherty Enterprises both agree that any claim, dispute, and/or controversy (including but not limited to any claims of employment discrimination, harassment, and/or retaliation under Title VII and all other applicable federal,

> state, or local statute, regulation, or common law doctrine) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and Doherty Enterprises . . . (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under applicable state and/or local law) shall be submitted to and determined exclusively by binding arbitration. . . .

Ex. 6. By agreeing to arbitrate any dispute, including claims of discrimination under Title VII, which would otherwise *require or allow resort to* any governmental dispute resolution forum, a reasonable person—such as Mr. Potoreiko and Mr. Fanelli—would understand that they could not *go to* the EEOC and/or state FEPAs *at all*, or would be significantly deterred and discouraged from doing so. *See* SOF ¶¶ 29-30. This is particularly true in light of the carve out for the National Labor Relations Board and claims for medical and disability benefits, and the absence of a concomitant carve out for EEOC and/or state FEPAs.[1] Indeed, if not EEOC and/or state FEPAs, Doherty has yet to identify what governmental dispute resolution forums *exist and would be covered* under the terms of the MAA. Accordingly, a reasonable person would conclude that the "governmental dispute resolution forums" for employment discrimination disputes referenced in the MAA are the EEOC and the FEPAs.

**3. The Remaining Cases Cited by Doherty are Irrelevant at Best.**

Doherty also cites to a series of cases where the courts interpreted arbitration agreements, and compelled arbitration after finding that the arbitration agreements were not unconscionable. *See* DE # 257 at 9-10 (citing *Curbelo*, *Marshall*, *Wiley*, and *Sonic-Calabasas*). In these cases, the plaintiff did not argue, and in turn the Court did not consider, whether the arbitration agreement was invalid because of a waiver of the right to file charges of discrimination. As such, Doherty's reliance upon these cases is misplaced.

---

[1] Doherty cites to *Reljic v. Tullett Prebon Americas Corp.*, No. 11-01323, 2011 WL 2491342, *2 (D.N.J. June 21, 2011) in support of its position that an employer is not required to include an express carve out informing employees that they can file charges of discrimination with the EEOC. *Reljic*, however, is inapposite as Doherty's Mandatory Arbitration Agreement is not simply silent on whether or not an employee can file charges of discrimination; rather, Doherty provides an express carve out for *some governmental dispute resolution forums*—such as the NLRB—but not the EEOC and/or FEPAs As with other cases relied upon by Doherty, the issue arose in *Rejic*, in the context of a motion to compel arbitration where the plaintiff had in fact filed a charge of discrimination. *See* Exhibit Three (*Reljic* brief) at 6. .

Indeed, the problem with citing to cases in support of a legal argument or position not expressly addressed in the court's opinion is readily apparent here. For instance, citing to *Curbelo v. Autonation Benefits Co.*, No. 14-CIV-62736, 2015 WL 667655 (S.D. Fla. Feb. 17, 2015), Doherty states that "the court determined that the arbitration agreement—containing almost identical language to the present arbitration agreement—including the various exclusions from arbitration was valid and enforceable." DE # 257 at 9. What the Court's opinion does not reveal, however, is that the *Curbelo* contract, *unlike* Doherty's MAA, *included a specific carve out for claims with the EEOC*: "Nothing herein shall prevent Employee from filing and pursuing administrative proceedings only before the U.S. Equal Employment Opportunity Commission or an equivalent state agency (although if Employee chooses to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to arbitration)." Exhibit Four (*Curbelo* Arbitration Agreement) at 11. Thus, with respect to this most important detail, the *Curbelo* contract is actually not at all similar to Doherty's MAA. The same is true as to *Wiley, Marshall,* and *Sonic-Calabasas*. *See* Exhibit Five (*Wiley* Arbitration Agreement) (containing an express carve out for filing and pursuing administrative proceedings before the EEOC or equivalent state agency); Exhibit Six (*Marshall* Arbitration Agreement) (providing an opportunity to opt-out of Title VII arbitration: "By marking the box to the right, I elect to give up the benefits of arbitrating such Title VII claims only. □ "); *Sonic-Calabassa A. Inc. v. Morena*, No. S174475, 57 Cal. 4th 1109, 1125 (Cal. 2013) ("The provision further stated that the employee was not prevented from 'filing and pursuing administrative proceedings only before the California Department of Fair Employment and Housing or the U.S. Equal Opportunity Commission.'"). Accordingly, these cases do not support Doherty's arguments here.

**4. Doherty's Interpretation of the Mandatory Arbitration Agreement is Unreasonable.**

Doherty does not argue that the MAA is ambiguous; rather, Doherty argues that the Court must interpret the MAA consistent with Doherty's post-litigation, self-serving statements of subjective intent. Apparently, according to Doherty, the Court has to accept Doherty's interpretation of the contract, regardless of how unreasonable it may be. Indeed, to bolster its profession of subjective intent, Doherty provides a tortured interpretation of the term "governmental dispute resolution forum" to explain its chosen language – an explanation that is not only inconsistent with a reasonable interpretation of the MAA, but also with Doherty's *own*

*post-hoc interpretation* of the term. As set forth below, each of Doherty's arguments fail, and EEOC is entitled to summary judgment as a matter of law.

*a) Doherty's Representative Testified That Governmental Dispute Resolution Forum Means "Court."*

Ms. Coughlin, Doherty's Vice-President of Human Resources, Recruitment and Training (as well as 30(b)(6) Representative) repeatedly testified that she understood the term "governmental dispute resolution forum" to mean "court" only:

> Q: So in your mind, other governmental dispute resolution forum is the same thing as a court; is that correct?
>
> A: As it pertains to the arbitration agreement, yes, that is correct.

*See* SOF ¶ 7. Ms. Coughlin's "courts only" interpretation of the contract, however, is illogical in light of the other provisions of the MAA. Specifically, the MAA makes clear that arbitration is required for Title VII disputes that would otherwise allow resort to *any court*; as such, a second reference to court would be superfluous. *See* Ex. 6 ("any claim, dispute, and/or controversy . . . which would otherwise require or allow resort to any court or other **court** ~~governmental dispute resolution forum~~ between myself and Doherty Enterprises . . . shall be submitted to and determined exclusively by binding arbitration. . . ."). Moreover, if the MAA only prohibits resort to court, then there would be no need for Doherty's carve out for the NLRB. *See In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015) (Internal citation omitted) ("An interpretation giving "reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable."). As such, Doherty cannot create an ambiguity in the contract by pointing to its own (purported) subjective intent, and arguing that "governmental dispute resolution forum" means courts.

***b) Doherty's Motion for Summary Judgment Argues that Governmental Dispute Resolution Forum Means Court or other forum that could provide a remedy.***

According to Doherty, in addition to "court," Doherty's representatives also testified that they understood the "governmental dispute resolution forum" language to refer to **other "for[a] that could provide a remedy."** DE # 257 at 10 (emphasis added). This is not true. SOF ¶ 7. There is no record evidence that any of Doherty's representatives testified to this understanding of the "governmental dispute resolution forum" language. This is pure argument untethered to any facts.

Further, it is not what the MAA actually states. Doherty's interpretation of the document would require the Court to read into the contract words that are not present ("that could provide a remedy"). The law is clear, however, that Doherty cannot create an ambiguity by offering hidden meaning or adding terms into the MAA. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, (11th Cir. 1996) ("[W]here the [contract] language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions."); *Vreeland v. Fed. Power Comm'n,* 528 F.2d 1343, 1351 (5th Cir.1976) ("an ambiguity in a contract cannot be created by the mere assertion of a party to it." ). Viewing the MAA as a whole, including its explicit reference to "claims of employment discrimination, harassment and/or retaliation under Title VII," a reasonable person would understand the term "governmental dispute resolution forum" to include the EEOC.

If the Court were to find the term "governmental dispute resolution forum" ambiguous, this Court should also find that EEOC *is* a governmental dispute resolution forum based on the law as well as indisputable evidence that EEOC provides and secures monetary and non-monetary remedies to countless charging parties every year. For instance, in 2015, EEOC resolved over 90,000 charges and obtained hundreds of millions of dollars of monetary benefits on behalf of aggrieved individuals. *See* DE # 259-15 at 11. *See also* SOF ¶ 7 (Coughlin referring to EEOC as a governmental dispute agency).

***c) EEOC Provides Remedies Enforceable in Court, and State FEPAs Issue Judgments.***

Assuming this Court would permit Doherty to add the "fora that could provide a remedy" gloss over the interpretation of the term governmental dispute resolution forum," Doherty takes its argument a step further, and next suggests that it really meant a governmental dispute resolution forum—that could provide a remedy—and that has authority to enter a judgment. *See* DE # 257 at 11. With this *additional caveat*, Doherty points out that EEOC does not "determine" claims and that all cases are reviewed *de novo*. Thus, under this approach, EEOC could not be a governmental dispute resolution forum because it does not issue a final judgment (presumably like a court).

Unfortunately for Doherty, while Doherty is technically correct that EEOC does not itself issue enforceable judgments, EEOC does secure monetary relief for victims of discrimination through settlement and conciliation agreements, which are enforceable in federal court. *See Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1508 (11th Cir. 1985) ("[T]he courts

have recognized that suits brought by the EEOC to enforce "Title VII conciliation agreements" entered into by the EEOC, the employer, and the affected employees . . . are suits "brought under" Title VII, over which federal courts have subject matter jurisdiction."); *Brewer v. Muscles Shoals Bd. of Educ.*, 790 F.2d 1515, (11th Cir. 1986) (noting that federal courts have jurisdiction over actions arising from breach of a predetermination settlement agreement). EEOC can, and does, go to Court to enforce the remedies it obtains on behalf of charging parties.

Moreover, while Doherty focuses on the scope of *EEOC*'s authority, it is undisputed that EEOC's lawsuit alleges that the MAA deters charge filing with EEOC *and state FEPAs*, which actually *do have authority to enter final judgments*. *See generally School Bd. of Educ. of Chapel of Redeemer Lutheran Church v. N.Y.C. Comm'n Human Rights*, 188 A.D.2d 653, 653-54 (N.Y. App. Div. 1992) (reversing judgment of New York City Commission on Human Rights on sex discrimination claim); *Coleus v. Fla. Comm'n Human Relations*, 842 So.2d 1021 (5th DCA 2003) (appealing employment decision of Florida Commission on Human Relations); *Lin v. Dane Constr. Co.*, Docket No. EM14WB–54045, 2014 WL 8131876 (N.J. Super. Ct. Mar. 27, 2015) (appeal from the final decision and order of the Director of the Division on Civil Rights (Division)).[2] Given Doherty's tacit acknowledgement that these entities are "governmental

---

[2] *See also* Fla. Stat. § 760.11(6) (Florida Commission on Human Relations "shall issue a final order"); Ga. Code Ann. § 45-19-39 (providing for appeal of final order to superior court); Jacksonville, Fla., Municipal Code tit. 11, § 402.301 ("The Commission shall have jurisdiction to hear and determine all complaints concerning violations of this Chapter and of its rules promulgated to implement this Chapter."); N.J. Admin. Code § 13:4-10.1 ("[T]he Director may enter such orders, including protective orders and orders of dismissal, as may be necessary to effectuate the processing and determination of a case as he or she may deem appropriate to further the intent and purposes of the Law Against Discrimination or Family Leave Act."); N.Y. Exec. Law § 295 (explaining that the Commissioner is "over the administration and enforcement of title C of chapter one of the administrative code of the city of New York."); Miami-Dade County, Fla., Municipal Code, ch. 11A, art. 1, § 11A-5 ("The Commission on Human Rights shall have the . . . power[ ] . . . [t]o issue final orders…".); New York City, NY, Rules, tit. 47, ch. 1(G), § 1-75(a) ("The Commission shall commence consideration of a case that is the subject of a recommended decision and order upon filing of the recommended decision and order with the Office of General Counsel."); Orlando, Fla., Municipal Code, ch. 57, art. 1, § 57.06(7) ("[T]he Board shall issue such remedial orders as are necessary to correct the unlawful discriminatory practice and to require cessation of such practice."); Palm Beach, Fla. Municipal Code, ch. 2, art. 6, § 2-288 (explaining that the Board has power to "issue remedial orders prohibiting violations of this article and providing affirmative relief from the effects of the

dispute resolution forums," Doherty's MAA, even under Doherty's subjective, *post-hoc* interpretation, reflects a pattern or practice of resistance to the rights of applicants and employees to file charges of discrimination with state FEPAs.

### 5. Additional Facts Demonstrate Doherty's Intent to Deter Charge Filing.

If the Court looks beyond the terms of the MAA to ascertain whether Doherty acted "intentionally" for purposes of §707(a), Doherty's intent to prohibit applicants and/or employees from filing charges of discrimination is demonstrated through significant additional facts concerning its internal practices and procedures for handling employment discrimination complaints – practices and procedures which create the context for this dispute.

*First*, Doherty's intent to prohibit applicants and/or employees from filing charges of discrimination is reflected in the terms of Doherty's Employee Handbooks. For instance, at some point in time prior to 2013, Doherty used a handbook that explicitly advised employees of their right to file charges of discrimination with the EEOC, as set forth below:

> 13.9 Arbitration of Employment Disputes
>
> At the time you applied for employment with Doherty, you signed an Arbitration Agreement which requires that all disputes between you and Doherty must be submitted to and determined exclusively by binding arbitration. **Nothing in this binding Arbitration Agreement between you and Doherty prevents you from first filing a charge or complaint, communicating with, or cooperating in an investigation or proceeding conducted by, the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), or any other federal, state, or local agency charged with the enforcement of any laws.** However, you shall not be entitled to file a complaint in Court related to such charge or complaint, communication or investigation. If you have any questions about your right to file a charge of complaint, or would like a copy of the agreement you singed, please call the Human Resources Department at 1-866-DOHERTY (1-866-364-3789) and an HR Representative will assist you.

*See* SOF ¶ 10. Significantly, Doherty removed this provision from its handbook, and has not provided this information in its handbooks—informing individuals of the right to file charges—to any applicant or employee since at least 2013. SOF ¶ 11.

---

violations"); Pinellas County, Fla., Municipal Code, ch. 94, art. IV, § 94-128(6)(e) (2017) ("If, upon consideration of the record in the case, the commission finds that an unfair labor practice has been committed, it shall issue and cause to be served an order requiring the appropriate party to cease and desist from the unfair labor practice and take such positive action.").

More recently, Doherty has distributed Employee Handbooks that specifically advise employees that, if they are unable to resolve a complaint internally, "you may then submit a request to arbitrate your dispute." *See generally* Ex. C. Likewise, the Employee Handbook outlines a Mandatory Dispute Resolution Policy:

- This policy is a written agreement of the resolution of employment disputes. By continuing or accepting an offer of employment by Doherty Enterprises, Inc. or any one of its affiliates, all associates to whom this policy is applicable, agree as a condition of employment to submit all covered claims to mandatory dispute resolution and to accept the arbitrator's award as final, binding and exclusive determination of all covered claims.

SOF ¶ 13. Again, this policy requires submission of "all covered claims to mandatory dispute resolution" and advises employees that "the arbitrator's award" is "the final, binding, and *exclusive* determination of all covered claims." *See* SOF ¶ 13. (emphasis added). The policy is not limited to "court" claims, and does not advise employees of the right to file charges of discrimination.

Doherty's Employee Handbook then continues with a version of an arbitration agreement that instructs employees that arbitration is required instead of any "judicial or administrative proceeding." SOF ¶ 12. Specifically, the Employee Handbook provided: "I fully understand that I am waiving the right to proceed in any judicial or administrative proceeding, other than arbitration, for any and all claims against Doherty Enterprises or any of its related companies." SOF ¶ 12. Again, this language further reflects that Doherty did not intend to prohibit "court" only. SOF ¶ 12.

*Second,* while Doherty may point to federal anti-discrimination posters as a way of demonstrating that it never intended to deter charge filing, there is no evidence that Doherty's posters were visible, at least, to applicants. SOF ¶ 14. Moreover, to the extent these posters were intended to fulfill the mission to educate Doherty' workforce about filing charges with EEOC and FEPAs, the Handbooks instruct employees that Doherty's arbitration agreement is controlling over other publications in any event:

- **If there are conflicts between the requirements of MDR [Mandatory Dispute Resolution] and other company publications and statements by company representatives, the requirements of MDR are controlling.**

SOF ¶ 14. Thus, although Doherty may have posted the obligatory federal anti-discrimination posters, such posters cannot demonstrate Doherty's intent to allow charge filing, where Doherty

specifically told employees that its dispute resolution policy trumped "other company publications."

*Third*, Doherty's intent to deter charge filing can also be inferred from Doherty's spread of misinformation, as well as lack of guidance, to employees. For instance, Doherty' Employee Handbooks advise employees that:

- "If your Open Door or RESOLVE-IT! discussions do not resolve your complaint, a formal mediation and arbitration process will take place according to the Mandatory Dispute Resolution Policy explained below.

SOF ¶ 21. Doherty's human resources materials also refer to a formal mediation and arbitration process. SOF ¶ 21. Doherty, however, does not actually have a mediation process, and does not have any process in place for handling demands for arbitration. SOF ¶¶ 21-22. Likewise, Doherty does not have any guidelines that would tell an hourly applicant about the arbitration process. SOF ¶ 22. Regrettably, Managers are provided with the same misinformation in their training materials, thus, could not reasonably be expected to be a source of information for employees on this issue. *See* SOF ¶ 22. However, if an employee approached Doherty's Vice President of Human Resources, Training, and Recruitment and asked, "how do I initiate arbitration for my employment discrimination suit," Ms. Coughlin would "find out what their issue is. And then I would give them their agreement that they, and I'd let them know that they have a right to an arbitrator." SOF ¶ 23. Significantly, Ms. Coughlin did not testify that she would advise the employee of his or her right to file a charge of discrimination with the EEOC or FEPAs. *Id.* SOF ¶ 23. As described more below, as concerns Al Fanelli, this proved all too true. *See* SOF ¶¶ 27-29.

*Fourth*, Doherty's procedures for handling internal complaints of discrimination reflect Doherty's general intent to suppress information regarding internal complaints of discrimination and to deter individuals from complaining outside the company. Indeed, when a person complains at Doherty, there is no requirement that the complaint of discrimination be documented in any way. SOF ¶ 16. Doherty does not have any policy or procedure that provides guidance on when an employee might be asked to provide a complaint in writing, nor does Doherty provide any guidelines that would assist an employee in determining whether they needed to provide a written complaint. SOF ¶ 17. Thereafter, if an investigation is initiated by Human Resources, Human Resources may or may not document the steps of its investigation.

SOF ¶ 19. For instance, when asked whether Human Resources would take notes from a conversation with a Manager reporting the alleged discrimination, Doherty's Vice President of Human Resources, Training, and Recruitment stated that "it depends . . . There's no here is the road map. And you can get in a lot of trouble with here is the road map." SOF ¶ 20. At the conclusion of an investigation, Doherty sometimes prepares a "satisfaction conclusion" letter for the employee to sign. SOF ¶ 25. Doherty's satisfaction conclusion letters generally advise employees that they have reached the "final step" in the process for resolving restaurant issues, and asks the employee to sign the document acknowledging that they are satisfied with the results/resolution. SOF ¶ 26. For instance, and contrary to the complaint procedure described in the Employment Handbooks, "satisfaction conclusion letters" include the following language:

> This memo is the final step in our procedure when resolving restaurant issues. The purpose is to provide closure to the matter and advise you in writing of our course of action. We would like your signature acknowledging that you are satisfied with this resolution.

SOF ¶ 26. In the case of former employee Mr. Fanelli, Kathy Coughlin provided Mr. Fanelli with a "satisfaction conclusion" letter and explained to Mr. Fanelli that signing the document would ***release Doherty of liability***. SOF ¶ 29. Thus, Doherty documents very little of its internal processes, purports to have (but really doesn't have) formal mediation and arbitration processes (the "MDR") and then the only writing that is provided, if Human Resources subjectively decides to take a closer look at a complaint, instructs people that they have reached the "final step" for resolving restaurant issues, going so far as to describe it as a release from liability. This provides circumstantial evidence of Doherty's intent to deter applicants and employees from taking further action on their employment disputes, including charge filing.[3]

---

[3] Doherty's desire to suppress information about complaints of discrimination and deter assertion of employee rights can also be inferred from its conduct in the *Murray* litigation. In August, 2005, Doherty employee Erin Duby claimed that she was sexually harassed by managers and employees at a Doherty operated Applebees. Ms. Duby filed a demand for arbitration, and was represented by her father, Patrick Murray. Thereafter, during the course of the arbitration, in response to a September 2008 on-line news article where Ed Doherty spoke about his treatment of employees, Mr. Murray responded by stating, among other allegations, that women were subject to sexual harassment at Doherty and that complaints were ignored. In turn, ***<u>Doherty sued Mr. Murray for defamation.</u>*** The court subsequently dismissed Doherty's defamation claim, but refused to dismiss Mr. Murray's cross-claim for abuse of process. *See* Exhibit 7.

*Fifth*, Doherty's communications to employees reflect a clear intention to deter charge filing. For example, when former Doherty employee Mr. Fanelli complained about discrimination, Doherty advised Mr. Fanelli that his only option was to proceed with Doherty's mandatory dispute resolution process. SOF ¶¶ 27-29. Likewise, former manager Henry Potoreiko was instructed that he could not work at Doherty if he did not sign the MAA, that all claims had to be filed through Doherty and that was the only option, and that employees were not allowed to file claims outside of Doherty because of the arbitration agreement. SOF ¶ 30. Managers do not get trained otherwise and, thus, could not reasonably be expected to be a source of information for employees on this issue. SOF ¶¶ 4, 22, 24, 38.

*Finally*, Doherty's overall intent is also amply reflected in its roll out of the January 2015 Agreement. Assuming Doherty's desire to correct the record so-to-speak was sincere, the implementation of the January 2015 amendment gave Doherty an opportunity to advise all applicants and employees of their right to file charges of discrimination. Regrettably, the only affirmative step that Ms. Coughlin took in January 2015 was to post an acknowledgement on Doherty's Human Resources Information System ("HRIS") for employees to sign (or electronically click) that advised them that "nothing in this binding Arbitration Agreement between me and Doherty *prevents me* from first filing a charge or complaint, communicating with, or cooperating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission . . . or any other federal, state or local agency charged with the enforcement of any laws." SOF ¶ 36. As Ms. Coughlin testified (SOF ¶ 37):

> Q So he [Jack Hall] directed you to continue doing what you
> were doing, essentially?
>
> A Yeah. And the caveat of that pop-up and the
> short agreement.

Notably, Ms. Coughlin did not provide training to restaurant managers or employees regarding the January 2015 Agreement. SOF ¶ 38. Indeed, Ms. Coughlin did not even provide a copy of the January 2015 Agreement to restaurant managers or employees in until **over a year later**, when it was posted on HRIS in February 2016. SOF ¶¶ 39-40. Moreover, Doherty did not attempt to contact former employees or applicants to advise them of the right to file charges of discrimination. SOF ¶ 41. Ms. Coughlin did not even reinstitute the pre-2013 practice of including language explaining the explicit right to file charges with EEOC in its Employment

Handbooks. SOF ¶ 42. Instead, Doherty permitted older handbooks which reinforced the waiver language to be used as late at 2015. *See* SOF ¶ 12. In sum, although EEOC maintains that Doherty's "intent" –*i.e.* purposeful behavior—can be inferred from its admitted adoption and widespread use of the MAA at each of its restaurant concepts, if the Court does look beyond the contract, significant additional evidence exists to demonstrate Doherty's intent to deter charge filing.

**C. The Term "Resistance" is Not Unconstitutionally Vague.**

Doherty next argues that the term "resistance" is unconstitutionally vague as applied to the facts of this case, and argues that Doherty was somehow unable to conform its MAA to Title VII prior to this lawsuit.

As an initial matter, to the extent Doherty argues that "resistance" should be limited to unlawful employment practices (retaliation and discrimination), Doherty's Motion for Summary Judgment is, in reality, a second motion for reconsideration. Doherty has already raised these arguments, and the Court twice rejected them. *See* DE # 32; DE # 117. As set forth by this Court (DE # 32):

> Significantly, Congress chose not to use the term "unlawful employment practices" with respect to section 707(a) which is in stark contrast to the use of the term "unlawful employment practices" in section 706. See 42 U.S.C. § 2000e-5. The Court can only conclude that because Congress chose to use different language in the two sections, it manifested different intent; namely, that a resistance claim is not limited to cases involving an unlawful employment practice. Instead, a resistance claim may be brought to stop a pattern and practice of resistance to the full enjoyment to Title VII rights.

In addition, the Supreme Court seldom voids federal statutes on vagueness grounds since "a federal statute is subject to interpretation by the federal courts." *Columbia Nat. Resources, Inc. v. Tatum*, 58 F.3d 1101, 1108 (6th Cir. 1995). For instance, in *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271 (2009), the Supreme Court, citing to Webster's New International Dictionary, defined the term "oppose" in Title VII in line with its ordinary meaning: "[t]o **resist** or antagonize …; to contend against; to confront; **resist**; withstand." *Id.* at 276 (emphasis added). Here, the Court should give the word "resistance" its ordinary meaning, which is an "effort made to stop or to fight against someone or something" or "the ability to prevent something from having an effect." See Merriam-Webster's Collegiate Dictionary 996 (10th ed. 1999), http://www.meriamwebster.com/dictionary/resistance. In turn,

affording "resistance" its common meaning, resistance to the full enjoyment of the right to file charges of discrimination should simply be understood to refer to an effort to stop or prevent a person from exercising that right.

Finally, Doherty's own course of conduct and cases cited belie its argument that it could not conform its MAA to Title VII. Indeed, prior to 2013, Doherty at one time specifically advised employees that the MAA did not prohibit charge filing, and once EEOC filed its lawsuit, Doherty quickly amended its Arbitration Agreement. Likewise, the four cases cited by Doherty--*Curbelo*, *Marshall*, *Wiley*, and *Sonic-Calabasas*—each include contract language that would allow for charge filing. As such, EEOC is entitled to summary judgment as to Doherty's 15th Affirmative Defense.

**D. EEOC is Not Proceeding on a Charge of Discrimination.**

Doherty next argues that this case originated with a charge of discrimination, and therefore EEOC was required to follow the procedures outlined in § 706.

It is undisputed that EEOC first obtained Brenna Jefferson's Personnel File Copy Arbitration Agreement when it was submitted by Doherty Florida East Delray, LLC, and EEOC subsequently found a different version of the Arbitration Agreement on the internet, which it attached to the Complaint. DE # 259 ¶¶ 10, 16. Ms. Jefferson's charge is not filed against The Doherty Group, Inc., does not allege a pattern or practice of resistance to the rights protected by Title VII, and does not even reference, much less challenge, the MAA. *Id.* ¶ 10, 12. *See also* Ex. M.

Notwithstanding that Ms. Jefferson's charge has *nothing to do with EEOC's lawsuit*, Doherty makes the unsupported leap that EEOC's lawsuit is based upon Ms. Jefferson's charge. *See* SOF ¶ 45. Doherty then seeks to have the Court revisit its Order Denying Defendant's Motion to Dismiss, by arguing that EEOC was required to follow the administrative procedures set forth in § 706. EEOC Regional Attorney Robert Weisberg, however, has provided sworn, uncontroverted testimony that EEOC did not expand any existing charge of discrimination to add allegations relating to any Doherty arbitration agreement, and EEOC's lawsuit is not based upon a charge of discrimination. DE # 259 ¶ ¶ 13-14. Rather, EEOC Counsel began a Rule 11 investigation and provided Doherty a pre-suit settlement opportunity prior to filing its Complaint. *Id.* ¶¶ 15. 19.

Notably, EEOC *could not have expanded Ms. Jefferson's charge,* because by statute, charges of discrimination are limited to unlawful employment practices. 42 U.S.C. § 2000e-5 ("Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge . . . and shall make an investigation thereof."). Because EEOC's lawsuit alleges a pattern or practice of *resistance* to the right to file charges of discrimination, it cannot, by definition, be based upon a charge, and certainly not upon a a charge having nothing to do with the MAA. As such, EEOC is entitled to summary judgment as to Doherty's arguments that EEOC violated Doherty's procedural rights by not following the steps outlined in § 706.

**E. EEOC Is Entitled to Equitable Relief**

Finally, EEOC turns to Doherty's frequently repeated allegation that EEOC Counsel engaged in criminal conduct. Doherty's accusations fail for the following reasons:

*First*, Title VII expressly states that "information" obtained by the Commission may be made public once EEOC institutes a proceeding involving such information. 42 U.S.C. § 2000e-8(e). Because this is exactly what happened in this case, EEOC's conduct is expressly allowed by statute.

*Second*, EEOC made public the MAA it found on the internet and attached to the Complaint. *See* DE #1-1. The existence of Ms. Jefferson's charge of discrimination and the MAA she signed and submitted to the EEOC by Doherty was first placed into the public record by Doherty. *See* DE # 112 at 6, DE # 216 at 26.

*Third*, while Doherty did plead an "unclean hands" affirmative defense, that defense makes no reference to *how EEOC learned about the arbitration agreement. See* DE # 130 (*compare* Aff. Def. 3 *with* Aff. Def. 14). As such, Doherty has waived any unclean hands defense based upon its allegations of criminal misconduct.

*Fourth*, the Affirmative Defense of "unclean hands" is largely unavailable against a governmental agency acting in the public interests, as EEOC is doing here. *See, e.g., United States v. Philip Morris Inc.*, 300 F.Supp.2d 61, (D.D.C. 2004) (collecting cases from the DC Circuit); *U.S. Commodity Futures Trading Comm'n v. Zimmerman*, 15–cv–61960–Bloom/Valle, 2016 WL 3944101, * (S.D. Fla. May 16, 2016) ("Courts, however, have allowed a defendant to raise the unclean hands defense against the government in "strictly limited circumstances where

the agency's misconduct is egregious, and the misconduct results in prejudice to the defense of the enforcement action that rises to a constitutional level and is established through a direct nexus between the misconduct and the constitutional injury.”). Here, Doherty has not articulated *any injury*, let alone a constitutional injury, stemming from EEOC’s disclosure of a document Doherty admittedly posted on its website and used with all applicants. *See* DE # 256, ¶ 8.

*Fifth*, even if EEOC violated § 709(e), § 709(e) does not create a private right of action, and thus cannot form the basis of an affirmative defense. *Love v. Delta Air Lines*, 310 F.3d 1347 (11th Cir. 2002). Indeed, it is indisputable that § 709(e) does not expressly provide a private entitlement for employers to sue in federal district court; rather, the statutory scheme provides a clear enforcement mechanism through the criminal justice system. *See also EEOC v. Recruit USA, Inc.*, 939 F.2d 746, 757 (9th Cir. 1991) (“Nothing in the language of Title VII authorizes individuals or companies to act as private prosecutors and enforce these provisions. Nor does the statute vest judges with the power unilaterally to declare persons guilty of a criminal offense and sentence them to prison or levy a fine.”). Accordingly, because the statutory text and structure of Title VII conclusively demonstrate that there is no private right of action vis-a-vis § 709(e), EEOC is entitled to summary judgment as a matter of law. *See First Specialty Ins. Corp. v. GRS Management Associates, Inc.*, No. 08–81356–CIV, 2009 WL 2169869, *3, n.4 (S.D. Fla. July 20, 2009) (striking affirmative defense where statute does not support a private right of action).

## III. Conclusion

For the reasons set forth above, EEOC respectfully requests that the Court deny Doherty’s Motion for Summary Judgment.

Respectfully submitted March 13, 2017

s/ Kristen Foslid
KRISTEN FOSLID
Trial Attorney
Florida Bar No. 0688681
KIMBERY CRUZ
Supervisory Trial Attorney
ROBERT E. WEISBERG
Regional Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Miami District Office,
Miami Tower, 100 S.E. 2nd Street, 15th Floor
Miami, Florida 33131
Tel: (305)808-1790
Fax: (305)808-1835
Email: kristen.foslid@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Kristen Foslid
Kristen M. Foslid
Trial Attorney
Florida Bar No. 0688681

**SERVICE LIST**

ROBERT WEISBERG
Regional Attorney
KIMBERLY McCOY-CRUZ
Supervisory Trial Attorney
KRISTEN FOSLID
Trial Attorney

Equal Employment Opportunity Commission
Miami Tower
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 305-808-1803
Fax: 305-808-1835
Kristen.Foslid@eeoc.gov

*Attorneys for Plaintiff*
***-Service via CM/ECF***

ROBERT HAILE
ANTOINETTE THEODOSSAKOS
Haile, Shaw & Pfaffenberger, P.A.
600 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Tel: 561-627-8100
Fax: 561-622-7603
rhaile@haileshaw.com
atheodossakos@haileshaw.com

DENA B. CALO
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel: 215.972.7104
dcalo@saul.com

*Attorneys for Defendant*
***-Service via CM/ECF***