IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Palm Beach Division

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al. | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 9:14-cv-81184-KAM |
| THE DOHERTY GROUP, INC., d/b/a DOHERTY ENTERPRISES, INC., | : | |
| Defendant. | : | |

**PLAINTIFF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE IN OPPOSITION TO THE DOHERTY GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(l) ON THE GROUNDS OF MOOTNESS AND LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE,MOTION FOR SUMMARY JUDGMENT**[1]

[1] Pursuant to S.D. Fla. Local Rule 56.1, EEOC also filed a Controversion of Doherty's Statement of "Undisputed" Material Facts as to Mootness and Statement of Contrary Facts in the Record which affirmatively identifies record evidence supporting the denial of Defendant's instant motion.

In its Motion to Dismiss and/or for Summary Judgment on the Grounds of Mootness, The Doherty Group, Inc. d/b/a "Doherty Enterprises, Inc." ("Doherty") argues that its January 2015 amendment to the Mandatory Arbitration Agreement at issue in this case ("MAA") extinguished any live Article III case or controversy, and thus divests the Court of subject matter jurisdiction. *See* D.E. #255, at 1, 8. Doherty's entire focus appears to be on proving that it never subjectively intended to deter, discourage or prevent applicants or employees from filing charges of discrimination with EEOC or state or local Fair Employment Practices Agencies ("FEPAs"), identifying four principle arguments in support of its heavy burden to show that there can be no reasonable expectation that the "wrong" at issue will be repeated. Doherty argues:

> (1) it has never defended the few charges that were filed with EEOC with the argument that the right to file charges was waived (*Id.* at 7, 11);
>
> (2) Doherty amended the challenged Mandatory Arbitration Agreement in January 2015 and, as a result, there is no longer any problem to challenge (*Id.* at 12-13);
>
> (3) Doherty has educated its workforce about its rights to file charges of discrimination (*Id.* at 13-15); and
>
> (4) its amended agreement has been successfully in force and effect for two years. (*Id.* at 14-15).

Regrettably, Doherty misses the mark.

Doherty has not demonstrated how its voluntary amendment "completely and irrevocably eradicates the effects" of the Mandatory Arbitration Agreement. Instead, while Doherty's decision to include specific language in its amended Arbitration Agreement "carving out" an exception for administrative charges of discrimination may have surface appeal, Doherty ignores critical facts and law which, when considered, make clear that this case presents a live "case or controversy" ripe for decision by this Court. As set forth in detail below, Doherty's motion must be denied.

## I. Governing Legal Framework.

Mootness represents a question of justiciability, which is a component of a federal court's subject matter jurisdiction analysis. *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1278 n. 2 (11th Cir. 2004). Motions which raise mootness attack the court's subject matter jurisdiction, and are therefore considered pursuant to Rule 12(b)(1). *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007).

Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint, and the court takes the allegations in the complaint as true in deciding the motion. *Id.* When a court considers a Rule 12(b)(1) dismissal of a case on a factual challenge to subject matter jurisdiction, the court may consider facts outside the pleadings such as testimony and affidavits as long as the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. *Morrison v. Amway Corp.*, 323 F.3d 920, 924-925 (11th Cir. 2003); *see also Rogers v. 5101 Corp.*, No. 16-81294, 2016 WL 4987620, *1 (S.D. Fla., Sept. 19, 2016) ("This case presents a factual attack such that examination of matters outside of the pleadings is appropriate."). Because Doherty's motion is a factual challenge to subject matter jurisdiction that does not implicate an element of EEOC's Title VII claim, examination of matters outside the pleadings is appropriate.

## II. EEOC's Case is Not Moot.

Doherty argues that "[t]he entire basis for the Section 707(a) lawsuit became moot when Doherty amended its arbitration agreement in January 2015 to include an explicit carve-out acknowledging employees' rights to file charges with the EEOC, and to communicate with and cooperate in an investigation." Def. Mot., DE #255, at 1. It is well-settled, however, that the cessation of unlawful conduct does not automatically deprive a court of jurisdiction and render a live controversy moot; rather, the "court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

As the Eleventh Circuit reiterated in *Reich v. Occupational Safety & Health Review Comm'n*, the "Supreme Court has recognized an exception to this principle in certain cases where injunctive relief is sought. A claim for injunctive relief may become moot if:

> (1) there is no reasonable expectation that the alleged violation will recur; **<u>and</u>**
>
> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."

102 F.3d 1200, 1201 (11th Cir. 1997), *citing Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (emphasis added). Only "when both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of

fact and law." *Davis*, 440 U.S. at 631.[2] This is a "formidable" burden borne by the party asserting mootness. *W. T. Grant Co.*, 345 U.S. at 633; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Indeed, as a private company, Doherty does not benefit from the rebuttable presumption reserved for governmental actors that objectionable behavior will *not* recur. *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004). Applying these well-settled principles, Doherty's motion should be denied.

### A. Doherty's Motion Should Be Denied Because it Has Not Completely and Irrevocably Eradicated the Effects of the Alleged Violations.

"An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Zinni v. ER Sols., Inc.*, 692 F.3d 1162, 1166 (11th Cir. 2012), *citing Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009). Doherty fails to demonstrate how its January 2015 amendment to the MAA completely and irrevocably eradicated the effects of the alleged violations or renders the Court unable to award meaningful relief.

#### 1. Doherty's Amendment Ignores Several Aspects of the Meaningful Injunctive Relief Requested.

Cases are not considered "moot" when components of the relief requested remain unsatisfied. *See Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1166 (11th Cir. 2012) (case not moot where settlement offers did not offer full relief requested in complaint's prayer for relief); *Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fisher*, No. 12–60691–Civ., 2014 WL 988767, *17 (S.D. Fla. Mar. 13, 2014) (case was not moot where, among other concerns, the change in policy did not address all of the issues challenged by the counter-plaintiff); *Ruehling v. Armstrong*, No. 8:12-CV-2724-T-35TGW, 2014 WL 12617962, at *4 (M.D. Fla. Nov. 3, 2014) (case not moot and facts indicated a "substantial" and "continuing controversy" between Plaintiff and Defendant where defendant addressed only one aspect of relief sought in the Second Amended Complaint and failed to address the remaining relief in its Motion to Dismiss).

[2] Of course, "[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy. *Powell v. McCormack*, 395 U.S. 486, 497 (1969) *citing United Public Workers of America v. Mitchell*, 330 U.S. 75, 86-94, (1947).

Doherty has not, to date, addressed or agreed to the following relief requested in EEOC's Complaint: (1) an enforceable judgment; (2) corrective measures to existing policies, practices, and programs to ensure the full exercise of the right to file a charge, including notice to pre-2015 applicants and former employees of their right to file charges of discrimination; (3) training for human resources personnel, management personnel, and others who deal with Doherty's arbitration agreements; (4) equitable tolling of 300 days within which applicants or employees (current and former) who signed the challenged MAA may timely charges of discrimination; or (5) paying EEOC's costs in this matter. SOF ¶¶1-8, 61-72. Likewise, Doherty's January 2015 amendment also does not address or negate the need for a declaratory judgment in this case. Because these components of meaningful relief sought by EEOC remain unaddressed and unsatisfied by Doherty's January 2015 amendment to the MAA, Doherty's motion must be denied.

**a. The January 2015 Amendment Provides Limited Relief only to Existing Employees.**

Injunctive relief is intended to remedy present or ongoing violations. *See Reich v. Occupational Safety & Health Review Comm'n*, 102 F.3d 1200, 1202 (11th Cir. 1997). Doherty's allegedly corrective amendment does <u>nothing</u> to address the continuing deterrent and/or prohibitive effects of the pre-amendment MAA upon applicants who were not hired between July, 2013 and January, 2015, or upon employees who were no longer working for Doherty as of January 2015 or February 2016 and who did not receive notification of the "carve out" language. *See* SOF ¶¶15, 40, 59, 64-67.

While Doherty sent its existing employees a January 7, 2015 HRIS electronic acknowledgement to indicating that they were not "prevented" from filing charges of discrimination, and more than a year later sent the full amended agreement to then-existing employees for signature, SOF ¶¶55-58, this is a far cry from satisfying all of EEOC's requests for injunctive relief.

Neither electronic communication reached 100% of the affected *current* employees. *See* DE #253, ¶27; SOF ¶¶51, 58. Neither communication advises employees that they have an affirmative right to file administrative charges of discrimination notwithstanding the MAA, that the MAA previously signed was amended, or even that the MAA was "never intended" to prohibit charge filing in the past. *See* SOF ¶¶53-58. The utility of these so-called corrective efforts vis à vis current employees is further devalued by Doherty's failure to train its employees or managers on the amendment, *see* SOF ¶¶56; 45, 58, 65, or even timely apprise managers of the corrections so that the context of the information might be effectively communicated. *See* SOF ¶57. Doherty did not even revised its August 2015 employee

handbook to include the new "carve-out" language it employed prior to 2013. *See* SOF ¶¶25-27; 10-11; Ex. 13.

This is further exacerbated by the fact that older, concept specific versions of Doherty's employee handbooks currently in use contain information *contrary* to the "corrective" communications in statements such as:

> "I fully understand that **I am waiving the right to proceed in any** judicial or **administrative proceeding**, other than arbitration, **for any and all claims against Doherty Enterprises** or any of its related companies."

*See* SOF ¶¶30-31. Likewise, rather than *clearly* communicate that – notwithstanding Doherty's internal procedures for discrimination complaints – employees had and have the right to file charges or otherwise communicate with EEOC and FEPAs at any time, Doherty's employee handbooks perpetuate the promise of *purely fictional steps in its internal complaint process*, such as a formal mediation procedure and, as late as January, 2016, Doherty has continued to train its managers about these steps in Doherty's complaint resolution process, even though the Vice-President for Doherty's Human Resources, Training and Recruitment Department has admitted they do not actually exist and have not since at least 2006. *See* SOF ¶¶25-32. Conversely, the actual "final step" in Doherty's complaint resolution procedure – the Satisfaction Conclusion Letter – is not mentioned anywhere accessible to employees or managers, there is no training on it, it is not mentioned in any employee handbooks and Vice President Coughlin has told at least one employee with a discrimination complaint that, by signing one such letter, he would be releasing Doherty from liability. *See* SOF ¶¶33-39, 47-51; Ex. O, Ex. P; *see also* SOF ¶50 (former manager told when hired in 2013: (1) he could not continue to work or be rehired by Doherty if he did not sign the mandatory arbitration agreement; (2) all claims had to be filed through Doherty and that this was the only option; and (3) employees were not allowed to file any claims outside of Doherty because of the arbitration agreement). As concerns newly hired employees, although Doherty provides employee handbooks in paper form at orientation, Doherty's most recently updated Employee Handbook (August, 2015) contains no reference to the arbitration agreement or the "carve-out" exception for EEOC and FEPAs. *See* SOF ¶¶10-11, 26-28; Ex. O; Ex. P.

Under these circumstances, it cannot be said that there is no need for injunctive relief. *See, e.g., Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, No. 2-60691-CIV, 2014 WL 988767, at *17 (S.D. Fla. Mar. 13, 2014) (case not moot where injunctive relief sought was much broader than simply ordering defendant "to apply the procedure for a pet exemption to anyone, disabled

or not, who asks for it" and thus did not provide all the injunctive relief sought). The importance of this injunctive relief cannot be understated. Unlike injunctions outside of the Title VII context, under Title VII, this Court has broad, equitable discretion to grant any injunctive relief it deems appropriate to **make persons whole** for injuries suffered in violation of the Act." *Rivers v. Washington Cty. Bd. of Educ.*, 770 F.2d 1010, 1012 (11th Cir. 1985), *citing Franks v. Bowman Transport Co.,* 424 U.S. 747, 764 (1976) (emphasis added).

**b. Doherty Has Ignored EEOC's Request for Equitable Tolling.**

Likewise, Doherty has taken no steps to remedy the specific harms inflicted upon employees' rights to file charges with the EEOC and FEPAs, and to communicate with and cooperate in an investigation. More specifically, EEOC's Prayer for Relief requests that the Court order Doherty to equitably toll the three-hundred day time period within which to file charges of discrimination for any applicant and/or employee who was subject to the MAA. *See* SOF ¶¶6, 69. Equitable tolling – giving individuals deterred, discouraged or prevented from filing timely charges of discrimination the reasonable opportunity to do so – is a meaningful, make whole remedy not provided by the January 2015 amendment or otherwise addressed by Doherty at all. The failure of Doherty to agree to, or even address, EEOC's request for equitable tolling demonstrates that Doherty cannot meet its burden of proof that is post-litigation actions have completely and irrevocably eradicated the effects of the MAA. *See, e.g., Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 466 (S.D. Fla. 1980), *modified sub nom. Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023 (5th Cir. 1982) (holding effects of misconduct persisted because "had asylum applications not been so denied, as alleged, some number of the plaintiffs would now be enjoying political asylum in the United States rather than facing deportation hearings and possible return to a nation where they contend they may be beaten or killed.") Certainly here, had individuals not been deterred from filing charges as alleged, Doherty's applicants and employees, would have had an independent investigation of their claims of discrimination/retaliation and the possibility that EEOC would litigate those claims on their behalf in federal court.

**c. Doherty's Did Not Educate its Existing Workforce About its Rights.**

Doherty styles its electronic acknowledgement in January 2015, "pop-up" notifications and the February 2016 requirement that all then-existing employees sign a new MAA with carve-out language as efforts to "educate" its workforce about its right to file charges and communicate with EEOC and FEPAs. *See* DE #255 at 6-7. Because these efforts amount to nothing more than window dressing, they

are inadequate to meet Doherty's burden of demonstrating the amendment completely and irrevocably eradicated the effects of the alleged violations.

*First*, to the extent Doherty could be said to be educating its workforce by providing an electronic pop-up messages requiring acknowledgement of the carve-out language and/or requiring an electronic signature (or clicking the box) on a revised Mandatory Arbitration Agreement, as set forth above, Doherty has admitted that its motivation was satisfying EEOC and ending this litigation, not educating its workforce. SOF ¶¶ 1-25. Indeed, more than a year after the January 7, 2015 "pop-up" notice / acknowledgement was unsuccessful in securing the early dismissal of the lawsuit in 2015, Doherty decided to send the "full agreement" to employees because the lawsuit was still ongoing. *See* Ex. 10 at 95:6-19 ("…then we felt the need to continue to educate, **to put the full agreement out for full disclosure since this is an ongoing case**…"); Ex. 10 at 96:14-19 ("And then we thought to further display to you [EEOC] that our intent was never to let anybody not know what the agreement was, we decided to post the entire agreement so they had it at their fingertips at any point in time and could print it. And we did that in February.") Doherty cannot even demonstrate that 100% of its *current* workforce has knowledge that they are not "prevented" from filing charges or communicating with EEOC or state or local FEPAs. *See* DE # 255 at 7 n.6 ("Ms. Coughlin estimates that 98% of Doherty's entire workforce has signed the acknowledgment form.").

*Second*, there is no record evidence that Doherty directed any effort toward assuring that former applicants or former employees who also signed the MAA – individuals for whom EEOC seeks a make whole remedy – were aware of their rights. *See* SOF ¶2,4, 6-7; DE #124 at 4(c) ("Order Defendant to institute and carry out policies, practices, and programs that provide for the full exercise of the right to file a charge and participate and cooperate with the EEOC and FEPAs…). Record evidence from employees making actual discrimination complaints demonstrates that Doherty's minimal effort to educate its current workforce about the carve-out for filing charges with EEOC and FEPAs does not educate current or former employees that they had that right since they signed the Agreement at the time of their application and, thus, has not remedied the effects of the challenged MAA.

For example, former Spuntino bartender, Al Fanelli, attested that he brought his age discrimination complaint to the company president's attention on **February 3, 2015** following his efforts to have his age discrimination complaint resolved consistent with Doherty's complaint procedure outlined in his operative employment handbook, which included the following language:

<u>Agreement to Arbitrate Any and All Claims</u>

> I understand that various claims which may arise during the course of my employment would entitle me to a proceeding in a court of law or equity. As a condition of employment at Doherty Enterprises or any of its related companies**, I hereby agree to waive my rights to pursue such claims in the judicial and administrative court system**. I fully understand this is not a waiver of any claims or remedies, but rather a waiver of pursuing those claims and remedies in the judicial and administrative court system.
>
> I am not waiving my right to make claims and have them heard in arbitration; rather I am waiving my right to be heard in a federal or state forum (court), which also allows a right to trial by jury. It is understood that I am waiving the right to trial by jury by having my claims arbitrated.
>
> The decision of the arbitrator with regard to any and all issues between the employer and me, the employee, will be final and in the format attached hereto. **I fully understand I am waiving the right to proceed in any judicial or administrative proceeding, other than arbitration, for any and all claims against Doherty Enterprises or any of its related companies.**
>
> **I acknowledge I am forever precluded from the option of resolving these matters in federal and state administrative and judicial courts.** Regardless of any claim I may have against Doherty, etc., I hereby acknowledge I fully understand all such issues can only be resolved by arbitration.

*See* SOF ¶¶27-28; Ex. B. His February 3, 2015 letter to Doherty's owner, Ed Doherty, and its co-CEO Ed Choe, led to a conversation with Kathy Coughlin, Doherty's corporate representative and Vice President for Human Resources, Recruitment and Training, who told him that he could have a job with another Doherty concept if he acknowledged that his complaint was resolved satisfactorily, which would relieve Doherty of any liability. SOF ¶¶33-39; Ex. B. Mr. Fanelli was never advised of his right to file a charge of discrimination; and beyond what was in his employee handbook, he was not advised about Doherty's mediation or arbitration programs or procedures. Ex. B. Indeed, Mr. Fanelli attested that he did not file a charge of discrimination because of the MAA and because he was told he waived his right to do so, and this is consistent with the language in the employee handbook provided to him when he began employment in the Spring of 2014. SOF ¶¶28, 39. Certainly, Ms. Coughlin – who professes to never have intended to prevent anyone from filing a charge – had a first-hand opportunity to "educate" Mr. Fanelli consistent with the electronic notices Doherty was issuing at that time; **she did not**. Ex. B; *see also* Ex. B ¶¶ 16-17; Ex. A (Declaration of Henry Potoreiko). Instead, according to Mr. Fanelli, she told him that by signing a document indicating that he was "satisfied" with the result of

Doherty's investigation, he waived his rights to challenge Doherty's decisions. SOF ¶¶39.[3] These experiences serve to demonstrate that the Court can grant meaningful remedies which Doherty is unwilling, on its own, to effectuate.

*Third*, Doherty does not train its employees or managers on the amended arbitration agreement at all. SOF ¶¶56, 65. Without the governmental actor presumption in its favor, the absence of adequate policies and procedures in place, and meaningful training on those policies, to ensure the offending conduct will not recur is also a factor that weighs heavily here. *See, e.g.*, *Houston v. 7-Eleven, Inc.*, No. 13-600004, 2014 WL 351970, *3 (S.D. Fla. Jan. 31, 2014) (structural ADA case rendered moot where all structural changes at one store were made at a cost of $30,000, 7-Eleven had a policy of making its stores accessible and convenient for disabled persons, provided "extensive training" to its employees to ensure compliance with the ADA for its disabled customers and hired an outside company to inspect its stores twice a year).

*Finally*, contrary to Doherty's argument, given the misleading nature of Doherty's employment discrimination procedures as set forth in its training materials and employment handbooks, *see* Ex. C, N, K, and the record evidence demonstrating that Doherty does not provide actual training about arbitration, the amended arbitration agreement or right to file charges to its employees, *see* SOF ¶¶31, 34, 46, 51-53, 56, 65, human resources personnel, *see* SOF ¶45; and its management personnel, *see* SOF ¶¶32, 34, 46, 51, 56, the educational value or impact of the "pop up" messages in January 2015 and the requirement to sign a new agreement containing the carve-out in February 2016 is minimal at best.

**d. Doherty Ignores EEOC's Request for Costs in this Case.**

Doherty has not offered nor made any effort to ascertain or satisfy EEOC's costs in the litigation. *See* SOF ¶72; *see Fernandez v. Andy Iron Works, Inc.*, No. 13-CV-24477, 2014 WL 3384701, at *3 (S.D. Fla. July 10, 2014) ("Defendants cannot simply pay the full claim, including liquidated damages, and in so doing, avoid liability altogether for Plaintiff's attorney's fees and costs…"); *see also Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cty., Florida*, 842 F.3d 1324 (11th Cir. 2016) (case moot as to declaratory and injunctive relief but not as to claim for

---

[3] Moreover, although Doherty used to explicitly advise employees that they have the right to file a charge of discrimination with the EEOC as part of their employee handbook, *see* SOF ¶10, Doherty confirmed that it has not provided this employment handbook information—informing individuals of the right to file charges—to any applicant or employee since at least 2013. SOF ¶¶11, 26-29.

damages); *Fisher*, 2014 WL 988767, at *17 (holding that a change in policy does not moot a request for monetary relief).

**e. Doherty Fails to Address the Appropriateness of Declaratory Relief.**

A declaratory judgment is an important and meaningful remedy in this case, especially since the EEOC litigates in the public interest. "Under Rule 54(c) and Title VII, the district court has broad discretion in fashioning relief to achieve the broad purposes of the Civil Rights Act and has authority to award appropriate relief dictated by evidence, 'even though it may not have been sought in pleadings.'" *Carter v. Diamondback Golf Club, Inc.*, 222 F.App'x 929, 931-32 (11th Cir. 2007) (that complaint had not specifically requested declaratory or injunctive relief did not foreclose their availability) (citations omitted). The question of the mootness vel non of a claim for declaratory judgment becomes "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) *citing Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). These criteria are satisfied here.

As this Court has observed, the parties' positions in this litigation could not be more oppositional or adversary, evidencing a substantial controversy challenging the Commission's statutory authority for and motives in bringing this litigation, alleging procedural defects in the process of bringing this case to the court, the legal standard to be applied to analyze it and, finally, the overarching dispute over whether the language of Doherty's May 2013 Mandatory Arbitration Agreement constitutes a pattern or practice of resistance to the right of its applicants and employees to file charges of discrimination with EEOC and state or local FEPAs. *See* Docket Entries 1-279; SOF ¶¶18-20, 66-67. These issues are substantial in a real world context and warrant judicial review on the merits. *Florida Bd. of Bus. Regulation v. N.L.R.B.*, 605 F.2d 916, 919 (5th Cir. 1979) (Florida's interest in maintaining exclusive regulatory authority in Jai Ala industry and maintaining public confidence and the NLRB's interest in asserting jurisdiction over Jai Alai industry were directly opposed and, even though the particular union election sought to be enjoined was no longer an issue, the controversy remained "live," because it has sufficient substantiality, immediacy and reality to merit a declaratory judgment).

Moreover, the merits resolution of the issues raised by EEOC's complaint has serious consequences for former employees and applicants who, by operation of the deterrent effect of the challenged MAA, lost their opportunity for redress by the EEOC and state and local FEPAs. This is

particularly important where EEOC is in the best position to recognize and potentially redress serial incidents of discriminatory conduct by the same Doherty employee(s), which were reported to Doherty by different employees at different times to no resolution. *See* Ex. H, pp. 13-17. These kinds of "collateral" consequences can even operate to remove a case from the purview of the mootness doctrine even in cases where a "live" controversy over the primary consequence of the litigation is gone. *Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 466 (S.D. Fla. 1980), *modified sub nom. Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023 (5th Cir. 1982) (alleged possibility of persecution in Haiti may be only a "collateral" consequence of an arbitrary denial of an asylum application, that very possibility is enough to keep this controversy live); *Connell v. Shoemaker*, 555 F.2d 483 (5th Cir. 1977) (possible "continuing practical consequences" of a damaged reputation keep alive a civil case seeking to review the Army's determination that an individual had discriminated in apartment rentals).

Finally, the manifest public importance of this vigorously litigated case is an important consideration in determining the need for declaratory relief in the mootness context. *Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 466 (S.D. Fla. 1980) (case not mooted by INS's amendment of its own regulations because, among other reasons, it was a case of manifest public importance vigorously contested by advocates representing the opposing parties and because meaningful relief was available in that, "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *see also W.T. Grant*, 345 U.S. at 632 (noting that the "public interest in having the legality of the practices settled[ ] militates against a mootness conclusion").

Because a declaratory judgment is warranted in this case and because Doherty failed to demonstrate that its January 2015 amendment to the MMA completely and irrevocably eradicated the effects of the alleged violations and because this Court can indeed award meaningful relief in this case, Doherty's mootness arguments are without merit.

### B. Doherty Has Not Met its Heavy Burden to Demonstrate that the Unlawful Conduct Cannot be Reasonably Expected to Recur.

"Although government actors receive the benefit of a rebuttable presumption that the offending behavior will not recur, private citizens are not entitled to this legal presumption." *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007). Even so, "[s]imply stating that it has no intention to resume the disputed practice is insufficient for the Court to conclude that the matter is now moot." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 699 (S.D. Fla. 2014). Rather, to determine

whether the unlawful conduct cannot be reasonably expected to recur, the following "basic factors that both the Supreme Court and this Court have found important in determining mootness where a private defendant has voluntarily ceased the conduct at issue" are considered: (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability. *Sheely*, 505 F.3d at 1184. As demonstrated herein, the application of these factors here yields the conclusion that it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (internal quotation marks).

**1. The *Sheely* Factors are Not Limited to the ADA Context.**

Doherty argues that *Sheely* is limited to the ADA public accommodations context, D.E. #255, at 9-10, and even if not so limited, the *Sheely* factors are simply "guideposts" to "answer the ultimate question: is there a reasonable expectation that the wrong will be repeated[?]" *Id.* at 10. Doherty is plainly wrong, and its formulation of the "ultimate question," for which it has a formidable burden, curiously omits the second element of its required showing. While mootness questions may arise in a unique way in ADA structural compliance cases, the "*Sheely*" factors are routinely applied in this Circuit outside of the ADA context. *See, e.g., Atheists of Florida, Inc. v. City of Lakeland, Florida*, 713 F.3d 577, 594 (11th Cir. 2013) (applying *Sheely* to determine mootness in a suit alleging violations of the Establishment Clause of the First Amendment for allowing religious ministers to perform invocations before city commission meetings); *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1309-10 (11th Cir. 2011) (quoting *Sheely* in its mootness analysis in a suit over copyright infringement under the Copyright Remedies Clarification Act); *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1365 (S.D. Fla. 2010) (applying *Sheely* to determine mootness in a putative class action alleging violations of Racketeer Influenced and Corrupt Organizations Act (RICO) and Florida's Deceptive and Unfair Trade Practices Act (FDUTPA)).

**2. Doherty's January 2015 Amendment of the MAA was Admittedly Calculated to Avoid Liability, and Does Not Reflect a Genuine Change of Course.**

Where the circumstances surrounding voluntary cessation suggest that the defendant is "attempting to manipulate the [c]ourt's jurisdiction to insulate a favorable decision from review," courts will not deem a controversy moot. *Harrell v. The Florida Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010), *citing City of Erie v. Pap's AM*, 529 U.S. 277, 288 (2000); *see also Nat'l Adver. Co.*, 402 F.3d at

1333 (courts will not declare a case moot if it is clear that defendant changed course to deprive the court of jurisdiction). A "case will be moot only if it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Harrell*, 608 F.3d at 1265.

Here, Doherty admits that it amended the MAA "because of the August 2014 EEOC letter addressed to Jack Hall, General Counsel, and because of EEOC's Complaint." SOF ¶22; Ex. D; *see also Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1186–87 (11th Cir. 2007) (voluntary cessation was motivated by desire to avoid liability where defendant's Vice President of Finance and Business Administration conceded in his affidavit that "[t]he purpose of the written policy was to ... avoid future disputes such as the one at issue [in the instant case]").

Consistent with this admission is the timing of Doherty's amendment. *Harrell*, 608 F.3d at 1266 (finding that the "'timing and content' of a voluntary decision to cease a challenged activity are critical in determining the motive for the cessation and therefore 'whether there is [any] reasonable expectation . . . that the alleged violation will recur'"). Doherty timed its amendment to ensure it could be raised as a defense in briefing on Doherty's motion to dismiss. Eighteen days after Doherty amended the MAA, Doherty filed its Reply Memorandum in Further Support of Its Motion to Dismiss Plaintiff's Complaint ("Reply"). DE # 19. In the Reply, Doherty argued **<u>for the first time</u>** that, due to the amendment of its MAA, EEOC's "resistance" claim was moot because there was no longer a live case or controversy. *Id.* at 11-12. Rather than signify a change of heart, this course of events makes clear that the amendment was a calculated effort to obtain dismissal of the lawsuit, and avoid liability. The Court need not infer Doherty's motive for amending the agreement based on the timing of the change and the first assertion of mootness because Doherty has repeatedly explained that the amendment was made to "satisfy" the EEOC and end the lawsuit. *See* SOF ¶¶21-22; 57.

Under these circumstances, it cannot be said that it is *absolutely clear* that the wrongful behavior cannot reasonably be expected to recur. *See, e.g., Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, n.13 (11th Cir. 2007) (in non-moot case, new policy implemented one day before moving for summary judgment on the grounds of mootness "limits the extent to which this incident can reasonably be said to constitute powerful evidence of MRN's commitment to forever adhering to its new policy."); *Nat'l Adver. Co. v. City of Fort Lauderdale,* 934 F.2d 283, 286 (11th Cir. 1991) (in non-moot case, cessation came six weeks after suit followed the next day by motion to dismiss); *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 833–34 (11th Cir. 1989) (in non-moot case, cessation came only "[u]nder the imminent threat of the [plaintiffs'] lawsuit"); *Hall v. Bd. of Sch. Comm'rs of Conecuh*

*Cty.*, 656 F.2d 999, 1000 (5th Cir. 1981) (same); *City of Waco v. Envtl. Prot. Agency*, 620 F.2d 84, 86–87 & n. 10 (5th Cir. 1980) (in non-moot case, cessation came "only six days before oral argument").

**3. There is no Record Evidence that the Decision to Amend the MAA Resulted from Substantial Deliberation.**

While Doherty now states that it has no intention of reverting back to the Mandatory Arbitration Agreement and will not remove the "carve out" that informs employees that they are not prevented from going to the EEOC, Doherty has not admitted any liability and continues to vigorously dispute liability in this matter and, more importantly, to vigorously defend the MAA's specific language. SOF ¶¶18-23; 1-8; 61-67. Notably, prior to 2013, however, Doherty *did* advise employees that they could file charges of discrimination with the EEOC, and Doherty *did* remove that language from its employee handbooks. *See* SOF ¶¶10, 26-28. The intentional, deliberate approval and implementation of the MAA, the curious timing of the amendment and clear evidence that Doherty is not motivated by a genuine change of heart weigh heavily against Doherty as concerns mootness. *See DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008) ("More importantly, Temple defended and continues to defend not only the constitutionality of its prior sexual harassment policy, but also the need for the former policy. We consider these two factors significant in evaluating whether there is a 'reasonable expectation' that Temple will re-implement its previous sexual harassment policy").

Further, the record evidence does not permit a finding that Doherty's decision to amend the MAA in January 2015 resulted from substantial or meaningful deliberation. Doherty hid behind assertions of attorney-client privilege and its unilateral stipulation to bar discovery about Doherty's deliberative process, if any, leading to the amendment. To the extent record evidence exists concerning the reasons for specific changes to the MAA, other than self-serving professions of intent, Doherty could not coherently explain the actual changes made to the January 2015 version of the MAA or provided vague, and confusing interpretations of language contained in both the May 2013 and January 2015 versions of it. *See, e.g.*, SOF ¶¶19-22, 23-24; *see also* Ex. 9 at 78:19-80:19; 82:5-86:9; DE #260. What the record makes clear, however, is that any such deliberations involved high level managers and Doherty's in-House and outside counsel and resulted in a decision that is nothing more than a litigation strategy to divest the Court of jurisdiction. *See* SOF ¶¶12-24, 58.

**4. Doherty's Decision Not to Rely on Waiver as a Defense to a Few Charges Does Not Speak to Whether Applicants, Employees were *Deterred* from Filing Charges.**

Attempting to analogize its conduct to those cases in which the challenged conduct stopped before litigation was filed, Doherty argues that this case is moot because, as in *E.E.O.C. v. CollegeAmerica Denver, Inc.*, 75 F. Supp. 3d 1294 (D. Colo. 2014), "Doherty has never taken the position that the arbitration agreement prohibited employees from filing charges of discrimination." DE #255, at 11. However, *CollegeAmerica* is distinguishable in two important respects. First, the district court analyzed the Separation Agreements at issue vis-à-vis one charging party, who had already filed a charge of discrimination and participated in an EEOC investigation. *Id.* at 1298-99. Thus, based on the evidence before it, the district court determined that, the investigation already having taken place, there was no reasonable expectation that CollegeAmerica would use Charging Party's Agreement to interfere with the ADEA rights of that one charging party or the EEOC. *Id.* at 1297-99; *see* 29 U.S.C. § 626(f)(4)("no waiver agreement may affect the [EEOC's] rights and responsibilities to enforce this chapter...[or] be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the [EEOC].") Notably, based on purported jurisdictional grounds, the Court expressly declined to consider whether College America, through its Separation Agreements, denied other employees the full exercise of their rights under the ADEA or interfered with the assigned responsibility of the EEOC and FEPAs to investigate charges of discrimination. *Id.* at 1300-1303.

Further, even assuming the decision not to use waiver as a defense helped Doherty's arguments here, Doherty's bare assertion that it has defended charges of discrimination filed on their merits far from "concrete;" there is <u>no record evidence</u> of any substantive defense of any charge filed with EEOC or any FEPA in Florida, Georgia, New Jersey, or New York. Indeed, in light of Doherty's unilateral stipulation that it would not defend this case by raising its defense of charges, D.E. #93, EEOC did not seek to discover the same. EEOC has challenged Doherty's unilateral withdrawal of this stipulation on February 15, 2017 (DE #252) just 1 day before briefing on summary judgment was due. *See* DE #252; DE #274.

Finally, that Doherty did not *defend* against the few charges of discrimination filed by its workforce of between 14,686 and 17,023 employees between the years 2013 and 2015 by relying on waiver language in the MAA is not evidence that Doherty did not seek, by virtue of that Agreement, to *deter* or *discourage* people from filing in the first place. Doherty repeatedly states that it does not believe the MAA "prohibited" or "prevented" charge filing and has noted the absence of specific language in the MAA explicitly stating the same. *See, e.g.*, SOF ¶¶ 52-53, 61-67; *see also* Ex. 1, DE

#259-1 at 82:6-13, 81:12-25. While Doherty may choose to avoid the concept of deterrence – as alleged in EEOC's complaints – it remains significant that Doherty does not agree that its conduct was unlawful, or that the MAA could have discouraged or deterred reasonable persons from filing a charge of discrimination with EEOC or applicable FEPA. SOF ¶¶ 61-67. As a result, the self-serving proclamations of its intentions in this regard carry little weight. *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 699 (S.D. Fla. 2014). Indeed, were it not for this suit, Doherty could continue to use the overreaching language of the challenged MAA to effectively deter a majority of complainants or would-be complainants from filing charges, and continue to defend those few charges that get filed on their merits. This is exactly the cautionary scenario that courts warn against in analyzing mootness claims in response to voluntary cessation of unlawful conduct. *See Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1285 (11th Cir. 2004), citing *W.T. Grant*, 345 U.S. at 632 n. 5 ("[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.") (citations omitted).

**5. High Level Management Development and Approval of the MMA and its Company-Wide Use Shows that Doherty's Conduct is Not Isolated or Accidental.**

Courts in this jurisdiction have found cases to be moot where the conduct at issue that was voluntarily stopped was isolated and accidental. *See, e.g., Troiano*, 382 F.3d 1276, 1285-1286 (11th Cir. 2004) (moot where challenged conduct included good faith efforts to address administrative difficulties); *Houston v. 7-Eleven, Inc.*, No. 13-600004, 2014 WL 351970, *3 (S.D. Fla. Jan. 31, 2014) (moot where ample evidence that violations at one store location was an isolated problem, in a 50 year old building, in a location that had other accessibility features consistent with 7-Eleven's long-existing accommodations policy); *Compare Sec'y of Labor, U.S. Dep't of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) ("five-year history of violations" cut against finding of mootness); *Hall v. Bd. of Sch. Comm'rs of Conecuh Cty.*, 656 F.2d 999, 1000 (5th Cir. 1981) ("longstanding practice" cut against finding of mootness).

Doherty has used MAAs for approximately seventeen (17) years and acknowledged that the MAA at issue here was reviewed, approved, and used for all applicants and employees from between July 2013 through January 2015 across seven restaurant concepts, 161 restaurants and in four states.

DE #253, ¶¶1-3; Ex. 14; Ex. 1, DE #259-1 at 53-66. There was nothing isolated or accidental about Doherty's use of the MAA here.

Doherty's decision to *broaden* the reach of its 2002-2013 Arbitration Agreement in May 2013 to make more explicit the prohibition upon seeking redress for employment discrimination disputes, claims or controversies in governmental dispute resolution fora is not accidental where authorized by high level management employees at Doherty, including its Vice President of Human Resources, Training & Recruitment, in connection with counsel. *See* SOF ¶¶13-14; *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184–85 (11th Cir. 2007) (conduct was the result of a years-long policy created by MRN's owner, communicated through MRN's ranks, and enforced on multiple occasions, sometimes vehemently). This is especially so considering the long standing law establishing the essential right of individuals to file charges and to utilize the remedial, statutory mechanism established by Congress as an essential part of Title VII. *E.E.O.C. v. Shell Oil Co.* 466 U.S. 54, 69 (1984) ("It is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired."); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006) (Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses); *EEOC v. Cosmair*, 821 F.2d 1085, 1090 (5th Cir. 1987) (waiver of the right to file a charge is void as against public policy); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (noting that "[a]n individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action[,]" and that "it should be remembered that arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief.").

The MAA was also not an isolated event involving a single employee or applicant. By 2014, 16,873 employees signed the MAA, and this number does not account for non-hired applicants who also signed it in an effort to obtain a job. *See* SOF ¶59. Under these circumstances, Doherty's use of the MAA was neither accidental nor isolated.

**6. Doherty's Assertions of its Intentions Are Not Even Promises Not to Use the Offending Language in the Future, Especially Where Doherty Believes it Did Nothing Wrong.**

While Doherty restates often that it never "intended" to prohibit the filing of charges, *see* SOF ¶¶21-22, 53, but it has stopped short of demonstrating that it will not again use the offending language it has so vigorously defended. *See* SOF ¶¶19-20; 61-67; *Walling v. Helmerich & Payne, Inc.*, 323 U.S.

37, 43 (1944) (controversy remains where defendant "has consistently urged the validity of the [practice] and would presumably be free to resume [it] were not some effective restraint made"). In light of Doherty's failure to admit liability, the sincerity of any such promises is questionable. *United States v. Trans–Mo. Freight Ass'n*, 166 U.S. 290, 308 (1897) ("[M]ere [cessation] is not the most important object of this litigation. The judgment of the court is sought upon the question of the legality of the [challenged practice]....[Defendants] do not admit...illegality...nor [promise] not to enter into a similar [practice]. On the contrary, by their answers, the defendants claim that the agreement is...perfectly proper...."); *see also Rich v. Sec'y, Florida Dep't of Corr.*, 716 F.3d 525, 532 (11th Cir. 2013)(in non-moot case, nothing to suggest that Florida will not simply end the new kosher meal program at some point in the future, just as it did in 2007, where Florida "continue[s] to press on appeal that the voluntarily ceased conduct should be declared constitutional" and has "never promised not to resume the prior practice."); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1332-33 (11th Cir. 2004) (in moot case, defendant "expressly disavowed any intention of defending" the ceased conduct); *ACLU v. Fla. Bar*, 999 F.2d 1486, 1494–95 (11th Cir. 1993) (in non-moot case, defendant was not "bound by its court statements," had "the discretion to change its policy" back, and reasonably might do so where it continued to assert the old policy's validity); *Jager v. Douglas Cty. Sch. Dist.*, 862 F.2d 824, 833-34 (11th Cir. 1989) (in non-moot case, defendants "never promised not to resume the prior practice" and "continue to press on appeal that the voluntarily ceased conduct should be declared constitutional"); *Hall v. Bd. of Sch. Comm'rs of Conecuh Cty.*, 656 F.2d 999, 1000 (5th Cir. 1981) (in non-moot case, defendants "disputed the constitutionality of the practice up to the day of trial, when defense counsel for the first time indicated they had no intention of reviving [it]"); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 127 (5th Cir. 1973) ("[I]n the face of appellant's own inability to recognize his transgressions of the Act, we decline to assume that he will not violate the Act in the future.").

**7. The Mere Passage of Time Does Not Prove the Thoroughness or Sincerity of Doherty's Amendment.**

Cases finding there is no reasonable expectation that the alleged violation will recur where there has been a long-term voluntary resolution have so held considering the completeness of the resolution and its sincerity. *See, e.g., Troiano*, 382 F.3d 1276, 1285-1286 (11th Cir. 2004) (considerable evidence demonstrated that voluntary conduct resolving entire dispute was genuinely intended to make elections consistently accessible to the visually impaired based on pattern of behavior

before and after litigation challenged election). Here, Doherty amended the MAA in January 2015 for the purpose of "satisfying" the EEOC and to get the lawsuit dismissed. *See* SOF ¶¶ 21-22. Doherty was unable to argue that its amendment was in effect for "2 years" when it first argued that this case was moot eighteen (18) days after its January 2015 amendment was electronically rolled out to existing employees via its HRIS system in the form of a "pop-up" Acknowledgement form. *See* D.E. #19; SOF ¶¶52-53, 57. When the January 7, 2015 "pop-up" notice was not successful in securing the dismissal of the lawsuit, Doherty "felt the need to continue to educate, **to put the full agreement out for full disclosure since this is an ongoing case**…" SOF ¶57. A little more than a year later, it did; again posting the amended MAA to its HRIS system and requiring existing employees to sign it electronically.[4] Doherty did not post the January 2015 Agreement to "educate" employees; rather, the posting was admittedly to further Doherty's litigation position. SOF ¶¶51, 58. In the meantime, this litigation remained pending. The fact that Doherty has not made any further changes to the amended MAA since January 2015 reflects nothing more than Doherty's effort to benefit from the mere passage of time while it awaited the opportunity to *again* move for dismissal on the basis of mootness.

## III. Conclusion

As set forth herein, Doherty has not carried its heavy burden to demonstrate either that there is no reasonable expectation that the alleged violation will recur or that interim relief or events, such as its Janaury 2015 amendments, have completely and irrevocably eradicated the effects of the challenged Mandatory Arbitration Agreement. Accordingly, Doherty's motion must be denied because this case presents a live "case or controversy" ripe for decision and for which this Court can award meaningful injunctive relief.

Respectfully submitted March 13, 2017

s/ Kimberly A. Cruz
KIMBERLY A. CRUZ
Supervisory Trial Attorney
Florida Bar No. 0153729
KRISTEN FOSLID
Trial Attorney
U.S. EQUAL EMPLOYMENT

---

[4] With so very little in the way of "educating" employees about their right to file administrative charges of discrimination, Doherty's effort here is little more than a thinly-veiled effort to avoid legal challenges to the MAA. *See, e.g., EEOC v. Cosmair*, 821 F.2d 1085, 1090 (5th Cir. 1987) (waiver of the "right to file a charge" is void as against public policy).

OPPORTUNITY COMMISSION
Miami District Office,
Miami Tower, 100 S.E. 2nd Street, 15th Floor
Miami, Florida 33131
Tel: (305)808-1790
Fax: (305)808-1835
Email: kimberly.cruz@eeoc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Kimberly A. Cruz
Kimberly A. Cruz
Supervisory Trial Attorney
Florida Bar No. 0153729

**SERVICE LIST**

ROBERT WEISBERG
Regional Attorney
KIMBERLY A. CRUZ
Supervisory Trial Attorney
KRISTEN FOSLID
Trial Attorney

Equal Employment Opportunity
Commission
Miami Tower
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 305-808-1803
Fax: 305-808-1835
Kristen.Foslid@eeoc.gov

*Attorneys for Plaintiff*
***-Service via CM/ECF***

ROBERT HAILE
ANTOINETTE THEODOSSAKOS
Haile, Shaw & Pfaffenberger, P.A.
600 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Tel: 561-627-8100
Fax: 561-622-7603
rhaile@haileshaw.com
atheodossakos@haileshaw.com

DENA B. CALO
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Tel: 215.972.7104
dcalo@saul.com

*Attorneys for Defendant*
***-Service via CM/ECF***